1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


GOLO, LLC,                      )
                                )
          Plaintiff,            )
                                ) C.A. No. 23-1200(MN)
v.                              )
                                )
AMAZON.COM, INC., and           )
AMAZON.COM SERVICES, LLC,       )
                                )
          Defendants.           )


                    Tuesday, September 3, 2024
                    3:00 p.m.
                    Motion Hearing


                    844 King Street
                    Wilmington, Delaware


BEFORE:   THE HONORABLE MARYELLEN NOREIKA
          United States District Court Judge




APPEARANCES:


          McCARTER & ENGLISH LLP
          BY:  DANIEL M. SILVER, ESQ.

          -and-

          FINNEGAN, HENDERSON, FARABOW,
          GARRETT & DUNNER, LLP
          BY:  DOUGLAS A. RETTEW, ESQ.

          -and-

          STERN & EISENBERG
          BY:  STEVEN K. EISENBERG, ESQ.


                    Counsel for the Plaintiff

APPEARANCES CONTINUED:


                    DLA PIPER LLP
                    BY:   NANCY SHANE RAPPAPORT, ESQ.
                    BY:   J. KEVIN FEE, ESQ.
                    BY:   JANE W. WISE, ESQ.


                         Counsel for the Defendants



                    _ _ _ _ _ _ _ _ _ _ _ _ _ _ _



                    COURTROOM DEPUTY:  All rise.  The United States District Court for the District of Delaware is now in session.  The Honorable Maryellen Noreika presiding.

                    THE COURT:  Good afternoon.  Please be seated. Let's start with some introductions.

                    MR. SILVER:  Good afternoon, Your Honor.  Dan Silver from McCarter & English on behalf of GOLO.  And I'm joined at counsel table by Doug Rettew from Finnegan Henderson and Steven Eisenberg from Stern & Eisenberg.

                    Thank you, Your Honor.

                    MS. RAPPAPORT:  Good afternoon, Your Honor. Nancy Rappaport from DLA Piper on behalf of Amazon.  I'm joined by my colleagues, Kevin Fee and Jane Wise who both

have been admitted pro hac.  Mr. Fee will be presenting on behalf of Amazon today.

THE COURT:  All right.  Good afternoon.

So we have a motion to dismiss and then a request to amend.  And Amazon seems to think everything in there is futile, so you can start.

MR. FEE:  Good afternoon, Your Honor.  Kevin Fee from DLA Piper on behalf of Amazon.

Your Honor, I will take your guidance on whether you would like to start with the motion for leave to amend claims or previous claims that were in the original complaint, do you have a preference?

THE COURT:  These seem all kind of related to me.  Why don't you start with the original -- with the counts in the original complaint because those are in the new complaint and then that will help us deal with that.

MR. FEE:  Sure, Your Honor.  First of all, just a little bit of background.  This is not your typical trademark infringement case.  Normally in a trademark infringement case you expect the plaintiff or trademark owner to bring a lawsuits against the party who is actually responsible for selecting the infringing trademark.  That's not what's happened here.

THE COURT:  I get it.  And I understand what you're saying.  And some of these claims I looked at and I

say, not really a great claim, probably going to lose, but this is a motion to dismiss.  That's not where I make those determinations about whether the claim, you know, ultimately is one -- you know, if they've made out a claim, whether or not they win at summary judgment or lose at summary judgment is a different question than whether they can get past a motion to dismiss or can amend their complaint.

MR. FEE:  Fair enough, Your Honor.  And I think that is part of the reason why we haven't moved to dismiss every single claim that's in their complaint.  But there are --

THE COURT:  It just seemed like it.

MR. FEE:  But there are a lot of claims in there, Your Honor, and a lot them are highly unusual and not supported by the law.

Why don't we start with some of the ones that I think might be the easiest to deal with.

Perhaps the most simple case, or claim to deal with is their claim for trademark infringement based on organic search results.  Basically they claim that when an individual like you or I types GOLO into a Google search engine and Google returns the search results, they claim that Amazon is somehow responsible for the search results that appear on a Google website.

THE COURT:  Right.  I mean, I guess my question

on that one is, they say that Amazon has sponsored this so that it comes up. Maybe that's not true. Maybe it's just what you say which is some random thing. But I am going by what they alleged. I mean, what am I supposed to do with that?

MR. FEE: There is I think two different claims they're making, Your Honor. One of them is a case search result and I think that is a slightly different claim. When they're dealing with just organic search results that are a function of Google or Bing search mechanism --

THE COURT: So what claim are you talking about when you say it's different for something, what claim is okay and what is not? So I don't know what count you're talking about at the moment, no idea.

MR. FEE: Sure, Your Honor. First of all, they didn't really segregate their claims quite like this. So they have a claim 1 just a claim for federal trademark infringement. But the body of the claim or the complaint makes clear that it's really four separate bases for alleging trademark infringement. One is that they claim that Amazon --

THE COURT: Just so we're clear, Count I is for trademark infringement and you're saying they have four grounds and not a single one of them is well pleaded?

MR. FEE: Your Honor, I think that certainly for

three out of the four elements that their claims are not well pled.  The organic search results, the ones that we were just talking about, there has to be a use by Amazon of the allegedly infringing trademark.  Amazon has absolutely nothing to do with the search results that are returned by Bing or Google.  Google host that web page, it's on a Google.com page when it gets returned --

THE COURT:  Let's go by what they've alleged. What is it that they've alleged?  You're telling me stuff. If it's outside the complaint, that doesn't help me.

MR. FEE:  So they really lay this out, I'm looking at, I believe this is the proposed -- the second proposed Amended Complaint in paragraph 55 where they lay out the four different types of infringement that are at issue in this case.  The first one they called --

THE COURT:  I don't know -- what DI number are you looking at because I don't have anything called their second request?

MR. FEE:  It's Document 54-1, Your Honor.

THE COURT:  Okay.

