IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GOLO, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 23-1200 (MN) |
| | ) | |
| AMAZON.COM, INC. and AMAZON.COM SERVICES LLC,, | ) | |
| | ) | |
| | ) | |
| Defendants. | | |

**MEMORANDUM OPINION**

Alexandra M. Joyce and Daniel M. Silver, MCCARTER & ENGLISH, LLP, Wilmington, DE; Douglas A. Rettew and Patrick J. Rodgers, FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP, Washington, D.C.; Morgan E. Smith, FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP, Palo Alto, CA, Steven K. Eisenberg, STERNE & EISENBERG, Warrington, PA – Attorneys for Plaintiff

Nancy Shane Rappaport, Michael L. Burns, and Stephen H. Barrett, DLA PIPER LLP (US), Wilmington, DE; Melissa A. Reinckens and Susan Acquista, DLA PIPER LLP (US), San Diego, CA; J. Kevin Fee and Jane W. Wise, DLA PIPER LLP (US), Washington, D.C.; Emily Green Radin, DLA PIPER LLP (US), New York, NY – Attorneys for Defendants

September 24, 2026
Wilmington, Delaware

Maryellen Noreika

**NOREIKA, U.S. DISTRICT JUDGE**

GOLO sued Amazon, claiming trademark infringement. Amazon moved for summary judgment and both sides filed *Daubert* motions.

## I. BACKGROUND

GOLO moved to exclude testimony from Dr. Simonson and Dr. Ugone. (D.I. 283, 284). Amazon moved to exclude testimony from Mr. Holmes, Mr. Rushton, Dr. McDonald, and Mr. Anderson. (D.I. 285, 287). The Court ruled on the Holmes, Rushton, and Anderson motions at the July 23 hearing. (D.I. 389 at 65:9-66:15, 69:21-70:24). This opinion resolves the motions regarding Simonson, Ugone, and McDonald.

Amazon moved for summary judgment on multiple grounds (D.I. 332, 333), but the Court found genuine disputes of material fact that precluded granting summary judgment on all but Amazon's counterfeiting motions. (*Id.* at 70:25-71:5). This opinion resolves the counterfeiting motions.

## II. LEGAL STANDARD

### A. Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Material" facts are those that "could affect the outcome of the case." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (citation omitted). "[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts

of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the moving party] do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)-(B). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989).

The court must view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014). "If there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996) (cleaned up).

**B. *Daubert***

Rule 702 of the Federal Rules of Evidence requires the Court to take up the gatekeeping role "of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. Any expert evidence sought to be admitted must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). There are "a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider ex rel. Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citation omitted). In other words, expert evidence is admissible only if "the testimony is based on sufficient facts or data," "is the product of reliable principles and methods," and "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d). The proponent of expert evidence bears the burden of demonstrating its admissibility by a

preponderance of evidence. *Id.*; *see also EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 92 (D. Del. 2016); *Daubert*, 509 U.S. at 592 n.10.

To be qualified under *Daubert*, an expert must "possess specialized expertise." *Schneider*, 320 F.3d at 404. This is a liberal requirement – "a broad range of knowledge, skills, and training qualify an expert." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994) (citation omitted). For the expert's evidence to "fit" the case, it "must be relevant for the purposes of the case and must assist the trier of fact." *Schneider*, 320 F.3d at 404. And reliability "is based on 'good grounds,' i.e., if it is based on the methods and procedures of science." *Paoli*, 35 F.3d at 744. "Good grounds" cannot be "subjective belief or speculation," but also need not be "the best methodology or unassailable research." *In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999). "Rather, the test is whether the particular opinion is based on valid reasoning and reliable methodology." *Id.* at 665 (citation omitted). "The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. Parties offering expert evidence "do not have to demonstrate . . . that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable." *TMI*, 193 F.3d at 665 (quoting *Paoli*, 35 F.3d at 744).

## III. DISCUSSION

### A. GOLO's *Daubert* Motions

#### 1. Simonson *Daubert*

The Simonson motion focuses on the legal question of whether an "author" can be the "source"/"origin" of goods under the Lanham Act. To win on trademark infringement, a trademark owner needs to show a likelihood that "consumers viewing the [infringing] mark would probably assume that the product or service it represents is associated with the ***source*** of a different product or service identified by a similar mark." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,

237 F.3d 198, 211 (3d Cir. 2000) (emphasis added because this *Daubert* focuses on whether an author can be the "source" of goods). That means GOLO must prove that consumers viewing the allegedly infringing books on Amazon's website would think that the source or origin of those books was GOLO. This requirement, generally shorthanded as "likelihood of confusion," is often proven through surveys conducted by expert witnesses. Both sides retained experts to conduct a likelihood of confusion survey in this case.