MR. FEE:  So in paragraph 55, and that's on page 24, you see there is a list of four different types of infringement that they've identified there.  Right now I'm focusing on the second one, which is deceptive organic search results.

THE COURT:  Okay.

MR. FEE:  And they say that Amazon exploits the GOLO trademarks by creating URL's and other content using the GOLO trademarks for search engines to index and return in response to queries for the GOLO trademarks, and continues on from there.

And what I am saying is that in order for there to be a claim for trademark infringement, direct trademark infringement against Amazon, Amazon has to be using the trademark.  And Amazon does not use any mark.  It has nothing to do with the organic search results.  Now --

THE COURT:  They're saying that they are using the trademarks in URL's for search engines, right, using the trademarks?

MR. FEE:  Yes.  And if they -- I'm sorry, go ahead, Your Honor.

THE COURT:  That's what they're saying.  They're saying that Amazon creates URL's that use the trademarks.

MR. FEE:  Right.  So if they were asserting a claim based on the use of the GOLO trademark in URL's and those URL's were created by Amazon, that may be one thing. I will tell you part of the reason they have made that argument is the case law is very clear that using trademarks in post domain URL's like anything after the Amazon.com is not a basis for trademark infringement because it is not a

trademark use and consumers don't look at those strings after the dot com for source identification purposes.

But that's not what they are claiming here. They're claiming that the search results are infringing. The search results are what Google returns when you type in a search into a search engine.  You know, I don't mean to be a broken record here, but Amazon doesn't decide what Google puts on its web pages.  It does not use GOLO's trademark whenever there is a return on a GOLO search page.

THE COURT:  Some courts have found that meta tagging or use of invisible keywords constitutes use in organic search results.  Is that relevant to this?

MR. FEE:  I don't think that that's correct, Your Honor.  There were some cases early on in like the '90s when the courts were still hashing out whether or not references to trademarks and things like metadata constituted a trademark use that could lead to trademark infringement, but I think those cases stopped holding that way in the '90s.  And ever since then for the last decade at least courts have pretty uniformly held that use of trademarks in metadata in domain paths and other parts of a web page are not trademark uses if they're not apparent to a consumer.

THE COURT:  Okay.

MR. FEE:  So another one of the types of

infringement that they identify in paragraph 55 is what they call deceptive search box results.

THE COURT:  What happened to deceptive advertisement?  Did you deal with that or not?  I would like to go in the order that they have here.

MR. FEE:  Sure.  No problem, Your Honor.

Now, Your Honor, this one I will say based on what you have already told me about your inclinations might be one of the ones you decided isn't appropriate for dismissal at this early stage.  But our position with respect to this one is they have not identified any sponsored ads that are likely to cause confusion.

Courts have granted motions to dismiss in this context when the courts find that the links that are presented are clearly identified as advertisements and consumers would otherwise understand that they're looking at an advertisement and it's not affiliated with the trademark owner, so I think there is a basis for dismissal in that case.  But, you know, if Your Honor is going to give them anything that slides through to the summary judgment stage, I would suggest that might be one of those, Your Honor.

THE COURT:  Okay.

MR. FEE:  Another one that I think is clearly ripe for dismissal right now is the third item there, deceptive search box results.  And what those are, Your

Honor, as you're probably familiar with if you ever shopped Amazon's website, there is a search box at the top of the page where you can type in anything you want and Amazon will return, you know, potential items in response to your search request. And they claim that because customers like you or I type the word GOLO in that search box and it returns items that are not GOLO products, that that's somehow trademark infringement.

But as we cited in our motion to dismiss papers, there are numerous cases that have found that this exact circumstance does not lead to trademark infringement because first of all, the person who is typing GOLO or the trademark in that instance is not Amazon, of course. So Amazon isn't making the use of the trademark in that circumstance. But perhaps more importantly, consumers when they are shopping on Amazon understand that when they type in a trademark name, it returns a whole host of items, some of which may and some of which may not be affiliated with the brand owner.

And the courts have said uniformly that so long as those returned search results don't do anything to indicate that it comes from GOLO, such as in this case, it says expressly all these books say the author of this book is, you know, Sue Jones or whatever. There is nothing that says it's from GOLO. All those product pages also

specifically say that these books are independently published.

So consumers in that circumstance are going to understand that the search results that come back are not necessarily affiliated with GOLO and they haven't identified anything in particular that would cause confusion here or another basis for distinguishing what's really at this point a pretty long line of cases holding that Amazon search box returns are not confusingly similar for trademark purposes.

THE COURT:  Does the listing indicate sponsorship for GOLO?

MR. FEE:  No.  They say specifically who authored the book.  They say they're independently published and there is no indication that they come from GOLO.  We cite, for example, there is an *MTM* case involving watches where a party complained, the trademark owner complained that when you did a search for their trademark in the Amazon search bar it returned the defendant's watches.  And the court there said look, there is photographs of the watch here.  On its face it shows it's not from the plaintiff, it's from the defendant.  There is no reason to believe that this is going to cause consumer confusion.

And since that *MTM* case there have been numerous cases that found this precise thing in this same instance involving Amazon search results and there is no reason why

this case shouldn't be any different.

THE COURT:  What if it pulls up a cookbook that says GOLO?

MR. FEE:  Your Honor, just because a cookbook says GOLO doesn't mean it's from GOLO.

THE COURT:  I get it that it doesn't necessarily mean that, but if they allege that, what am I supposed to do?

MR. FEE:  They have to allege there is a good faith basis for believing that a consumer would be confused with respect to a particular trademark and a particular use. It would be one thing if they said here is one trademark use, Your Honor, in this one book this is really egregious and consumers are going to be confused here.  That's not what we're dealing with.  They have hundreds of books in the back of this complaint.  Almost all of them have very long titles --

THE COURT:  All right.  Move on to the next one. We don't have all day for this.  Go ahead.  There is like a billion claims here.