Dr. Simonson is Amazon's survey expert, and he was retained to critique GOLO's survey expert's (Dr. McDonald) opinions on consumer confusion and create his own likelihood-of-confusion survey. In Dr. Simonson's survey, respondents were shown "six diet cookbooks, two of which displayed the name 'GOLO,' two cookbooks displayed 'KETO,' and two displayed 'DASH.'" (D.I. 286, Ex. 3 ¶ 58). "Each respondent was asked to review the cover and the 'About the Author' page for each book." (D.I. 300 at 3 (citing D.I. 286, Ex. 3 ¶¶ 19-21)). Respondents were split into two groups, a test group and a control group. The control group was shown a disclaimer stating that "[t]he author is not sponsored, endorsed, or affiliated with any other person, company, entity, or source." (D.I. 286, Ex. 3 ¶¶ 20, 55). The respondents were then asked questions about "their perceptions of who produced, sponsored, or was affiliated with the book, as well as open-ended follow-up questions to clarify their reasoning." (D.I. 300 at 4 (citing D.I. 286, Ex. 3 ¶¶ 19, 57-60)). "[T]he overwhelming majority of respondents identified the author as the source of the book." (D.I. 300 at 4). When asked why they identified the author as the source of the book, the majority said they identified that person because it was "the author of the book." (*See generally*, D.I. 286, Ex. 3 (Simonson Rpt.) at Ex. G1, cols. AZ, BZ).[1]

[1] This native excel file was part of Dr. Simonson's expert report, and it contains the verbatim answers that the respondents provided to the survey. It was provided to the Court as part of the parties' *Daubert* briefing.

According to GOLO, Dr. Simonson's survey should be excluded because it "rest[s] on the erroneous premise that 'authorship' can serve as a source designation under the Lanham Act," relying primarily on *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). (D.I. 284 at 7); *see also* (D.I. 307 at 2 (GOLO claiming "[i]t is black letter law that an author can never be a source for the purposes of the Lanham Act")). GOLO's argument has teeth because in *Dastar*, the Supreme Court stated that the phrase "'origin of goods' in the Lanham Act [] refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Dastar*, 539 U.S. at 37. Additionally, the Third Circuit has interpreted *Dastar* as having "rejected the argument that the term origin could 'be stretched' to include broader concepts of origin such as 'the creator of the underlying work,' or 'the author of any idea, concept, or communication embodied in those goods.'" *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 229 (3d Cir. 2017) (citations omitted).

Amazon does not meaningfully dispute that *Dastar* forbids authors from being the "origin" or "source" of goods under the Lanham Act, but Amazon argues that *Dastar* is inapplicable here because the facts of this case are different. (D.I. 300 at 5-7). According to Amazon, *Dastar* is predicated on a traditional publishing model where the "creator of content and the producer of the physical product" are different people or entities. (*Id.* at 5). This case, by contrast, focuses on books that Amazon claims have been self-published using Amazon's Kindle Direct Publishing ("KDP") service, and, under Amazon's read, *Dastar* "does not preclude treating self-publishing authors as producers." (*Id.* at 5-6; *see also id.* at 7 ("GOLO's argument assumes a traditional publishing model, where the publisher is a separate entity from the author. The KDP model is fundamentally different: the author is the publisher and the party responsible for the production and distribution of the book")).

Although that may be true in the abstract, Amazon pointed to no evidence that any meaningful number of respondents to Dr. Simonson's survey identified the author because they believed the book was self-published (*i.e.*, that the author was the publisher). Fed. R. Evid. 702 (stating that "proponent" of expert testimony must demonstrate admissibility by preponderance of evidence). Instead, at oral argument, GOLO pointed the Court to evidence in the form of raw responses to Dr. Simonson's survey indicating that the respondents identified the author as the source of goods purely because that person was listed as the author (not because the author was also the publisher). (D.I. 389 at 22:8-21; D.I. 286, Ex. 3 (Simonson Rpt.) at Ex. G1, cols. AZ, BZ). That does what *Dastar* forbids, attributing trademark protection to "the creator of the underlying work," and it does so because Dr. Simonson designed a survey that is premised on the notion that the creator of the underlying work can be the source in a trademark sense. *Parks LLC*, 863 F.3d at 229. Because Dr. Simonson's survey is "premised on a misunderstanding of the law," the Court will exclude it.[2] *Exela Pharma Scis., LLC v. Eton Pharms., Inc.*, Case No. 20-365 (MN), 2022 WL 806524, at *3 (D. Del. Feb. 8, 2022) ("[C]ourts routinely preclude those portions of an expert's report that are premised on a misunderstanding of the law.").