MR. FEE:  Yes, there is a lot of claims, Your Honor.

The next claim they have on the list in paragraph 55 is counterfeit claims.  Now, to be a counterfeit, Your Honor, the statute is clear that the use

of mark not only has to be confusingly similar, but it has to be either identical to or substantially indistinguishable from a register trademark.

There is a couple issues with respect to their claim regarding counterfeiting.  One, it has to be substantially indistinguishable from a registered mark. When they first moved to amend their complaint to add this counterfeiting claim, they did not have a trademark registration for cookbooks, so they claimed that we were counterfeiting diet plans, supplements and things of that nature by selling cookbooks.  That's not what a virtually indistinguishable use of a mark would be.

We cited for Your Honor, there is a Playboy case from the Eastern District of Pennsylvania that makes clear that to have a counterfeiting claim you have to bring it with respect to products or services that are the same or virtually the same as the registered services in a trademark registration.

But even after they have now got the registration for cookbooks, that still doesn't solve the problem because none of these books are identical to or substantially indistinguishable from the cookbook that GOLO offers.  The cookbook that GOLO offers, Your Honor, is identified in paragraph 6 -- paragraph 29 of the complaint, Your Honor.  You can see it on the right-hand side there.

It has GOLO in big bold letters and recipe book below it. It's a spiral bound book with some photograph of spices down at the bottom.

If you take a look at any of the cookbooks that are referenced in here that are supposedly counterfeits, I think the easiest ones to take a look at might just be, for example, on page 7 they call out a couple of cookbooks.  And those cookbooks look nothing like the cookbook that is sold by GOLO.

Counterfeiting claims are for what we think counterfeits are, the fake Louis Vuitton bag, the fake Rolex watch.  They may not be perfect duplicates, but they're virtually indistinguishable from the trademark product. They can't with a straight face, Your Honor, tell us that these books, not just these two, but the hundred or plus at the end of this are all identical to or substantially indistinguishable from their cookbooks and as a result their counterfeiting claim fails as a matter of law and should be dismissed even at this early stage.

And, you know, this sort of ties in a little bit for the motion for leave to amend, Your Honor, because the counterfeiting claim is one of the claims that they sought to amend via their Amended Complaint.  And I think it is noteworthy that they sought leave to amend not because they found new facts that led them to believe that there is

counterfeiting going on, their counterfeiting claims are based on many of the same books and many of the same product listings that they had in their original complaint.  There is a reason why they didn't bring counterfeiting claims in the original complaint, it's not because they found new facts, it's because this is not a plausible claim.

After discovery has been going on in this case they know that there is not a lot of sales of these books which probably comes as a surprise to nobody here, and the good news from their perspective is if they get this counterfeiting claim in, it's $2 million of statutory damages for the product at issue.

So we respectfully submit there is a reason why they didn't bring this claim in the first place and it shouldn't be allowed to go forward.

THE COURT:  Okay.  Let's take these one at a time.  So that's trademark infringement.

MR. FEE:  All right.

THE COURT:  No, no, no, I want to hear from them.  We're going to go each one.

MR. FEE:  Understood, Your Honor.

THE COURT:  So I don't want to hear on the first one, the deceptive ads, but the organic search results in the URL, they say look, that's not using the trademark and courts have found that's not using a trademark, so what's

your response?

MR. RETTEW:  Your Honor, our response is that we have alleged that Amazon has used the trademark and they, in fact, have.  And that's on the same document, Document 54-1, paragraphs 70, 71, 72 and 73.  And there we allege that they are using the GOLO trademarks.  We explain how search engines pick up various uses of trademarks.  But we plead very specifically that they are using the GOLO trademarks in URL's and in other ways that cause it -- that cause those uses to be picked up by the search engines to show deceptive, ultimately deceptive and confusing results.

Your Honor pointed out the metadata cases.  They say they're old and nobody cares about them anymore.  They may be old, but we do care about them.

THE COURT:  Why are you saying they're still good law when they're saying they are not?

MR. RETTEW:  Because they are still good law, Your Honor.

THE COURT:  I need something a little more, has anyone recently relied on them for any purposes rather than you just saying in a conclusory statement they're good law and them saying in a conclusory statement they're not.  Has anyone recently relied on those cases?

MR. RETTEW:  Yes.  In fact, we found a case, Your Honor, out of the Central District of California.  This

was not something that was ultimately in the briefs, but we found this.  It involved use of metadata in organic search results and that found to be a trade -- a valid trademark claim.  And I can give you the cite to this.  It's a case out of the Central District of California from 2022, *Garrapata, LLC v. Norok*, N-O-R-O-K, 2022, U.S. District Lexis --

THE COURT:  I don't have -- I don't know how to use Lexis.  Do you have a Westlaw or a Reporter?

MR. RETTEW:  I don't, Your Honor, but I can submit that to the Court.  I just have the Lexis cite.  We can cite that right away.  This was a case where it involved Clint Eastwood actually and the defendant was using metadata with Clint Eastwood's name and as a result of search engines were pulling up listings that suggested that Clint Eastwood sponsored a CBD company.  This is a very recent case.  That was found to be sufficient improper use of metadata causing third-party search results to cause a valid trademark claim.

Now, it was, Your Honor, on a motion for default, but the court went through and analyzed whether they were valid claims, so the analysis for our purposes for a motion to dismiss would be exactly the same.

And there are other metadata cases, Your Honor, I'm happy to provide that are absolutely still good law. The *Movie Buff* case I believe out of the Ninth Circuit is

one.   The *Playboy v. Terri Welles* case is another one off the top of my head is still very good law that talks about the metadata on a website.   And there the former Playmate of the Year, Terri Welles had put PMOY 1980 something and that pulled up results and that was found to be improper use of metadata.

So there are other cases out there.   They are still good law.   The *Garrapata* is actually very relevant to our situation because they're organic search results by a search engine.