**2. <u>Ugone *Daubert*</u>[3]**

Dr. Keith Ugone is Amazon's damages expert, and GOLO wants to preclude his testimony on (1) the reliability of GOLO's surveys and (2) his alternative damages calculations that apply

2 To the extent that Dr. Simonson has other opinions (for example, opinions on mistakes or shortcomings of Dr. McDonald's survey) that do not rely on the notion that the author is the source of the books, Dr. Simonson may still offer those opinions. For example, GOLO also argued that Dr. Simonson's rebuttal was premised on a misunderstanding of GOLO's business. (D.I. 284 at 10-12). That argument goes to weight, not admissibility.

3 This section assumes that Dr. McDonald is still able to offer an opinion about customer confusion despite the Court's exclusion of Dr. McDonald's survey (in part) below. To the

confusion percentages from Dr. McDonald's survey to adjust GOLO's lost profits calculation. (D.I. 283 ⁋ 3; D.I. 284 at 15-16).

Starting with the first complaint, GOLO says that Dr. Ugone impermissibly "parrots" opinions from Amazon's experts that surveys performed by GOLO's experts are flawed. (D.I. 284 at 15-16). According to GOLO, that warrants exclusion because "[Dr.] Ugone is an economist [] not a survey expert." (*Id.* at 16). Put differently, GOLO says Dr. Ugone lacks the credentials to opine on whether a survey is flawed or not. The issue with GOLO's argument is that Dr. Ugone is not actually offering opinions on any surveys that GOLO conducted. Instead, Dr. Ugone states that he "understand[s] from Dr. Simonson (one of Amazon's survey experts) that [Dr. McDonald's] report is flawed and substantially overestimates customer confusion" and that he "understand[s] from Dr. Pittaoulis (one of Amazon's survey experts) that [Dr. Swain's] survey also is significantly flawed." (D.I. 286, Ex. 1 ⁋ 7(c)(i), n.7; *see also e.g.*, *id.* ⁋ 68 ("However, based upon a discussion with Dr. Itamar Simonson, one of Amazon's survey experts, I understand that the survey presented in the McDonald Report is significantly flawed and does not yield reliable results."); *id.* ⁋ 111 ("I understand based upon a discussion with Dr. Itamar Simonson that the customer confusion survey conducted by Dr. McDonald is significantly flawed and overstates the likelihood of customer confusion."); *id.* ⁋ 111 n.245 ("While I understand that this survey does not measure customer confusion, I understand from Dr. Pittaoulis (one of Amazon's survey experts) that this survey also is significantly flawed. (Based upon a discussion with Dr. Pittaoulis.)"). Dr. Ugone then uses that understanding as an input to his overall opinion. There is nothing wrong

---

extent that Dr. McDonald is no longer able to offer a reliable opinion on customer confusion, Dr. Ugone is likewise not permitted to rely on Dr. McDonald's opinion.

with a damages expert relying on other experts as inputs for the damages expert's ultimate opinions, and GOLO's concerns here are best addressed on cross.

GOLO's second argument fairs better. Here, GOLO seeks to exclude Dr. Ugone's alternative lost profits calculations, which applied the customer confusion percentages calculated by GOLO's survey expert (Dr. McDonald) to discount the lost profits stemming from Amazon's alleged misuse of GOLO's marks in keyword search advertising and search engine optimization that GOLO's damages expert (Mr. Anderson) calculated. (D.I. 284 at 15, 17-20). In terms of math, Dr. Ugone multiplied Mr. Anderson's lost profits numbers by Dr. McDonald's customer confusion percentages. As an example, say Dr. McDonald's survey showed a customer confusion percentage of 25%, and Mr. Anderson calculated lost profits of $400,000. In that case, Dr. Ugone would have multiplied 0.25 x $400,000 to adjust Mr. Anderson's lost profits to $100,000. (D.I. 286, Ex. 1 (Ugone Rebuttal Rpt.) ¶¶ 110-113, tbl. 16).