THE COURT:   What about the third ground, the search box results, what are they supposed to do when someone types it in?

MR. RETTEW:   If they didn't -- Your Honor hit on this.   If the search results didn't have GOLO cookbooks, then we concede that would not be an issue under the *MTM* case.   The problem is when you type GOLO, you get results with GOLO branded product that are not genuine GOLO products.   That changes it.   That makes it completely distinguishable from the *MTM* case.   And the *MTM* case was not as counsel suggest a close case.   That case went up to the Ninth Circuit, back down to the District Court.   It was a hotly contested case.   But the ruling of *MTM* was that if it's a non-infringing product, the use of a trademark in search results for clearly labeled non-infringing products

is okay.

Here we don't have that.  And that's why our claim should survive, because we have infringing products, the books, that come up.

THE COURT:  What about the counterfeit?

MR. RETTEW:  The counterfeiting claim, Your Honor, and I respectfully disagree with counsel that these are weak claims.  These are actually very good claims.

THE COURT:  I wouldn't lose your credibility on that too much, but okay.

MR. RETTEW:  Well, if I could explain why, Your Honor.  The counterfeiting act doesn't require that the products be identical to the genuine products.  What you do is you look at the trademark registration, you look at the mark, and then you look at the goods and services that it covers.  We have two types of registrations here.  We have got registrations that cover the diet plans, the service mark registrations, and we have the registrations, the newly issued registrations that cover the books.

Now, for the plans, Amazon says look, we can't infringe, that can't be counterfeiting because we make books -- we're selling, sorry, we sell and we contend make books and all you have is a registration for diet plans and services.

I think this ignores the fundamental point and

that is this, when you get a diet plan, when you sign up for a diet, how are those -- how is the plan given to people? It's given to them in writing. It's given to them in things like books. And, in fact, one of the books -- and this is in our complaint, Your Honor, this is in paragraph 93 of our complaint, one of the books is called The GOLO Diet. So they themselves, Amazon calls this a diet. And Amazon is not the only one that calls it a diet. The consumers that purchase the books online have responded to Amazon in comments, some of them complaining because of the poor quality of the books, and have said these -- have referred to them as diet plans.

One defendant -- sorry, one consumer in particular complained if this is the type of plan, I don't want it, I don't want something like this. So these are clearly referred to by Amazon and consumers as diet plans. And that's precisely what the trademark registration covers, diet plans.

Now, it's of no moment, Your Honor, that there is other terminology with the GOLO mark. On these books, and it's in our complaint, GOLO appears prominently, it appears large, it appears on its own and one cannot avoid counterfeiting just by adding another term or terminology to a registered trademark. If that was the case, you can get out of counterfeiting by adding anything.

And there is case law out there, and we haven't had the opportunity to brief this issue, Your Honor, but there is case law out of the Eastern District of Pennsylvania that stands for the proposition that adding another term to a registered trademark does not get out of counterfeiting.  And there is a case involving Penn State where the defendant used Penn State beer and Penn State cigars and the court said okay, Penn State doesn't offer beer or cigars and they don't use the word beer or cigars with their trademark and that was enough to sustain a counterfeiting claim.

In their motion to dismiss, Amazon itself at one point in time refers to the fact that it uses the GOLO trademark to refer to a diet, and that's on page 9 of their motion to dismiss.  So all this to say, the use of a trademark, the use of the GOLO trademark on books certainly is subsumed within the trademark registration for services and we provided a couple of cases to the court, and again, we haven't had the opportunity to brief this issue, Your Honor.  But there were several cases that we submitted that stand for the proposition that if you have a service mark registration, that use of that service mark as a -- use of that mark on a product can constitute counterfeiting.

THE COURT:  You got to move along because we're on the first count here and it's a half hour in.

MR. RETTEW:  Okay.  That's the service mark. The other issue Your Honor, we have registration for books, we have trademark registrations that cover books.  In our submissions to the Court we identified cases that hold if you have a trademark registration and somebody sells a product after the time of your trademark registration, that still can constitute counterfeiting even if you made the product beforehand.

THE COURT:  Okay.  For Count I, trademark infringement, I am going to deny the motion to dismiss, grant the amendment for the first of the three -- first three grounds, the use by Amazon of the trademark, the deceptive ads and the search box results.

I think there is sufficient pleading in there. I am going to grant -- I'm going to deny -- I don't think the counterfeiting stuff is in the original one, so I am going to deny the request to supplement the complaint with a claim of counterfeiting for registration numbers 4,436,947, 5,231,000 and 6,569,622 in connection with the offering, distribution and advertising of diet plans, publications and cookbooks.  The supplement would be futile because the registrations do not include cookbooks or protected books or services.  It is well established that counterfeiting must allege that use of the alleged counterfeiting mark both in connection with the same type of goods or services covered

by the mark, in other words, the counterfeiting use must be a use covered in the registration.  Here registrations 4,436,947 and 5,231,000 both cover healthcare services such as weight loss program services, weight management programs and consulting services, and I do not find that cookbooks fall under this category as a printed cookbook is not a service.

Registration 6,569,622 covers providing a website featuring information about health and food nutrition consultation as well as a downloadable mobile application.  Likewise this registration does not cover printed cookbooks, so I deny the request to add counterfeiting claims in connection with those registrations.

I do grant the request to supplement the complaint with claims for counterfeiting in relation to cookbooks for registration 7,475,110, because its registration includes cookbooks in its class or goods or services.

Additionally, I do not find that the date of the registration, which was August 13th, 2024, precludes a counterfeiting claim so long as GOLO concedes that as of that date afterwards or currently that defendant produces or sells counterfeiting goods.  So that's Count I.

What's next?

MR. FEE:  Your Honor, I think it might make sense to deal with other counts that they tried to add through the amendment now, that would be a relatively quick one on the Delaware Consumer Fraud Act claim, if that's all right with Your Honor.