According to GOLO, applying a customer confusion percentage to the diverted-traffic lost profits figure is unreliable because the McDonald survey is simply evidence that customer confusion exists; it is not reliable for calculating damages. (D.I. 284 at 17 (citing *adidas Am., Inc. v. Skechers USA, Inc.*, No. 3:15-CV-01741-HZ, 2017 WL 3319190, at *28 (D. Or. Aug. 3, 2017)). Case law supports GOLO's position. *See e.g.*, *adidas Am., Inc.*, 2017 WL 3319190, at *28 (rejecting Defendant's attempt to discount profits based on customer confusion rates because that methodology "conflates evidence of infringement with evidence of damages"); *Vital Pharms. v. PhD Mktg., Inc.*, Case No. 20-06745 (RSWL) (JCX), 2022 WL 2952495, at *6 (C.D. Cal. July 26, 2022) (rejecting expert's analysis that discounted profits based on customer confusion as

"flawed for a number of reasons").[4] GOLO also says that using Dr. McDonald's customer confusion survey to discount Mr. Anderson's diverted-traffic lost profits does not fit the facts of the case because the survey measures "customer confusion arising from Amazon's sale of infringing cookbooks" whereas Mr. Anderson's lost profits calculates "lost profits [] based on *diverted web traffic* resulting from Amazon's use of GOLO's Marks in its paid search engine advertisements and organic search engine results."[5] (D.I. 284 at 19 (emphasis in original)). Amazon, of course, disagrees. (D.I. 300 at 12-18).

GOLO is right. There is a mismatch between what Dr. McDonald's survey shows and what Mr. Anderson's lost profits is based on. As Amazon acknowledged in its briefing to exclude Dr. McDonald's survey, the McDonald survey "test[s] the likelihood that consumers who encounter on Amazon's website a cookbook titled, 'The GOLO Diet Cookbook: 1800 Days of Simple and Tasty Recipes for Weight Loss. Includes a 60-Day Food Plan,' authored by Catalina Morrow, would identify Plaintiff as the source of the book." (D.I. 287 at 13). By contrast, Mr. Anderson's diverted-traffic lost profits opinion measures the profits GOLO allegedly lost based on Amazon's use of GOLO's marks in keyword search advertising and its search engine optimization. (D.I. 284, Ex. 4 (Anderson Rpt.) ⁋ 4). What is missing is any logical link explaining why it is reliable to discount lost profits from Amazon's alleged use of GOLO's marks in keyword

---

4 Amazon says these cases are not analogous because they deal with disgorgement, not a Plaintiff's claim for lost profits. (D.I. 300 at 17 n.3). Setting aside the fact that Amazon itself said cases in the disgorgement context are "instructive" (*Id.* at 18 (citing *PNC Fin. Servs. Grp., Inc. v. Plaid Inc.*, Case No. 20-1977, 2024 WL 3691607, at *12 (W.D. Pa. Aug. 7, 2024)), the fact that some of these cases come from disgorgement discussions makes no difference because disgorgement (like lost profits) measures profits.

5 GOLO is essentially making a comparing-apples-and-oranges argument here. (D.I. 307 at 9 (GOLO saying that "[Amazon's argument] also has no bearing on the reliability of Ugone's decision to use a ***cookbook*** confusion survey to discount damages from diverted ***web traffic***.") (emphasis in original)).

searches and search engine optimization by the rate at which consumers were confused about the source of a book titled "The GOLO Diet Cookbook: 1800 Days of Simple and Tasty Recipes for Weight Loss. Includes a 60-Day Food Plan." *See* Fed. R. Evid. 702 (stating that "proponent" of expert testimony must demonstrate admissibility by preponderance of evidence).

According to Amazon, applying the confusion percentage from McDonald's survey passes *Daubert* because "GOLO did not conduct a consumer survey to test consumer confusion as to paid or organic search results." (D.I. 300 at 14-15). But that effectively concedes GOLO's argument, *i.e.*, that the McDonald survey is not a reliable proxy for customer confusion in the paid and organic search context. Not to worry, Amazon says, using the McDonald survey as Dr. Ugone does passes *Daubert* "[i]n the absence of another reasonable estimate." (*Id.* at 16). That argument fails because the reliability of Dr. Ugone's analysis does not depend on whether there was another reasonable estimate; it depends on whether Dr. Ugone uses the McDonald survey in a reliable way. At bottom, if Amazon wanted Dr. Ugone to rely on the McDonald survey to discount Mr. Anderson's diverted-traffic lost profits opinion, Amazon needed to logically link Dr. McDonald's survey to Mr. Anderson's diverted-traffic lost profits. It has not, so the Court will preclude Dr. Ugone from offering an alternative lost profits opinion that discounts Mr. Anderson's diverted-traffic lost profits opinion based on the McDonald survey.