THE COURT:  Okay.

MR. FEE:  So Your Honor, we cited in our papers case law holding that the Delaware Consumer Fraud Act claim provides a remedy when there is a vertical relationship between a consumer --

THE COURT:  Right, there is no vertical relationship pleaded.  So let's hear from GOLO on that.  GOLO is not a buyer of the allegedly infringing goods from Amazon nor does it manufacture products using Amazon goods, so what about the vertical relationship?

MR. RETTEW:  So, Your Honor, we believe that that is not needed and we submitted case law to the Court, the Arlick case.  Again, we haven't been able -- had the opportunity to brief this, but we submitted the Arlick case which Judge Stark on a motion to dismiss had rejected the argument that a vertical relationship is needed.  That case ultimately went up to the Third Circuit and the Third Circuit on June 7th, 2023, held that the district court, because after Judge Stark had denied a motion to dismiss, another judge sitting by designation granted summary

judgment and did find vertical relationship was needed.  The Third Circuit held on appeal that the district court incorrectly suggested that a direct business or fiduciary relationship was necessary and they held that the Delaware Fraud Act creates a cause of action for any victim of a violation not just those in direct relation to the violator.  And we believe that that case does not require, and the statute itself does not require a vertical relationship and because of that, we believe that our fraud claim should stand.

THE COURT:  All right.  Let me hear from the defendant on that.  Let me ask you this, in Arlick, wasn't Arlick a manufacturer so there was a vertical relationship?

MR. RETTEW:  That's correct, Your Honor, but the Court in its holding, it was a vertical relationship that had not bought directly from DuPont, there was not a direct privity there.

THE COURT:  But it had a DuPont washer, DuPont something.

MR. RETTEW:  That's right, they were washing machines and I think there was a material in there.

THE COURT:  What about the Delaware Supreme Court determining the plaintiff has standing under the act if it is a vertical relationship, what do we do with that language?

MR. RETTEW:  Well, the third --

THE COURT:  What did the Third Circuit say because Delaware Supreme Court seems pretty clear.

MR. RETTEW:  The Arlick case said if you had that relationship, that's sufficient, but not that it's required, that it is not necessarily required.  I think that's the difference.  And in the Chase case, on a motion to dismiss, which, you know, the law is quite honestly, Your Honor, a bit confusing because the Chase case on a motion to dismiss favors Amazon, but -- I'm sorry, on summary judgment favors Amazon, but on a motion to dismiss actually favors us.  In the Chase case, Judge Stark had explained that it goes to any victim of the statute, and statute does not define the victim and its express purpose is to protect not only consumers, but also legitimate business enterprises.

In answer to your question, if you had that vertical relationship, the Third Circuit has said well, then, that's enough for sure, but you don't necessarily need it.

THE COURT:  Okay.  What about the Third Circuit case that says, you know, look at the relationship liberally, protect victims?

MR. FEE:  Your Honor, I think GOLO is confusing two separate issues here.  There is an issue about whether or not you have to have a vertical relationship.  And really

no court has held that you didn't have one.  It is true Judge Stark initially concluded it was not necessary, but later in the exact same case changed his mind.  The Arlick case, the Third Circuit didn't address the question of whether or not a vertical relationship was required, what it was addressing was an argument whether there needs to be a direct relationship.  And because the relationship between DuPont and the plaintiff was, you know, not direct, buyer/seller, but there is a step in between, the defendant argued that there is no basis for a claim as a result of a lack of a direct relationship.

That case did involve a vertical relationship as Your Honor alluded to and the court found that you weren't excused from any consumer fraud because of the relationship was indirect.  But it has nothing to do with this case.  This case has -- the problem is they don't have the vertical relationship.

THE COURT:  All right.  So with respect to this cause, I am going to deny the request to add or supplement the pleadings with counts for consumer fraud under the Delaware Consumer Fraud Act.  To assert a cause of action under the Delaware Consumer Fraud Act, the plaintiff must establish it has standing.  In *Grand Venture v. Whaley,* the Delaware Supreme Court determined there wasn't any standing due to the fact there wasn't any vertical relationship with

a defendant.  This court in *Chase Bank USA v. Hecht* clarified that a vertical relationship exist between businesses, occupying different levels of operation for the same product such as between a manufacturer and retailer or between a buyer and seller.  I am not finding that you need to have a direct relationship just that there has to be a vertical relationship.  And here I don't think there is a vertical relationship at all.  GOLO is not a buyer of the allegedly infringing goods from Amazon.  It doesn't manufacture products using Amazon goods.  It is not a consumer under the Delaware Consumer Fraud Act and it is not an asserted cause of action under the statute so I determine that an amendment to add this claim would be futile and deny the request.

What's next?

MR. FEE:  How about the false advertising claims, Your Honor?

THE COURT:  Okay.

MR. FEE:  First, I think it makes sense to start with the argument that the Communication Decency Act bars GOLO's false advertising claims with respect to the cookbooks and the --

THE COURT:  This is Count IV?

MR. FEE:  Yes.

THE COURT:  Because nobody seems to be talking

about counts.  We just did Count I.  And we just did count what?  9?

MR. FEE:  Yes, we just did Count 9.

THE COURT:  So now we went 1, 9, now we're at four.  Right?

MR. FEE:  Well, we did 1, we did 2, trademark counterfeiting was addressed.

THE COURT:  We did 2, unfair competition because 1 and 2 go together?

MR. FEE:  I'm sorry, I'm looking at the Amended Complaint, Your Honor.

THE COURT:  I don't know.  You guys have so many pleadings, so many counts, I truly have no idea.  So you got to tell me what you're talking about here because I don't know if it's in your motion to dismiss, I don't know if it's separate in the request to amend.  If you guys didn't make it easy for me, I'm not going to sit there and figure it out, so you got to tell me.

MR. FEE:  Fair enough, Your Honor.  I apologize.