## B. Amazon's *Daubert* Motions

### 1. McDonald *Daubert*

Amazon moved to exclude testimony from Dr. McDonald, GOLO's survey expert. Dr. McDonald conducted a survey to test likelihood of confusion, using an unaccused book titled "The GOLO Diet Cookbook: 1800 Days of Simple and Tasty Recipes for Weight Loss. Includes a 60-Day Food Plan" ("the 1800 Days Book") as the sole stimulus. (D.I. 288, Ex. 7 ⁋ 85; D.I. 298

at 10 (GOLO stating that "***The*** stimulus in McDonald's survey is the book titled, . . . ." (emphasis added)).

According to Amazon, Dr. McDonald's survey fails *Daubert*'s fit requirement because the 1800 Days Book is not an accused product. (D.I. 287 at 12-13). But as Amazon itself recognizes, a survey can fit the facts of a case if it tests "products that are substantially similar to those at issue." (D.I. 287 at 13). So even if it is potentially a strong cross point, the fact that McDonald did not test an actual accused product is not a *Daubert* issue. That said, as the parties agree, GOLO is still required to show that stimulus Dr. McDonald used is substantially similar to the Accused Products. And although GOLO claims that "[t]he book McDonald tested is substantially similar to those falling under the defined term 'Accused Product,'" (D.I. 298 at 12), Dr. McDonald confirmed that her "survey speaks only to cookbooks that are titled the GOLO Diet Cookbook." (D.I. 288, Ex. 8 at 87:13-25). In fact, "[t]he only searches that [Dr. McDonald has] done and the only search results [she] seen personally are GOLO Diet Cookbook."[6] That means that Dr. McDonald's survey cannot be reliably extended to any books that lack the exact phrase "GOLO Diet Cookbook" in the title, and the Court will grant Amazon's *Daubert* insofar as it seeks

6 At argument, GOLO's counsel argued that Dr. McDonald's survey would apply to all books with "GOLO" in the title because Dr. McDonald stated that "Anything with a GOLO title, GOLO, any GOLO titled cookbook for sale on Amazon is objectionable." (D.I. 389 at 52:12–18). Dr. McDonald, however, concluded that answer by saying "[i]f it says GOLO Diet Cookbook and it's for sale on Amazon, it's a problem," (D.I. 299, Ex. 13 at 84:13-16), confirming that her survey "speaks only to cookbooks that are titled the GOLO Diet Cookbook." (D.I. 288, Ex. 8 at 87:13-25).

to preclude Dr. McDonald from offering opinions on any book lacking the exact phrase "GOLO Diet Cookbook" in the title.[7, 8]

### C. Amazon's Counterfeiting Summary Judgment Motions

#### 1. Merits of GOLO's Counterfeiting Claims

Amazon moved for summary judgment on the merits of GOLO's counterfeiting claim. (D.I. 333 at 15-19). Under the Lanham Act, a "counterfeit" is "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127 (emphasis added). Amazon first says that GOLO's counterfeiting claim fails because the alleged counterfeiting is in the context of using GOLO's trademark in book titles. (D.I. 333 at 15-16). Amazon reads § 1127's reference to "spurious mark" to mean that counterfeiting requires GOLO to first establish that the alleged counterfeit is using GOLO's registered mark as a trademark, *i.e.*, as a source identifier. (D.I. 354 at 9 (Amazon emphasizing that "counterfeiting is defined as use of a "spurious ***mark***"). But because case law says that a single book title cannot be registered as

---

7 Amazon also says that Dr. McDonald's survey is unreliable because the Accused Products have highly variable "titles, appearance, and presentation." (D.I. 287 at 14). For books that have the exact phrase "GOLO Diet Cookbook" in the title, the variation in title, appearance, and presentation is a matter for cross. *See adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1045 (D. Or. 2008) ("Where actually surveyed products and subsequently accused products share common and prominent features, a trademark infringement plaintiff need not create new likelihood of confusion surveys for each newly accused product.").