THE COURT:  I have no idea.  We did trademark infringement which is what?

MR. FEE:  Trademark infringement, I'm going to work off if it's all right docket entry 54-1, I think that's what we have been working with.

THE COURT:  What do I do with your motion to

dismiss?

MR. FEE:  Okay.  Fair enough.  Then you want to work --

THE COURT:  I need you to somehow tell me is that now moot and I just deal with things as to whether they can be amended?

MR. FEE:  No, Your Honor.

THE COURT:  So then you got to tell me.

MR. FEE:  Okay.  In the motion to dismiss we dealt with count number one which was the trademark infringement count.  Count number four is the false advertising claim, you're right, Your Honor, in the original complaint.

THE COURT:  Is that also the subject of an amendment?

MR. FEE:  Your Honor, I believe they added other products, but not in a way that would impact --

THE COURT:  Is it still count 4.

MR. FEE:  No, I don't think it is still Count 4.

THE COURT:  That's why I need to understand what we're talking about in both of these things.

MR. FEE:  It's now count number six, Your Honor, in the proposed Amended Complaint.

THE COURT:  Okay.

MR. FEE:  Sorry about that, Your Honor.

31

THE COURT:  We're just running out of time.  You got like nineteen minutes to go and we're not very far into this, so --

MR. FEE:  I'll try to make this quick, Your Honor.  So Section 230 of the Communication Decency Act applies when a defendant is an interactive computer service provider and particular information at issue was provided by an other information content provider.  And the plaintiff tries to treat the defendant as the publisher of that content.

Now, numerous courts have found that Amazon qualifies as an interactive computer service provider.  I don't really think that's disputed by GOLO in this case.  GOLO's claims, the false advertising claims, do relate to content that was seller generated and not generated by Amazon.  For example, they complain about language on faces of books that explain that some of the books have dietary suggestions that are compliant with the GOLO weight loss system.

Amazon has not offered any of these books.  It's apparent on the face of the exhibits of this case that Amazon is not the author of these books.  It indicates -- we identify specific individual authors for each book.  They all indicate that they're independently published and as a result the only basis for holding Amazon liable for false

advertising is that it has allowed content from third parties, that is the authors of these books, to be on its interactive website and the Communication Decency Act specifically prohibits liability on that basis.

Would you like me to stop with the Communication Decency Act and go back to GOLO, or should I go through the entire false advertisement claim, Your Honor?

THE COURT:  You can go through if --

MR. FEE:  We also argue, Your Honor, that the First Amendment bars these claims because Amazon is only acting as a bookstore.  And long established Supreme Court precedent makes clear that book sellers are immune for liability for allegations that would require them to police the content of the books that they're offering for sale.

THE COURT:  But doesn't GOLO allege that Amazon is the seller?

MR. FEE:  Yes.

THE COURT:  And that Amazon is producing some of these books?

MR. FEE:  In every instance, Your Honor, the books, the seller of the books, the whole point of this line of cases in particular is that it's not feasible to require a bookstore to monitor everything that's said in every single book to determine whether or not it's true or false. And if you're going to require that, it's going to have a

chilling effect on the ability of bookstores to distribute books. The Supreme Court, this goes back to the 1950's has made clear that bookstores are not required to scour the contents of the books that they sell before they make them available for purchase.

We also argued, Your Honor --

THE COURT: But aren't you coming up with in this case obscenities?

MR. FEE: Yes, Your Honor.

THE COURT: It seems a little different than saying you have to scour books for obscenities versus you have a front page of the book, the title page says GOLO on it, that's a little different, isn't it?

MR. FEE: I actually don't know if that's true, Your Honor. I understand where you're coming from, don't get me wrong, but there is no dispute that you're allowed to make a book that has the word GOLO in the title. For example, if I say the Unofficial GOLO Weight Loss Book, that's clearly not going to be confusing, that's allowed to be sold. Also, if I wrote a cookbook that says GOLO Cookbooks Suck, Use My Cookbook, you would know that's not a GOLO cookbook.

THE COURT: But you're saying oh, if we do that, it's going to chill the ability to do things. If I say that Amazon in a motion to dismiss isn't liable for that under

the First Amendment, isn't that just allowing, immunizing anyone who wants to sell books that infringing --

MR. FEE:  It's immunizing book sellers who want to sell books that --

THE COURT:  Even if it's clear from the face of the book that it's infringing a trademark, that's fine, you're allowed to do that?

MR. FEE:  This is getting back to what I said in the beginning of this case, this is not the typical case. There is still a remedy for that circumstance, you sue the party who is responsible for the book, the author, and you can get it taken down that way.  But, you know, Amazon must sell millions and millions of books.  It's not feasible for it to be sort of the content police for every one of these books that it sells.  And that's what they're trying to do here is make Amazon liable for something an author said in a book that it's selling.

THE COURT:  But whether it's true or not, aren't they also alleging that Amazon is an author, whether or not I think that they, you know, can hold Amazon liable for selling something that someone else is infringing, I thought they were alleging that Amazon is not just a seller, but also a producer of the book, and that via AI, Amazon has been producing books.

MR. FEE:  Producing books, Your Honor, and being

an author of a book is two different things.  What they're arguing is Amazon has a service called Kindle Direct Publishing which is basically like a Kinko's, you can provide content, go print it out and sell it to somebody on demand.  They're not the author of the book.  I don't believe there are allegations that they're the author of any books here.  And if there was, it certainly wouldn't be plausible.  It's not the case just because they're printing out a book that was electronically provided to them by another author --

THE COURT:  You're raising a bunch of stuff that's not in the complaint.  They say that Amazon is not simply selling books, that they're producing books and they have some -- again, it might be ultimately not a very strong claim, but when I construe their pleading liberally, I don't know about this Kindle whatever, this like Kinko's, I mean that's not in the pleading.