8 Amazon also moved to exclude Dr. McDonald's opinions as improper legal conclusions, but in its opening brief Amazon did not specifically identify what improper legal conclusions it sought exclusion of, instead generically pointing to four paragraphs in Dr. McDonald's report. (D.I. 287 at 16 (citing Dr. McDonald's ¶¶ 43, 64, 65, 120 as "example[s]")). It is true that Dr. McDonald may not offer legal opinions, but it is not clear to the Court what exactly Amazon is trying to exclude, so the Court will deny Amazon's *Daubert*. If, however, Amazon believes Dr. McDonald is going to offer a legal opinion, Amazon may object or bring that issue to the Court's attention before Dr. McDonald testifies and use its trial time to argue the issue.

a trademark, using GOLO's trademark in a book title cannot provide the basis for a counterfeiting claim. (D.I. 333 at 15-16 (citing *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156 (Fed. Cir. 2002) and *In re Cooper,* 254 F.2d 611 (C.C.P.A. 1958)); *see also USPTO Trademark Manual of Examining Procedure* § 1202.08 (Nov. 2025), *available at* https://tmep.uspto.gov/RDMS/TMEP/current#/Nov2025/d1e2.html; (D.I. 333 at 16 ("Because the alleged counterfeit marks are single-work book titles, they do not function as trademarks and cannot support a counterfeiting claim.")). The primary issue for Amazon is that the cases it relies on focus on the requirements for a plaintiff to register a trademark, not on how a defendant must use a registered trademark in a counterfeiting case. For example, in *In re Cooper*, the "sole question" was whether "the title of a book [] is registrable as a trademark." 254 F.2d at 924. In *Herbko Int'l*, the Court reversed the USPTO's cancellation of a registered trademark. 308 F.3d at 1160, 1166.

Section 1127's reference to "spurious mark" does not require a defendant to use a registered trademark in a way that would also qualify for trademark registration; it simply requires that the defendant use the registered trademark in a way that would falsely confuse consumers as to the source of the goods.[9] Put differently, the "spurious mark" portion of § 1127 simply requires that the defendant is committing trademark infringement. Including the trademarked word "GOLO" in a diet or nutrition book title could confuse consumers that the book is in fact an authentic GOLO book, and Amazon has not pointed to any conclusive (let alone undisputed) facts indicating otherwise.

[9] There is also an additional requirement that the "spurious mark" be "identical with, or substantially indistinguishable from, a registered mark," which the Court addresses next.

Amazon also seizes on the second half of § 1127, which requires that the counterfeit be "identical with, or substantially indistinguishable from, a registered mark," arguing that the use of GOLO's mark on the alleged counterfeits is neither identical with, nor substantially indistinguishable from GOLO's registered mark. (D.I. 333 at 15 ("GOLO's counterfeiting claims are futile because the context in which the accused books are sold makes clear that the cookbooks are not counterfeits.")). The degree of similarity required to prove counterfeiting is higher than it is with other types of trademark infringement; it requires that the infringing use be "identical with, or substantially indistinguishable from, a registered mark." *Lontex Corp. v. Nike, Inc.*, 107 F.4th 139, 158 (3d Cir. 2024); *see also* J. Thomas McCarthy*, McCarthy on Trademarks and Unfair Competition* § 25:15.50 (5th ed.) ("The test of 'identical with, or substantially indistinguishable from' requires a much closer degree of similarity than is required for traditional infringement of a registered trademark."). Similarity between two marks is measured by comparing the "'overall impression' ordinary consumers would have upon encountering the marks." *Lontex*, 107 F.4th at 158. In conducting this "overall impression" analysis, the context in which a mark is used is important. *Id.* For example, in *Lontex*, Lontex registered the phrase "COOL COMPRESSION" as a trademark and claimed that Nike's "use of 'NIKE PRO COOL COMPRESSION' and 'PRO COOL COMPRESSION'" infringed Lontex's trademark. *Lontex Corp. v. Nike, Inc.*, 384 F. Supp. 3d 546, 557 (E.D. Pa. 2019), *aff'd*, 107 F.4th 139 (3d Cir. 2024). Looking at the entire context of the alleged counterfeit, the District Court found that adding "PRO" and "NIKE PRO" to the front of Lontex's trademarked "COOL COMPRESSION" defeated Lontex's counterfeiting claim because "a mark that differs from a registered mark by a few letters, let alone one or two words, is not a counterfeit." *Id.*