MR. FEE:  I think there is a reference to Kindle Direct Publishing in the complaint, Your Honor, but the burden is on them to plausibly allege that Amazon published some of these works.  There are no facts in this complaint that could plausibly support an allegation that Amazon is responsible for the content of any of those works.  And holding Amazon responsible for content that it did not write just because it's a bookstore and it sold the book is not

only prohibited by the Communication Decency Act as we discussed earlier, but it's also inconsistent with the Supreme Court's interpretation of the First Amendment.

THE COURT:  What about the carve out of the Communication Decency Act?

MR. FEE:  For the intellectual property claims?

THE COURT:  Yes.

MR. FEE:  So I mean, the intellectual property claims they try to tell you in one breath, Your Honor, that their claims are not related to trademark infringement, that they're distinct from false advertising because they have to say that they're separate claims under the Parks case from the Third Circuit which makes clear that you can't bring a duplicative false advertisement claim on top of a trademark infringement claim.  So to get around the Third Circuit holding in Parks, they tell you the duplicative false advertisement claim is not a trademark infringement claim. Then if they want to get around the Communication Decency Act, all of a sudden it's a trademark infringement claim. It can't be both ways.

I think a fair reading of their complaint is, they are complaining about specific words and descriptions that say the books are saying that they're offering something consistent with the GOLO Weight Loss Plan and they're not.  That's not a trademark infringement claim,

that is a false advertisement claim.  Unfortunately for them it's a false advertisement claim that is barred by both the Communication Decency Act and the First Amendment.

Another problem with their false advertising claim is that Amazon does not actually engage in any commercial speech in connection with any of these false advertisement claims because it's not the speaker of any of the allegedly false statements.

As we already alluded to a lot and I won't belabor the point, Amazon is not the one who wrote any of those statements, it's the authors themselves.  So in order for Amazon to be held liable for false advertising, it has to be making commercial speech and that just isn't what's at play here.

I think that addresses the false advertising with respect to the cookbook claims, so it probably makes sense to turn it over to GOLO's counsel if it makes sense to you.

THE COURT:  Okay.  So the Communication Decency Act, they say you allege that your false advertising is separate from trademark infringement because you have to, and yet when you want to hold them responsible under the Communications Decency Act, you say well, gosh, it's really just trademark infringement.

MR. RETTEW:  I think on that point, Your Honor,

I don't think we even need to get there. But answering your question, it's a hybrid. It involves the trademark, the GOLO trademark and it involves a false deceptive claim. So whether -- and in our motion, in our papers we noted whether they live and die together or considered separate, ultimately none of that should matter because what Amazon is leaving off out here is this is not about what's just inside those books, the false claims are what Amazon puts on its website. That changes everything.

So this is not, oh, hey, this book has some false stuff in it. The Amazon website and the things that we've alleged in paragraph 54 of our complaint, we specifically allege that Amazon has complete and utter control over the way listings are put on its website, and they do, they have absolute control. They drive the train. Whatever is said on their website is -- whatever they say on their website is something that Amazon is okay with. And our claims on false advertising are all the statements that they make.

THE COURT: What paragraph were you referred to?

MR. RETTEW: So paragraph 54, we talk about Amazon controlling all aspects of the sales process including the listings, and what people can do on the listings and how they can make people change the listings. And these listings and the things that we are saying are

false and misleading are things that Amazon says on their website.  Whether they got it from the author should not matter because Amazon is putting it online for people and consumers to see.

And then in paragraphs 102 to 109, we outline a lot of the deceptive things they say, like they have -- for these books they have a page where you can click on about the author.  That's on Amazon, that's their website.  You click on about the author, and fake people who don't exist, there is a whole big thing about how they're a doctor in this and they wrote this book and did this.  That's all false and deceptive.  And what's critical to our claim here is it's things that Amazon is saying and allowing on their website.

And in paragraph 113, we specifically allege that this is done in the course of promoting these books that Amazon sells, which the sale of those books is absolutely prohibited under Section 111.41 of the Lanham Act, the sale of an infringing product is a violation.  So that all ties together.

But the point here is they can't claim the exception of the Communications Decency Act or the First Amendment because we're not suing them for what people said inside the book, we're suing them for what Amazon said in the course of promoting and selling those books online.  And

we properly pled that through paragraphs --

THE COURT:  All right.  I heard enough.  You got to move along.

All right.  With respect to false advertising, I am going to deny the motion to dismiss and allow the amendment.  I think that Amazon does not benefit from the Communications Decency Act immunity for two reasons.  The first is that Amazon is the actual seller, therefore, these allegations are not being treated as a publisher or third-party content.  Second, the Consumer Communications Decency Act does not grant immunity from anything involving intellectual property and as not all false advertising claims relate to intellectual property, this claim stems from use of the trademark sponsorship that alleges that sponsorship is false.  The complaint alleges also with respect to the First Amendment that Amazon acts as not only the seller, but also the producers of the book and that Amazon controls all of the descriptions about the content of the book, so I think that the argument that Amazon makes with respect to Smith and the First Amendment does not apply at least at the motion to dismiss stage.

With respect to commercial speech, I don't see how the search box results can be the basis for false advertising claims, but the product listings once clicked evidence commercial speak sufficient for a claim.  So on

this one, I am not going -- I don't even know if I'm not denying or I'm granting because I can't tell what's new and what's old, but I am going to allow the false advertising claim to go forward.

Okay.  What's next?

Come on, you got to move.

MR. FEE:  Sorry.  Why don't we deal with what was claim 3 in the original complaint, the contributory infringement claim.  That is claim 4 in the amended complaint.

THE COURT:  Okay.  This is just in the alternative.

MR. FEE:  I don't know if they would concede that, Your Honor.  That might be a good question for them to answer.

THE COURT:  Is it in the alternative?

MR. RETTEW:  No, Your Honor, we believe that -- I think they both apply.

THE COURT:  You think what?

MR. RETTEW:  I would say they both apply, the contributory and the vicarious liability.