That same logic applies here. GOLO trademarked the word "'GOLO' in standard characters covering printed cookbooks and recipe books." (D.I. 343 ⁋ 6; D.I. 355 ⁋ 6 (admitting D.I. 343 ⁋ 6)). It even put the word "GOLO" on some of its recipe books. (D.I. 333 at 17 (depicting two authentic GOLO recipe books)). And although it appears that Amazon may sell books with the word "GOLO" on the front cover of them, the context of those books (at least the six that Amazon provided pictures of in their brief), differs markedly from GOLO's trademark because they include additional words and letters. For example, one book reads "VITALITY FOR LOVERS: REVITALIZING HEALTH AND ROMANCE WITH GOLO DIET." Another reads "INTERMITTENT FASTING for WOMEN over 60 + GOLO DIET COOKBOK FOR SENIORS." (*Id.*). The inclusion of those additional words takes those books out of the realm of counterfeiting because an ordinary consumer viewing the cookbooks on Amazon's website would not find those books "identical" or "substantially indistinguishable" from GOLO's. *Lontex*, 107 F.4th at 158. So, at least for the six books that Amazon identified in its brief, Amazon is entitled to summary judgment on Golo's counterfeiting claims.[10]

### 2. <u>Timing for GOLO's Counterfeiting Claim</u>

For the counterfeiting claims that survive, Amazon says that "they must be limited to books that were first published after the date of first use set forth in Reg. No. 7,475,110 ("'110 Registration"), the trademark registration that forms the basis for GOLO's counterfeiting claims."[11] (D.I. 333 at 19). Amazon says that GOLO's counterfeiting claim requires it to first

---

10 The Court is limiting its analysis to the six allegedly counterfeit books that Amazon included in its briefing. Although this means that (in theory) GOLO can still bring its counterfeiting claims as to other books, the Court presumes that GOLO will prepare its trial presentation with the Court's ruling in mind. Failure to do so will risk wasting trial time on claims that may lose at JMOL. (D.I. 389 at 12:8-14, 13:1-15).

11 GOLO has conceded that its counterfeiting claim is limited to sales made after August 13, 2024. The dispute here focuses on whether books that were published before

have "trademark priority in the relevant category of goods." (D.I. 333 at 20). According to Amazon, GOLO's priority date is October 3, 2023 because trademark law "requires a *series* of at least two titles before trademark rights attach," and GOLO admits that the "launch date of volume two of GOLO's recipe book" was "October 3, 2023." (D.I. 354 at 10; D.I. 340 at 20). It follows, Amazon says, that any books published before October 3, 2023 "predate GOLO's priority" and therefore cannot form the basis of a counterfeiting claim.

The cases Amazon relies on do not support such a rigid approach. For example, in *Herbko Int'l.*, the Federal Circuit laid out a scenario in which "the proprietary rights for the [book] series title date back to the first volume of the series," namely when "the second volume is published within a reasonable time with a requisite association in the public mind." 308 F.3d at 1163. Here, GOLO claims that that requisite association is satisfied because "GOLO acquired secondary meaning in its GOLO mark for cookbooks and recipes before the first counterfeit publication date [] of any of the alleged counterfeit books[.]" (D.I. 340 at 22); *see Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989) ("[W]here the title of a movie or a book has acquired secondary meaning – that is, where the title is sufficiently well known that consumers associate it with a particular author's work – the holder of the rights to that title may prevent the use of the same or confusingly similar titles by other authors."); J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 10:2 (5th ed.) ("[T]he courts have given trademark protection to titles of one-shot, single works (not in a series) only upon a showing of secondary meaning, even though the title is not descriptive of the contents of the work."). Given that, it is entirely possible that GOLO's trademark acquired priority over books published prior to October 3, 2023, but there is a factual

---

October 3, 2023 but sold after August 13, 2024 can be included in GOLO's counterfeiting claim.

dispute about whether GOLO acquired the requisite secondary meaning. That factual dispute precludes summary judgment. *See Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000) (listing 11-factor test for analyzing secondary meaning).

## IV. CONCLUSION

For the foregoing reasons, GOLO's motions to exclude testimony from Drs. Simonson and Ugone will be granted-in-part and denied-in-part; Amazon's motion to exclude testimony from Dr. McDonald will be granted-in-part and denied-in-part; and Amazon's motions for summary judgment on counterfeiting will be granted-in-part and denied-in-part. An appropriate order will follow.