THE COURT:  Okay.  Go ahead.

MR. FEE:  Your Honor, Your Honor probably knows for contributory trademark infringement it only applies if a defendant intentionally induces another infringer or

trademark or if it continues to provide its product or service to one that it knows to be or has reason to believe is infringing.  Ever since 2010, in the Second Circuit case, *Tiffany v. eBay*, courts have recognized that general knowledge or awareness that their services may be used to sell counterfeit or infringing goods is insufficient to impose contributory liability.  And that contributory liability only applies when the defendant has contemporary knowledge of particular listings that are alleged to be infringing.

So the way that that works, Your Honor, is that in the circumstance like this, GOLO would have had to identify allegedly infringing.

THE COURT:  Yes, but didn't they allege that they told Amazon that there were infringing listings?

MR. FEE:  They allege that they told Amazon that there were infringing listings.  What they didn't allege is after they identified those supposed infringing listings, Amazon refused to take appropriate action with respect to them.  It's also required that they identify specific product pages or specific products and that's not -- they just say they told us about allegedly infringing products in the complaint.  They don't say, for example, on you know, January 1st, 2022, we identified GOLO Cookbook for Dummies as an allegedly infringing product and Amazon refused to

take it down and it's still available to this date.  It hasn't done anything like that for any work at all in this entire case.  And it's been well established since 2010 that that's the kind of notice, specific particularized notice that is required in order to hold a party liable for contributory infringement of a trademark.

THE COURT:  All right.  Where is your specific notice that you say is deficient?

MR. RETTEW:  Your Honor, it's the exhibit to the complaint, we've identified -- there is an enormous exhibit to the complaint.  I don't understand.  I don't actually understand the argument that we haven't identified what's infringing.  We have been identifying with specificity, it's Exhibit C to the complaint --

THE COURT:  Which complaint?  I don't know what --

MR. RETTEW:  That document --

THE COURT:  We got original complaint.

MR. RETTEW:  So --

THE COURT:  What do you want me to look at?

MR. RETTEW:  Document 54-1, Your Honor, Exhibit C, we list out all the books that we contend are infringing.  And I don't know what other way to put Amazon on notice than to list the various products that we say are infringing.  So they're amply on notice.

THE COURT:  And they're on notice as of when?

MR. RETTEW:  Well, certainly -- and this is one of the issues I think we have to deal with in this case, Your Honor, we've identified all the infringing listings that we know of in our First Amended Complaint ---

THE COURT:  So they're on notice as of when, August what, 5th, or not yet, I don't know what you're -- I don't know what you're saying so I can't -- are you saying that before they had this listing, they had no notice?

MR. RETTEW:  No, there have been -- before this there have been letters and correspondence.

THE COURT:  That's what I'm asking, in whatever it is that you say gave notice, what was that and how does it meet the standard?  You're pointing me to something that I have no idea what the date is.  I don't know if you're saying from this date forward you have given notice, no idea.

MR. RETTEW:  Well, there are several --

THE COURT:  So do you say gives notice and what does it give notice of?

MR. RETTEW:  Okay.  First thing, Your Honor, to answer your question, this complaint filed on August 5th, gives notice of all of these books that we say are infringing and should be taken down, on August 5th.  Since that time, Your Honor, because new --

THE COURT:  So for one month, you're saying there is notice that would be sufficient for a claim of contributory infringement for these books?

MR. RETTEW:  As long as they stay up and are not taken down, absolutely.  Now, before this, Your Honor, we were on the -- and we allege this in the complaint, we were on the brand registry but Amazon kicked GOLO off of their brand registry program which is used to identify infringement.

So what we have done in this case is two things. We have the exhibit to the complaint where we identify the infringing products and we have been writing counsel as we learn new infringements to identify new infringements that we have learned that come up and we write -- we have been writing to Amazon's counsel identifying with specificity all of those listings.  And that's --

THE COURT:  All right.  We got to move on.  So I am going to deny the motion to dismiss, allow amendment on this.  Though I will say that what there was notice of and when is up in the air, but I do think that there is at least some things that they have appropriately alleged contributory infringement on.

Okay.  What's next?

MR. RETTEW:  Your Honor, if I may ask one --

THE COURT:  No.  No.

MR. FEE:  Your Honor, I think you have really touched on all the issues now.  We had an argument with respect to dilution which I think your ruling with respect to infringement has addressed, so I won't belabor those points.  And I think from our perspective, Your Honor, you have ruled on all the things that we need you to rule on today.

THE COURT:  Okay.  Anything else I need to rule on, plaintiffs?

MR. RETTEW:  Just one question we had for you, Your Honor, on the notice issue.  We obviously don't want to have to keep amending our complaint as we learn of more books that go on Amazon.  What we have been doing, as I said, is to write letters to Amazon to put them on notice of that.  Again, I want to be mindful, the Court obviously doesn't want more amendments as we learn more books, but I want to address the issue with the Court and Your Honor.

THE COURT:  I'm not going to rule on that, so if you think on you need to amend the complaint, amend the complaint.  If you think it's appropriate notice not to amend the complaint, then don't amend the complaint.  I'm not going to make your strategy for you, and I'm not going to rule on that.

MR. EISENBERG:  Thank you.

THE COURT:  All right.  Anything else I need to

deal with?

MR. FEE:  Not on our end, Your Honor.

THE COURT:  So the motion to dismiss is denied in part, granted in part.  The motion for leave to amend is the same.  And get your amended pleading on the docket by the end of the day tomorrow.

Anything else?

MR. RETTEW:  Nothing for plaintiff, Your Honor.

MR. FEE:  No, Your Honor.

THE COURT:  All right.  Thank you.

COURTROOM DEPUTY:  All rise.  Court is adjourned.

(Court adjourned at 4:06 p.m.)

I hereby certify the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.

/s/ Dale C. Hawkins
Official Court Reporter
U.S. District Court