**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| GOLO, LLC,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC., and<br>AMAZON.COM SERVICES LLC<br><br>Defendants. | C.A. No. 23-1200-MN |

**[PROPOSED] FINAL JURY INSTRUCTIONS[1]**

[1] Notwithstanding diligent efforts, the parties have outstanding issues to address and respectfully request an opportunity to amend this submission.

# TABLE OF CONTENTS


**GENERAL JURY INSTRUCTIONS.................................................................................. 1**

Instruction No. 1.1 – Introduction.......................................................................... 1

Instruction No. 1.2 – Juror's duties......................................................................... 2

Instruction No. 1.3 – Evidence Defined.................................................................... 3

Instruction No. 1.4 – Direct and Circumstantial Evidence .............................................. 5

Instruction No. 1.5 – Consideration of Evidence.......................................................... 6

Instruction No. 1.6 – Burdens of Proof...................................................................... 7

Instruction No. 1.7 – Credibility of Witnesses ............................................................ 9

Instruction No. 1.8 – Number of Witnesses................................................................ 10

Instruction No. 1.9 – Opinion Testimony .................................................................. 11

Instruction No. 1.10 – Deposition Testimony.............................................................. 12

Instruction No. 1.11 – Use of Interrogatories ............................................................. 13

Instruction No. 1.12 - Exhibits.................................................................................. 14

Instruction No. 1.13 – Stipulations of Fact ................................................................ 15

Instruction No. 1.14 – Use of Notes .......................................................................... 16

**TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION ................................. 17**

Instruction No. 2.1 – Trademark Overview and Definition of a Trademark, .................. 17

Instruction No. 2.2 – Trademark Infringement and Unfair Competition.......................... 19

Instruction No. 2.3 – GOLO's Trademarks .................................................................. 21

Instruction No. 2.4 – Likelihood of Confusion, ............................................................ 24

Instruction No. 2.5 – Likelihood of Confusion Factors .................................................. 29

Instruction No. 2.6 - Trademark Infringement - Counterfeiting...................................... 42

**INSTRUCTION NO. 2.7 – CONTRIBUTORY AND VICARIOUS TRADEMARK INFRINGEMENT AND COUNTERFEITING ........................................................ 45**

Instruction No. 2.8 – Contributory Trademark Infringement and Counterfeiting ........... 46

Instruction No. 2.9 – Vicarious Trademark Infringement and Counterfeiting ................ 49

Instruction No. 2.10 – Defense of Nominative Fair Use, .............................................. 51

Instruction No. 2.12 – First Amendment Protection for Bookstores ............................... 61

**FALSE ADVERTISING CLAIMS ........................................................................... 69**

Instruction No. 3.1 – False Advertising Generally ......................................................... 69

Instruction No. 3.2 – False Advertising: Element One – False or Misleading Statements in Commercial Advertising or Promotion ........................................ 71

Instruction No. 3.3 - False Advertising: Element Two - Deception ................................ 76

Instruction No. 3.4 - False Advertising: Element Three – Travel in Interstate Commerce ........................................................................................... 78

Instruction No. 3.5 - False Advertising: Element Four - Materiality............................... 79

Instruction No. 3.6 - False Advertising: Element Five – Actual Injury [GOLO: or Likelihood of Injury]........................................................................... 81

Instruction No. 3.7 – Section 230 of the Communications Decency Act ......................... 84

Instruction No. 3.8 – Nominative Fair Use as to False Advertising, .............................. 87

**WILLFULNESS.............................................................................................. 89**

Instruction No. 4.1 – Willful Conduct as to any Claim .................................................. 89

**DAMAGES ........................................................................................................ 91**

Instruction No. 5.1 – Monetary Awards .......................................................................... 91

Instruction No. 5.2 – Monetary Awards: Compensatory Damages ................................. 92

Instruction No. 5.3 – Monetary Awards: Statutory Damages.......................................... 94

**FINAL INSTRUCTION AND REMINDERS............................................................ 95**

Instruction No. 6.1 - Deliberation and Verdict-Introduction .......................................... 95

Instruction No. 6.2 - Unanimous Verdict.......................................................................... 97

Instruction No. 6.3 - Duty to Deliberate ........................................................................ 98

Instruction No. 6.4 - Court Has No Opinion.................................................................... 99

# GENERAL JURY INSTRUCTIONS

## INSTRUCTION NO. 1.1 – INTRODUCTION[2]

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case. Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say. In following my instructions, you must follow all of them and not single out some and ignore others. They are all important.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

---

[2] *GOLO, LLC v. Goli Nutrition, Inc. et al.*, No. 1:20-cv-00667-CFC-SRF, D.I. 691 (D. Del. Aug. 25, 2023), Final Jury Instructions ("*GOLO* Final Jury Instructions") at 2.

## INSTRUCTION NO. 1.2 – JUROR'S DUTIES[3]

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on any given issue. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

[3] *GOLO* Final Jury Instructions at 3; Third Circuit Model Jury Inst. 3.1 (03/2026).

## INSTRUCTION NO. 1.3 – EVIDENCE DEFINED[4]

The evidence from which you are to find the facts consists of the following:

1. The testimony of the witnesses while they were testifying under oath (including deposition testimony that has been played by video or submitted by reading testimony into the record);
2. Documents and other things that I allowed into evidence as exhibits; and
3. Any facts that are stipulated to—that is, formally agreed to by the parties.

The following things are not evidence:

1. Statements, arguments, and questions of the lawyers for the parties in this case;
2. Objections by lawyers;
3. My legal rulings, comments, and questions;[5]
4. Any testimony I tell you to disregard; and
5. Anything you may see or hear about this case outside the courtroom.

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

There are rules that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. This simply means that the lawyer is

---

[4] *Rockwell Automation, Inc. v. Parcop S.R.L.*, No. 1:21-cv-01238-GBW-JLH, D.I. 335 (D. Del. July 28, 2023), Final Jury Instructions ("*Rockwell* Final Jury Instructions") at 3; *GOLO* Final Jury Instructions at 5; Third Circuit Model Jury Inst. 1.5 (03/2026).

[5] *GOLO* Final Jury Instructions at 5.

requesting that I make a decision on a particular rule of evidence. You should not be influenced by the fact that an objection was made. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection was sustained, ignore the question. If it was overruled, treat the answer like any other. If you were instructed that some item of evidence was received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence was ordered struck from the record and you were instructed to disregard this evidence. Do not consider any testimony or other evidence that was struck or excluded. Do not speculate about what a witness might have said or what an exhibit might have shown.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

## INSTRUCTION NO. 1.4 – DIRECT AND CIRCUMSTANTIAL EVIDENCE[6]

As I previewed for you at the beginning of the trial, there are two types of evidence that you may use in reaching your verdict. One type of evidence is called "direct evidence." An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses — something the witness has seen, felt, touched or heard or did. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Another form of direct evidence is an exhibit where the fact to be proved is its existence or current condition.

The other type of evidence is circumstantial evidence. "Circumstantial evidence" is proof of one or more facts from which you could find another fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You should consider both kinds of evidence that were presented to you. The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

[6] Third Circuit Model Civil Jury Instr. 1.6 (03/2026).

**INSTRUCTION NO. 1.5 – CONSIDERATION OF EVIDENCE**[7]

You should use your common sense in weighing the evidence. Consider the evidence in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

[7] *Rockwell* Final Jury Instructions at 6; *GOLO* Final Jury Instructions at 7; Third Circuit Model Jury Inst. 1.5 (03/2026).

## INSTRUCTION NO. 1.6 – BURDENS OF PROOF[8]

This is a civil case. GOLO is the party that brought this lawsuit. Amazon is the party against which the lawsuit was filed. GOLO has the burden of proving its case by what is called the preponderance of the evidence. That means GOLO has to prove to you, in light of all the evidence, that what it claims is more likely so than not so. To say it differently: if you were to put the evidence favorable to GOLO and the evidence favorable to Amazon on opposite sides of the scales, GOLO would have to make the scales tip somewhat on its side. If GOLO fails to meet this burden, the verdict must be for Amazon. If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

On certain issues, called affirmative defenses, Amazon has the burden of proving the elements of the defense by a preponderance of the evidence. I will instruct you on the facts that will be necessary for you to find on any affirmative defense. An affirmative defense is proven if you find, after considering all evidence in the case, that Amazon has succeeded in proving that the required facts are more likely so than not so.

---

[8] Third Circuit Model Jury Insts. 1.10-1.11 (03/2026).

You may have heard of the term “proof beyond a reasonable doubt.” That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this. So you should put it out of your mind.

## INSTRUCTION NO. 1.7 – CREDIBILITY OF WITNESSES[9]

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. "Credibility" means whether a witness is worthy of belief. You may believe everything a witness says or only part of it or none of it. In deciding what to believe, you may consider a number of factors, including the following:

(1) the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

(2) the quality of the witness's understanding and memory;

(3) the witness's manner while testifying;

(4) whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

(5) whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

(6) how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and

(7) any other factors that bear on believability.

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.

---

[9] Third Circuit Model Jury Inst. 1.7 (03/2026).

## INSTRUCTION NO. 1.8 – NUMBER OF WITNESSES[10]

One more point about witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference. The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

---

[10] *GOLO* Final Jury Instructions at 9; *Rockwell* Final Jury Instructions at 10; Third Circuit Model Civil Jury Instr. 3.2 (03/2026).

## INSTRUCTION NO. 1.9 – OPINION TESTIMONY

You heard testimony containing opinions from **[Insert Witnesses]**. In weighing this opinion testimony, you may consider the witnesses' qualifications, the reasons for their opinions, and the reliability of the information supporting those opinions, as well as the factors I have previously mentioned for weighing the testimony of any other witness. The opinions of these witnesses should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.

In deciding whether to accept or rely upon the opinions of these witnesses, you may consider any bias that the witnesses may have, including any bias that may arise from evidence that the witnesses have been or will be paid for reviewing the case and testifying or from evidence that the witnesses testify regularly and make a large portion of their income from testifying in court.[11]

[11] Third Circuit Model Civil Jury Instr. 2.11 (03/2026).

## INSTRUCTION NO. 1.10 – DEPOSITION TESTIMONY[12]

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

Deposition testimony was taken under oath in advance of this trial and preserved in writing and on video. You are to consider all such testimony as if it had been given in person in this Court. Deposition testimony is out-of-court testimony given under oath and is entitled to the same consideration you would give it had the witnesses appeared personally in Court.

The deposition testimony may have been edited or cut to exclude irrelevant or unnecessary testimony as the parties have only a limited amount of time to present you with evidence. You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

[12] *GOLO* Final Jury Instructions at 10; *Rockwell* Final Jury Instructions at 12; Third Circuit Model Civil Jury Instr. 2.5 (03/2026).

## INSTRUCTION NO. 1.11 – USE OF INTERROGATORIES[13]

You heard answers that the parties gave in response to written questions submitted by the other side. The written questions are called "interrogatories." The written answers were given in writing and under oath, before the trial. You must consider the parties' answers to interrogatories in the same manner as if the answers were made from the witness stand.

[13] *Rockwell* Final Jury Instructions at 13; Third Circuit Model Civil Jury Instr. 2.6 (03/2026).

## INSTRUCTION NO. 1.12 - EXHIBITS[14]

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room to consider as evidence for your deliberations.

**[GOLO: The parties have presented exhibits in the form of charts and summaries. For the charts and summaries that I have admitted, some have been admitted with the underlying documents that they represent, and some without the documents in order to save time and avoid unnecessary inconvenience. You should consider these charts and summaries as you would any other evidence.]**[15]

Any charts and summaries that have not been admitted into evidence were offered to help illustrate the content of documents, testimony, or other evidence in the case. These charts and summaries are not themselves proof of any facts. They are not binding on you in any way. If they do not correctly reflect the facts shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the evidence.

---

[14] Third Circuit Model Civil Jury Instr. 2.7, 2.8 (03/2026).

[15] **AMAZON**: Amazon objects to GOLO's proposed language because GOLO has not timely disclosed any exhibits in the form of FRE 1006 charts or summaries. Amazon further objects that GOLO's language impermissibly expands Third Circuit Model Civil Jury Instruction 2.7, which applies only to charts and summaries admitted "in place of the underlying documents that they represent," to charts and summaries admitted alongside the underlying documents, which should instead be treated as aids to the jury's evaluation of the underlying evidence, not as independent proof. *See* Third Circuit Model Civil Jury Instr. 2.7 & 2.8 cmt. (03/2026) (citing *United States v. DeBoer*, 966 F.2d 1066, 1069 (6th Cir. 1992)).

## INSTRUCTION NO. 1.13 – STIPULATIONS OF FACT[16]

The parties have stipulated that certain facts are true, and those stipulations have been read to you during this trial. You must therefore treat these facts as having been proved for the purposes of this case.

[16] *GOLO* Final Jury Instructions at 13; Third Circuit Model Civil Jury Instr. 2.4 (03/2026).

## INSTRUCTION NO. 1.14 – USE OF NOTES[17]

You may use notes taken during trial to assist your memory. However, as I instructed you at the beginning of the case, you should use caution in consulting your notes. There is a tendency to attach undue importance to matters that you have written down. Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

[17] *GOLO* Final Jury Instructions at 12; *Rockwell* Final Jury Instructions at 17.

## TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

### INSTRUCTION NO. 2.1 – TRADEMARK OVERVIEW AND DEFINITION OF A TRADEMARK[18], [19]

A trademark is a word, name, symbol, or device, or any combination used by a person or entity to identify and distinguish their goods or services from those manufactured, offered, or sold by others and to indicate the sources of the goods or services, even if that source is generally unknown.[20]

**[GOLO: When a person or entity has established a trademark right with respect to a product before anyone else, the right to use it becomes an exclusive right, and the trademark becomes their property. No other person may then use the same or similar words, symbols, designs, or devices in any manner likely to cause consumer confusion regarding the source or origin of those goods. The manufacturer may enforce the right to exclude others in an action for trademark infringement.**

**A trademark also helps a prospective purchaser to select the goods or services the purchaser wants. A trademark signifies that all goods or services bearing the mark derive from a single source and are equivalent in quality and protects the manufacturer or**

---

[18] *Rockwell* Final Jury Instructions at 21; *Cirba Inc. et al. v. VMWare, Inc.*, No. 1:19-cv-00742-LPS, D.I. 526, Final Jury Instructions (D. Del. Jan. 22, 2020) ("*VMWare* Final Jury Instructions") at 50; *GOLO* Final Jury Instructions at 15; 4 Modern Federal Jury Instructions-Civil ¶ 86A-1[1], 86A.02[1], and 86A-6[2] (2022).

[19] **AMAZON**: Amazon objects to GOLO's discussion of exclusive rights, property, and goodwill, and examples of multiple marks on a single product as unnecessary (as evidenced by the fact that no similar discussion was provided in GOLO's last trademark infringement trial), argumentative, and tilted toward the trademark owner. Amazon contends the definition alone is sufficient, and the remainder is argument better left to counsel.

[20] *GOLO* Final Jury Instructions at 15; 15 U.S.C. § 1127.

**merchant's goodwill. A single product can have more than one trademark (for example, "FORD" and "F-150" for trucks; "APPLE," and "IPHONE," for phones).]**

## INSTRUCTION NO. 2.2 – TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION[21]

To find liability for trademark infringement, you, the jury, must find by a preponderance of the evidence that:

1. GOLO's trademarks are valid, protectable;
2. GOLO owns its trademarks; and
3. Amazon used GOLO's trademarks in a manner that is likely to cause confusion among ordinary consumers in connection with the sale, offering for sale, distribution, or advertising[22] as to the source, sponsorship, affiliation, or approval of goods or services[23]

The test for trademark infringement and unfair competition is the same. **[GOLO: The only difference between these claims is that trademark infringement is limited to registered trademarks, while unfair competition applies to registered trademarks and common law trademark rights.[24]]**

---

[21] *GOLO* Final Jury Instructions at 16; *Rockwell* Final Jury Instructions at 22; *Modern Federal* Jury Instructions-Civil ¶ 86A-9 (2022); 15 U.S.C. § 1114(1) (establishing elements of trademark infringement); 15 U.S.C. § 1125(a) (establishing elements of unfair competition); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) ("[I]t is common ground that § 43(a) protects qualifying unregistered trademarks"); *Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.*, 333 F. Supp. 2d 239, 244 (D. Del. 2004), *aff'd in part sub nom. Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463 (3d Cir. 2005) (citing *A & H Sportswear Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 202 (3d Cir. 1999)) ("Under federal law, trademark infringement, 15 U.S.C. § 1114, and unfair competition, 15 U.S.C. § 1125(a)(1)(A), are measured by identical standards.")).

[22] 15 U.S.C. § 1114(1)(a).

[23] 15 U.S.C. § 1114(1)(a).

[24] *Island Steel Sys., Inc. v. Waters*, 296 F.3d 200, 206 n.1 (3d Cir. 2002) ("The law governing trademark infringement under § 43(a), which protects trademarks that are not federally registered, generally follows the law governing infringement of registered trademarks, which are protected under § 32 of the Lanham Act, 15 U.S.C. § 1114." (citing *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 296, 299 n. 9 (3d Cir. 1986)); *American Diabetes Ass'n v. Friskney Family Trust, LLC*, 177 F. Supp. 3d 855 (E.D. Pa. 2016); (Section 1114 "governs claims for infringement of registered

trademarks, whereas [§ 1125(a)] governs claims for infringement of an unregistered trademark and also acts as 'a broad federal unfair competition provision.'"); accord *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767-68 (1992) "[Section 1125(a)] prohibits a broader range of practices than does § 1114[.]").

**<u>INSTRUCTION NO. 2.3 – GOLO'S TRADEMARKS[25]</u>**

[AMAZON: **Amazon does not dispute that GOLO owns trademarks for "GOLO" for the goods and services listed in Registration Nos. 5,231,000, 4,436,947, 6,569,622, and 7,475,110, "RELEASE" for the goods listed in Registration No. 5,207,875, and "AEROTRAINER" for the goods listed in Registration Nos. 6,203,943 and 6,977,132. Amazon contends that other parties have valid and protectable trademarks for GOLO and RELEASE with respect to different goods and services.[26]]**

---

[25] 4 Modern Federal Jury Instructions-Civil ¶ 86A-7 (2022); 15 U.S.C. § 1057(b) (certificates of registration constitute prima facie evidence of the validity of the mark, owner's ownership of the mark, and owner's exclusive right to use the mark); *VMWare* Final Jury Instructions at 51-52; 15 U.S.C. § 1057(c) ("[T]he filing of the application to register such mark shall constitute constructive use of the mark, conferring a right of priority, nationwide in effect."); 15 U.S.C. § 1065 ("[A] registered mark [that] has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, shall be incontestable"); 15 U.S.C. § 1072 ("Registration of a mark on the principal register . . . shall be constructive notice of the registrant's claim of ownership thereof."); *Matal v. Tam*, 582 U.S. 218, 226–27, 137 S. Ct. 1744, 1753, 198 L. Ed. 2d 366 (2017) (A federal trademark "registration on the principal register (1) serves as constructive notice of the registrant's claim of ownership of the mark...; (2) is prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate…; and (3) can make a mark incontestable once a mark has been registered for five years….") (internal citations and quotation marks omitted); *Com. Nat. Ins. Servs., Inc. v. Com. Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000) ("If the mark at issue is federally registered and has become incontest[a]ble, then validity, legal protectability, and ownership are proved.") (citing *Ford Motor Co. v. Summit Motor Prods.*, 930 F.2d 277, 292 (3d Cir. 1991)).

[26] **AMAZON:** Amazon objects to GOLO's proposed instruction insofar as the list of marks and goods and services that GOLO characterizes as "undisputed," goes beyond what Amazon does not dispute by adding "GO-DIGEST," "AEROTRAINER," "GOLO FOODS," and "MYGOLO"; by adding goods and services for "GOLO" that are not covered by the registrations in the Joint Statement of Uncontested Facts, including pamphlets or manuals, online retail store services, professional coaching, and consulting about recipes, cooking, meal planning, fitness, or exercise**;** and by omitting that other parties have trademarks for GOLO and RELEASE with respect to different goods and services. Amazon further objects to GOLO's standard-character discussion because it is a legal argument regarding the scope of GOLO's registrations, not appropriate for a jury instruction. Amazon's version accurately states what Amazon does not dispute and what Amazon contends, and nothing further is necessary in a case where Amazon concedes that GOLO

**[GOLO: In this case, it is undisputed that GOLO owns trademark rights for the following:**

- **The trademark "GOLO" for dietary or nutritional supplements;**
- **The trademark "GOLO" for weight loss or management programs or diet planning services;**
- **The trademark "GOLO" for printed cookbooks or recipe books;**
- **The trademark "GOLO" for pamphlets or manuals about diets, nutrients, meal preparation, or wellness;**
- **The trademark "GOLO" for online retail store services featuring dietary or nutritional supplements or food;**
- **The trademark "GOLO" for consulting services about recipes, cooking, meal planning, health, wellness, nutrition, fitness, or exercise;**
- **The trademark "GOLO" for a website or mobile app about nutrition, health, or wellness;**
- **The trademark "GOLO" for a website, information services, or an online database about recipes, ingredients, or cooking;**
- **The trademark "GOLO" for professional coaching in health, fitness, wellness management, diet, nutrition, or exercise;**
- **The trademark "RELEASE" for dietary or nutritional supplements;**
- **The trademark "GO-DIGEST" for dietary or nutritional supplements;**
- **The trademark "AEROTRAINER" for exercise equipment;**

---

has trademark rights in the marks for the goods and services at issue, as stated in the preceding instruction, and as evidenced by the absence of a similar instruction in GOLO's last trademark infringement trial, *see generally* GOLO Final Jury Instructions.

- **The trademark "GOLO FOODS" for frozen meals;**
- **The trademark "MYGOLO" for weight loss, weight management, or diet planning programs; and**
- **The trademark "MYGOLO" for consultation services regarding lifestyle wellness, health, or nutrition.**

**GOLO also has common law rights in the trademark "REST & GO" for dietary supplements.**

**GOLO's trademark registrations are what are called standard character registrations, which are entitled to protection regardless of font style, size, or color.[27]]**

---

[27] 37 C.F.R. § 2.52(a); Trademark Manual of Examining Procedure § 807.03(a) ("If the applicant files an application on paper that includes a standard character claim, the applicant may depict the mark in any font style"); *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 1353 (Fed. Cir. 2011) ("If the registrant complies with Section 2.52 of the Rules of Practice in Trademark Cases and obtains a standard character mark without claim to 'any particular font style, size or color,' the registrant is entitled to depictions of the standard character mark regardless of font style, size, or color"); *In re Calphalon Corp.*, 122 USPQ2d 1153, 1160 n.8 (TTAB 2017) ("A standard character registration provides a registrant with the broadest form of coverage for the registered mark because such a registration gives the registrant rights in the mark in block letters as well as in 'depictions of the standard character mark regardless of font style, size, or color.'").

## Instruction No. 2.4 – Likelihood of Confusion[28], [29]

**[GOLO: If you decide that GOLO has established protectable trademark rights in any of the marks to which it asserts ownership, you must consider whether Amazon's uses of GOLO's trademarks are likely to cause confusion or mistake, or to deceive, ordinary purchasers in the marketplace as to the source of goods advertised or their affiliation, origin, sponsorship, or approval. The confusion can also be through the use of a trademark in connection with an advertisement alone, including use of a mark in paid internet advertisements, or to manipulate organic internet search results.[30]**

---

[28] **AMAZON**: Amazon objects to this instruction in its entirety as argumentative and unnecessary in light of Instruction No. 2.5 and the absence of a similar instruction in GOLO's last trademark infringement tri*al, see generally G*OLO Final Jury Instructions, particularly with respect to the discussion of initial-interest and post-sale confusion and of retailer liability. Amazon also objects to GOLO's modifications of the instruction provided in 4 Model Federal Jury Instructions 86A-15, including the model instruction's requirement that any confusion must be "regarding the source of these goods," "in the purchase of these goods," when "buying under the usual conditions and exercising ordinary care, would be likely to purchase the defendant's product in the belief that it was the plaintiff's product." GOLO's instruction refers only to "ordinary purchasers in the marketplace," and omits any requirement that confusion arise in the purchase of the goods or any reference to purchasers exercising ordinary care. Amazon also objects to the deletion of the instruction's requirement that "a significant number of the consuming public" be confused and how to assess what constitutes a significant number, particularly where GOLO's own proposed Instruction No. 2.5 recognizes that the inquiry is whether "a significant number of people" are likely to be confused. Amazon also objects to GOLO's additions regarding confusion from "an advertisement alone, including use of a mark in paid internet advertisements, or to manipulate organic internet search results," as unsupported and unsupportable, particularly with respect to manipulating organic internet search results. Amazon also objects to GOLO's modification of the portion of the model instruction indicating that, "The fact that the products could be distinguished by careful or discriminating purchasers is not enough to lead you to conclude that there is no likelihood of confusion," without support.

[29] 4 Modern Federal Jury Instructions-Civil ¶ 86A-15 (2022).

[30] 3 McCarthy on Trademarks and Unfair Competition § 25:26 (5th ed.) ("Merely advertising using an infringing mark is itself a separate act of infringement."); *New Balance Athletics, Inc. v. USA New Bunren Int'l Co. Ltd. LLC*, 424 F. Supp. 3d 334, 345 (D. Del. 2019) ("That [defendant] did not actually sell any infringing products is immaterial because liability under the Lanham Act can be based on advertising or promotion alone.") (collecting cases); *Deltona Transformer Corp. v.*

**You must determine only whether there is a likelihood of confusion. There is no requirement to show that any specific person has been actually confused or misled.**[31]

**A likelihood of confusion can exist when people are likely to believe the product or advertisement is in some way associated or connected with another company. One example is if people are likely to believe that the trademark owner allowed the party using the trademark to use it. Likelihood of confusion may be found even where the products or advertisements could be distinguished by careful or discriminating purchasers.**[32]

---

*NOCO Co.*, 186 F.4th 1313, 1330 (11th Cir. 2026) (stating that use of another's trademark "in the text of Amazon ads" constituted "wheelhouse trademark infringement" that was "likely to mislead consumers"); *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1065 (9th Cir. 1999) ("[T]he Lanham Act bars West Coast from including in its metatags any term confusingly similar with Brookfield's mark.").

[31] *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 (3d Cir. 1994) ("Proof of actual confusion is not necessary; likelihood of confusion is all that need be shown." (quoting *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 292 (3d Cir. 1991))); *see also Super Duper, Inc. v. Mattel, Inc.*, 382 F. App'x 308, 313 (4th Cir. 2010) ("It is, after all, well established that no actual confusion is required to prove a case of trademark infringement.") (internal quotations omitted); *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 276 (7th Cir. 1976) (holding that economic harm per se is not required for liability because damage is presumed from the likelihood of confusion) (citations omitted).

[31] 15 U.S.C. § 1125(a) ("Any person who . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof . . . which is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person . . ."); *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 216 (3d Cir. 2000) ("Marks are confusingly similar if ordinary consumers would likely conclude that [the two products] share a common source, affiliation, connection or sponsorship.") (internal citation and quotation marks omitted) (alteration in original); *Opticians Ass'n v. Independent Opticians of America*, 920 F.2d 187, 192 (3d Cir. 1990) (stating the test for infringement as whether "use of the marks to identify goods or services is likely to create confusion concerning the origin of the goods or services"); *see also Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 157 (4th Cir. 2012) ("The confusion that is remedied by trademark and unfair competition law is confusion not only as to source, but also as to affiliation, connection or sponsorship.").

[32] *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 281 (3d Cir. 2001) (courts consider "whether the 'average consumer, on encountering one mark in isolated circumstances of [the] marketplace and having only a general recollection of the other, would

**Confusion in the marketplace may occur at three different times: (1) before a potential purchase (called "initial-interest" confusion), (2) at the time of purchase (called "point-of-purchase" confusion), or (3) after the purchase (called "post-sale" confusion).[33]**

**Initial-interest confusion occurs when someone uses a mark confusingly similar to another's trademark in a manner that captures initial consumer attention. Even if no actual sale is finally consummated as a result of the confusion, there still may be infringement.[34]**

---

likely confuse or associate the two'"); *see also Brooks v. Great Atl. & Pac. Tea Co.*, 92 F.2d 794, 797 (9th Cir. 1937) ("It is true that appellee places on its article distinguishing marks by which it could be identified by a careful and discriminating purchaser, but this is not enough, for it is the casual or ordinary purchaser who must be protected, and as to him the test is general appearance.") (quoting *Chesebrough Mfg. Co. v. Old Gold Chem. Co.*, 70 F.2d 383, 385 (6th Cir. 1934)); *Singer Mfg. Co. v. Briley*, 207 F.2d 519, 520 n.3 (5th Cir. 1953) ("The test of infringement is not whether the conduct is such as to mislead the careful and discriminating purchaser, but it is enough if it may mislead the ordinary and casual buyer."); *Swanson Mfg. Co. v. Feinberg-Henry Mfg. Co.*, 54 F. Supp. 805, 815 (S.D.N.Y. 1943) ("If the carton or sales display card are sufficiently alike to mislead the public, it matters not that on the article itself the defendant places some 'distinguishing marks by which it could be identified by a careful and discriminating purchaser'") (citation omitted).

[33] *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 357 (3d Cir. 2007) ("One type of confusion is initial interest confusion, which is confusion that creates initial customer interest, even though no actual sale is finally completed as a result of the confusion…Another type of confusion, alleged in most Lanham Act cases, is point-of-sale confusion, which occurs or remains at the time of purchase.") (internal citations omitted); *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 292 (3d Cir. 2001) (recognizing initial-interest, point-of-sale, and post-sale confusion as actionable under the Lanham Act); *see also Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 n.2 (2d Cir. 2005) ("The Lanham Act protects against several types of consumer confusion, including *point-of-sale* confusion, *initial interest* confusion, and *post-sale* confusion, and the [likelihood-of-confusion factors] must be applied with an eye toward each of these.").

[34] *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 204 (5th Cir. 1998) ("Infringement can be based upon confusion that creates initial consumer interest, even though no actual sale is finally completed as a result of the confusion."); *see also Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1238-39 (10th Cir. 2006) ("In this case, we recognize another variant of potential confusion: 'initial interest confusion.'"); *Promatek Indus. v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002) ("Initial interest confusion, which is actionable under the Lanham Act, occurs when a customer is

**Clicking on a paid internet advertisement or search result because of its inclusion of another's trademark can be an example of initial-interest confusion.[35]**

**Point-of-purchase confusion occurs when someone uses a mark confusingly similar to another's trademark that is likely to cause purchaser confusion, mistake, or deception as to the source, origin, affiliation, approval, or sponsorship of the goods.**

**Post-sale confusion can occur when someone other than the purchaser sees the item after it has been purchased (e.g., someone other than the purchaser sees a person wearing a shirt bearing a confusingly similar trademark) and is confused about the item's source, origin, affiliation, approval, or sponsorship.[36]**

**A finding of likelihood of any one of these types of confusion (initial-interest, point-of-purchase, or post-sale) is sufficient for a finding of infringement.**

---

lured to a product by the similarity of the mark, even if the customer realizes the true source of the goods before the sale is consummated.").

[35] *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1062 (9th Cir. 1999) ("use of 'moviebuff.com' in metatags will still result in what is known as initial interest confusion").

[36] *Gucci Am., Inc. v. Daffy's Inc.*, 354 F.3d 228, 234 (3d Cir. 2003) (the "post -sale confusion theory, [] presumes that 'the senior user's potential purchasers or ongoing customers might mistakenly associate the inferior quality work of the junior user with the senior user and, therefore, refuse to deal with the senior user in the future.'") (quoting *Acxiom Corp. v. Axiom*, 27 F. Supp. 2d 478, 497 (D. Del. 1998)); *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1455 (9th Cir. 1991) (finding likelihood of post-sale confusion because the "secondary audience" that would view the award "without any… clarifying marketing aids" could "conceivably assume the [defendant's award] was somehow associated with the Oscar"); *Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 822 (9th Cir. 1980) (finding likelihood of post-sale confusion between the parties' jeans and explaining that "point of sale materials are removed by the purchaser and have no confusion-obviating effect when the pants are worn").

**Finally, a party, such as a retailer, can be liable for trademark infringement even if it was not the party that placed the mark on the goods, or otherwise designed or manufactured the goods.[37]]**

---

[37] 15 U.S.C. § 1127; *El Greco Leather Prod. Co. v. Shoe World Inc.*, 806 F.2d 392, 396 (2d Cir. 1986) (citations omitted) (even if a retailer "was involved neither in the manufacture nor the affixing" of an infringing mark to a product, the retailer's sale of that product is "sufficient 'use' for it to be liable" for infringement.); *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 381 (6th Cir. 2006) ("We also find . . . no reason to restrict liability to those who actually create, manufacture or package the infringing items. . . [A]ll the statutes demand is that the defendant have 'used' the goods 'in commerce' . . . and we can think of no clearer 'use' of goods 'in commerce' than offering them for sale . . . ."); 3 J. Thomas McCarthy, MCCARTHY ON TRADEMARK AND UNFAIR COMPETITION ("MCCARTHY") § 25:27 (5th ed. 2025) ("There is no doubt that the act of selling goods . . . with an infringing mark is itself an act of trademark infringement."); *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 619 (S.D.N.Y. 2018) (after trial, finding bookseller liable for trademark infringement and counterfeiting from sale of books).

## INSTRUCTION NO. 2.5 – LIKELIHOOD OF CONFUSION FACTORS[38]

**[GOLO: To establish whether a likelihood of confusion exists, you must look to a multi-factor test. Each factor analyzes the trademark and use by both the trademark owner and the alleged infringer to establish whether a significant number of people who buy or use, or consider buying or using, the product or service are likely to be confused if both parties use the marks at issue.**

**The likelihood of confusion factors are:**

**1. Degree of Similarity Between the Marks at Issue. The single most important factor in determining likelihood of confusion is mark similarity.[39] In evaluating the similarity or dissimilarity of the respective marks, each mark must be considered as a whole. A finding of similarity between the respective marks cannot be based on dissection of a mark, that is, on only part of a mark. Although there is nothing improper in giving more or less weight to a particular feature of a mark, the ultimate conclusion as to the similarity or dissimilarity of the marks must rest on consideration of the marks in their entireties. You should consider the overall impression created by the marks, keeping in mind all the things that the general buying public will likely perceive and remember about the marks, including their similarities in sight, sound, and**

---

[38] [**AMAZON**: Notwithstanding its objections, Amazon proposes as a compromise that, for this instruction, the Court adopt the instruction given at GOLO's last trademark infringement trial in this District, *see GOLO* Final Jury Instructions at 17-18, with the instruction for factor two given at the *Gavrieli* trial, *see Gavrieli* Final Jury Instructions at 37, and a modified intent factor that reflects the relevant intent factor considered in fair use cases.] [**GOLO**: the prior trial to which Amazon refers was a substantially different case. Notwithstanding these differences, GOLO sought to compromise and revised its proposed instruction to closely track those used in this prior trial. Amazon rejected that proposal wholesale, and these competing instructions resulted.]

[39] *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 216 (3d Cir. 2000) ("The single most important factor in determining likelihood of confusion is mark similarity.").

**meaning. Side-by-side comparison of the two marks is not the proper test for analysis when the products are not usually sold next to one another. Instead, the question is whether the marks create the same overall impression when viewed separately.[40]**

**2. Strength of the Mark. The strength of a trademark is determined by its distinctiveness and recognition in the marketplace. The stronger a mark is, the greater the scope of protection the law provides. Measuring the strength of a trademark requires two steps.**

**First, consider its conceptual strength. This is where the mark is placed on the spectrum of distinctiveness of marks.**

**Second, consider the trademark's commercial strength. This is how much marketplace recognition the mark has.**

**For determining the conceptual strength of a mark, trademarks are grouped on a spectrum according to the nature of the mark. In the spectrum, there are four categories of word marks: arbitrary or fanciful, suggestive, descriptive, and generic.**

**Arbitrary marks are words that in no way describe or suggest the nature of the goods or services with which they are used. For example, "apple" is a common word, but it does not describe or suggest anything about the nature of "Apple" brand computers or smart phones. It is an arbitrary word when used as a mark on those products. Arbitrary trademarks are regarded as conceptually strong marks.**

**Fanciful (or Coined) marks are words that are created solely to serve as trademarks. For example, "Clorox" and "Exxon" are coined marks for cleaning products and gasoline,**

[40] *GOLO* Final Jury Instructions at 17.

**respectively. Fanciful trademarks are regarded as conceptually strong marks and are equal to arbitrary marks in conceptual strength.**

**Suggestive word marks are not as conceptually strong as arbitrary or fanciful marks. Suggestive trademarks suggest some characteristic or quality of the goods or services with which they are used. If the consumer must use her imagination or think through a series of steps to understand what the trademark is telling about the product, then the trademark does not directly describe the product's features but merely suggests them. For example, the trademark "Tail Wagger" for dog food merely suggests that your dog will like the food. As another example, when "apple" is used in the mark "Apple-A-Day" for vitamins, it is being used as a suggestive trademark. "Apple" does not describe what the vitamins are. However, it suggests the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple-A-Day" vitamins.**

**Descriptive word marks are not inherently distinctive. These marks directly describe some characteristic, or quality of the goods or services with which they are used in a straightforward way that requires no exercise of imagination. For instance, the word "apple" is descriptive when used in the trademark "Tomapple" to designate a tomato-apple juice. It directly describes one of the ingredients of the juice.**

**Generic Names. If the primary significance of an alleged mark is to name the type of product or service on offer, rather than to name the manufacturer or provider, the primary significance of the term is generic, and it cannot be a valid trademark. Such terms are known as generic names.**

**What is "commercial strength?" Not all marks are equally well known. Trademark strength is somewhat like the renown of people. Only a very few people are famous enough**

**to be widely known and recognized around the world. Most people are known and recognized only by a small circle of family and friends.**

**Some trademarks have commercial strength in the sense they are widely known and recognized. A few trademarks are in the clearly "famous" category. Examples of "famous" marks include "Apple" for computers and smart phones, "Google" for a search engine, "Coca-Cola" for beverages, and "Toyota" for vehicles. Some trademarks have commercial strength only in a certain market niche such as mountain climbing gear, plumbing supplies, or commercial airplane electronics equipment, but relatively weak outside that field. Actual marketplace recognition, which includes advertising expenditures and number of sales, determines how well known a trademark is. Commercial strength can transform a mark that is not conceptually strong into a strong mark.[41] Evidence of extensive advertising and sales success can alone be sufficient for a mark to be commercially strong.[42]**

**3. The Price and Type of the Goods and the Sophistication of the Purchasers. The more sophisticated the potential buyers of the goods or services, or the costlier the goods or services, the more careful and discriminating the potential purchaser exercising ordinary caution may be. These more sophisticated purchasers may be less likely to be confused by similarities in the trademarks at issue. The opposite may also be true. However, when there**

---

[41] Ninth Circuit Manual of Model Civil Jury Instructions No. 15.19 (2026); *Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 472 (3d Cir. 2005).

[42] *See A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F. 3d 198, 221 (3d Cir. 2000) ("[E]vidence of A&H's advertising expenditures demonstrated that Miraclesuit had commercial strength . . . ."); *see also S&P Global Inc. v. S&P Data LLC*, 619 F. Supp. 3d 445, 457 (D. Del. 2022) ("Commercial strength may be measured by the extensiveness of advertising and sales.") (citing *Acxiom Corp. v. Axiom, Inc.*, 27 F. Supp. 2d 478, 496 (D. Del. 1998)) (finding that extensive advertising and sales success alone is sufficient to find a mark has commercial strength).

**is a high degree of similarity between the parties' goods and marks, the sophistication of the buyers cannot be relied on to prevent confusion.**[43], [44]

---

[43] [**AMAZON**: Amazon objects and preserves all challenges to instructions regarding the similarity of the marks and the strength of GOLO's mark. Because Amazon asserts nominative fair use, an instruction on neither factor should be given. The Third Circuit has held that both factors are improper considerations where nominative fair use is asserted. As to similarity, the defendant necessarily uses the plaintiff's own mark, so the factor always favors the plaintiff and "does not leave any room for the consideration of the context of the use." *Century 21 Real Estate Corp. v. Lendingtree, In*c., 425 F.3d 211, 224-25 (3d Cir. 2005). As to strength, nominative users "feel they need to use the actual mark to describe the plaintiff's product because of its very strength and what it has come to represent," so "the marks' strength is not really probative of confusion." *I*d. at 225. Instructing the jury on either factor would weigh the analysis toward GOLO based on the very features that make a nominative reference necessary, rather than on whether Amazon's use is likely to confuse. Notwithstanding this objection, Amazon has included these factors in its proposal only as a compromise and in light of Instruction No. 2.11. Amazon's proposals herein are made for the purpose of proposing the instructions that the Court should provide to the jury, and Amazon does not waive its objection to the inclusion of these factors by proposing them.] [**GOLO**: GOLO contends that Amazon's reliance on *Century 21 Real Est. Corp. v. Lendingtree, In*c., 425 F.3d 211, 214 (3d Cir. 2005), which was a preliminary injunction-stage decision, is improper. *Century* 21 expressly noted its limited applicability. *See i*d. at 225 ("We find that all of the othe*r La*pp factors, while perhaps not appropriate for analysis in this particular case, could be analyzed in future nominative use cases, depending on the factual situation."). Moreover, *Century 21* acknowledged that the trademark owner must still prove likelihood of confusion *before* the alleged infringer asserts its nominative fair use defense. *Id.* at 232. Amazon's proposal improperly assumes that Amazon's fair use defense is viable and forces GOLO to prove its case without addressing the identical marks or the strength of GOLO's mark—two critical factors in the threshold determination of confusion, for which GOLO bears the burden. Tellingly, Amazon does not cite a single Third Circuit case that did not instruct a jury on these *Lapp* factors due to the assertion of a nominative fair use defense]

[44] 5 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:96 (5th Ed. 2025) ("Even where 'expensive' goods are sold to knowledgeable buyers, if the marks are identical and even further buyer investigation and inspection would yield little information to dispel confusion, the 'discriminating purchaser' standard will not control the final balancing of factors as to the likelihood of confusion."); *see also Morningside Grp. Ltd. v. Morningside Cap. Grp.*, 182 F.3d 133, 143 (2d Cir. 1999) ("[W]hen, as here, there is a high degree of similarity between the parties' services and marks, 'the sophistication of the buyers cannot be relied on to prevent confusion'"); *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971) (noting that where expensive cameras had identical marks, there was still a likelihood of confusion even with sophisticated buyers).

**4. Evidence of Actual Confusion. If use by the alleged infringer of a similar trademark has led to instances of actual confusion, this strongly suggests a likelihood of confusion. Because proving actual confusion is difficult, even a small amount of evidence of actual confusion is highly probative of the likelihood of confusion.[45] However, actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, the alleged infringer's use of the trademark may still be likely to cause confusion. As you consider whether the trademark used by the alleged infringer is confusing, you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.[46]**

**Because evidence of actual confusion is often unavailable, consumer surveys conducted according to accepted survey principles are often used as proxies for evidence of**

---

[45] *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 720 (3d Cir. 2004).

[46] *GOLO v. Goli Nutrition* Final Jury Instructions at 17-18.

**actual confusion.[47] While survey evidence is not required to prove a likelihood of confusion,[48] surveys are useful to measure the mental associations and reactions of prospective consumers to the trademarks and goods at issue. The results of any consumer survey are entitled to the weight you decide to give them. There is no set threshold of what percentage of survey respondents have to be confused for a survey to be probative of likelihood of confusion. Courts have previously found that survey results over 10% confusion are probative of a likelihood of confusion.[49]**

---

[47] *See Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 187 (3d Cir. 2010) (survey evidence can demonstrate and assess actual confusion in the marketplace); *see also Exxon*, 628 F.2d at 506-07 (analyzing consumer survey as actual confusion evidence); *Mut. of Omaha Ins.. v. Novak*, 836 F.2d 397, 400 (8th Cir. 1987) ("[S]urveys are often used to demonstrate actual consumer confusion."); *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 467 (4th Cir. 1996) (surveys probative of establishing actual confusion); *A.T. Cross Co. v. TPM Distrib., Inc.*, 226 U.S.P.Q. 521, 524 (D. Minn. 1985) ("the plaintiff's survey demonstrates the existence of actual confusion in the marketplace").

[48] *S&P Glob. Inc. v. S&P Data LLC*, 619 F. Supp. 3d 445, 464 (D. Del. 2022) ("Plaintiffs were not required to present survey evidence in support of their case.").

[49] *See, e.g.*, *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 594 (3d Cir. 2002) (In "trademark cases under the Lanham Act, courts have held that survey evidence of 15% confusion is sufficient to demonstrate actual confusion."); *see also Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 466-67 & n.15 (4th Cir. 1996) (15-20% confusion was sufficient to establish "actual confusion . . . to a significant degree"); *Exxon*, 628 F.2d at 507 (finding that 15% and 23% level of confusion are "strong evidence indicating a likelihood of confusion"); *Viacom Int'l*, 891 F.3d at 197 ("Consumer surveys may evidence confusion at levels less than 30%"); *Mut. of Omaha Ins.*, 836 F.2d at 400 (giving "substantial weight" to 10% survey confusion); *Goya Foods, Inc. v. Condal Distribs., Inc.*, 732 F. Supp. 453, 457 n.7 (S.D.N.Y. 1990) (9-10% confusion was sufficient to demonstrate "meaningful evidence of actual confusion"); *Th. Steinweg Nachf v. Steinway & Sons*, 365 F. Supp. 707, 714-16 (S.D.N.Y. 1973), *modified*, 523 F.2d 1331 (2d Cir. 1975) (7.7% perception of a connection between parties and 8.5% survey confusion is "strong evidence of [] likelihood of confusion"); *Humble Oil & Ref. Co. v. Am. Oil Co.*, 405 F.2d 803, 817 (8th Cir. 1969) (11% sufficient for confusion); *Copy Cop, Inc. v. Task Printing, Inc.*, 908 F. Supp. 37, 42, 45-46 (D. Mass. 1995) (16.5% survey confusion sufficient); *James Burrough, Ltd. v. Lesher*, 309 F. Supp. 1154, 1159 (S.D. Ind. 1969) (12% survey confusion sufficient for finding likely confusion).

**5. Length of Time the Alleged Infringer Has Used the Mark Without Evidence of Actual Confusion. If you find that one or more marks were used for an extended period of time without evidence of actual confusion, it can be inferred that continued marketing will not lead to consumer confusion in the future.[50]**

**6. Intent of the Alleged Infringer. Evidence of a party's intentional use of another party's mark to cause confusion is not a prerequisite to proving infringement. However, evidence of intentional, willful and admitted adoption of a mark closely similar to an existing mark weighs in favor of finding a likelihood of confusion. Knowing use by the alleged infringer to identify similar goods or services may show an intent to benefit from the reputation of the trademark owner, which suggests an intent to cause a likelihood of confusion. Evidence of a defendant's knowledge of another party's mark, without more, is not evidence of intent.[51]**

**7. Similarity of Channels of Trade. The greater the similarity in advertising and marketing campaigns, the greater the likelihood of confusion. If the parties' goods or services are sold in the same or similar outlets, or advertised in similar media, there is a greater likelihood of confusion.[52]**

---

[50] *GOLO v. Goli Nutrition* Final Jury Instructions at 18.

[51] *GOLO v. Goli Nutrition* Final Jury Instructions at 18.

[52] *GOLO v. Goli Nutrition* Final Jury Instructions at 18.

**8. The Extent to Which the Targets of the Parties' Sales Efforts are the Same. If the parties' goods or services are sold or offered for sale to the same or similar customers, this may increase the likelihood of confusion.[53]**

**9. Similarity of the Goods or Services. The more similar the goods or services offered by the parties, the greater the likelihood of confusion.[54]**

**10. Any Other Facts Suggesting that the Consumer Public Might Expect the Prior Owner to Manufacture a Product in the Defendant's Market. In assessing this factor, you may look at the nature of the products or the relevant market, the practices of other companies in the relevant fields, or any other circumstances that bear on whether consumers might reasonably expect both products to have the same source.[55]**

**The weight to be given to each of these factors is up to you to determine when balancing the factors. No particular factor or number of factors is required to prove likelihood of confusion.]**

**[AMAZON: To establish whether a likelihood of confusion exists, you must look to a multi-factor test. Each factor analyzes the trademark and use by both the trademark owner and the alleged infringer to establish whether a significant number of people who buy or use, or consider buying or using, the product or service are likely to be confused if both parties use the marks at issue. The presence or absence of any particular factor should not**

---

[53] *GOLO v. Goli Nutrition* Final Jury Instructions at 18.

[54] *GOLO v. Goli Nutrition* Final Jury Instructions at 18.

[55] *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983); *Kos Pharms.*, 369 F.3d at 724 ("In assessing this factor, courts may look at the nature of the products or the relevant market, the practices of other companies in the relevant fields, or any other circumstances that bear on whether consumers might reasonably expect both products to have the same source.") (collecting cases).

**necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this.**[56]

**The likelihood of confusion factors are:**

**1. <u>Degree of Similarity Between the Marks at Issue</u>. In evaluating the similarity or dissimilarity of the respective marks, each mark must be considered as a whole. A finding of similarity between the respective marks cannot be based on dissection of a mark, that is, on only part of a mark. Although there is nothing improper in giving more or less weight to a particular feature of a mark, the ultimate conclusion as to the similarity or dissimilarity of the marks must rest on consideration of the marks in their entireties. You should consider the overall impression created by the marks, keeping in mind all the things that the general buying public will likely perceive and remember about the marks, including their similarities in sight, sound, and meaning. Side-by-side comparison of the two marks is not the proper test for analysis when the products are not usually sold next to one another. Instead, the question is whether the marks create the same overall impression when viewed separately.**[57]

**2. <u>Strength or Weakness of GOLO's Asserted Trademarks.</u> The more the consuming public recognizes GOLO's trademarks as an indication of origin of GOLO's products, the more likely it is that consumers would be confused about the source of the allegedly infringing products.**[58]

---

[56] *Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*, No. 2:19-cv-00513-GAM, D.I. 482, Trial Tr. at 98 (E.D. Pa. Nov. 1, 2024) ("*Peninsula* Final Jury Instructions").

[57] *GOLO* Final Jury Instructions at 17.

[58] *Gavrieli* Final Jury Instructions at 37.

**3. <u>The Price and Type of the Goods and the Sophistication of the Purchasers</u>. The more sophisticated the potential buyers of the goods or services, or the costlier the goods or services, the more careful and discriminating the potential purchaser exercising ordinary caution may be. They may be less likely to be confused by similarities in the trademarks at issue.**[59]

**4. <u>Evidence of Actual Confusion</u>. If use by the alleged infringer of a similar trademark has led to instances of actual confusion, this strongly suggests a likelihood of confusion. Because proving actual confusion is difficult, relatively little showing is required on the part of the party attempting to prove actual confusion. However, actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, the alleged infringer's use of the trademark may still be likely to cause confusion. As you consider whether the trademark used by the alleged infringer is confusing, you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.**[60]

**5. <u>Length of Time the Alleged Infringer Has Used the Mark Without Evidence of Actual Confusion</u>. If you find that one or more marks were used for an extended period of time**

---

[59] *GOLO* Final Jury Instructions at 17.

[60] *GOLO v. Goli Nutrition* Final Jury Instructions at 17-18.

**without evidence of actual confusion, it can be inferred that continued marketing will not lead to consumer confusion in the future.[61]**

**6. Intent of the Alleged Infringer. Evidence that the alleged infringer adopted the mark with the intent to confuse the public as to the relationship between the defendant and the plaintiff weighs in favor of finding a likelihood of confusion, but mere use of the mark alone or carelessness is not sufficient to prove such intent. Likewise, evidence of a defendant's knowledge of another party's mark, without more, is not evidence of intent.[62]**

7. **The Extent to Which the Targets of the Parties' Sales Efforts are the Same. If the parties' goods or services are sold or offered for sale to the same or similar customers, this may increase the likelihood of confusion.[63]**

**8. Similarity of the Goods or Services. The more similar the goods or services offered by the parties, the greater the likelihood of confusion.[64]**

---

[61] *GOLO v. Goli Nutrition* Final Jury Instructions at 18.

[62] *GOLO v. Goli Nutrition* Final Jury Instructions at 18; *Lontex*, 107 F.4th at 154; *Century 21*, 425 F.3d at 227 (holding that the intent of the defendant factor in a fair use case must ask whether the defendant "used the mark with the intent to confuse the public as to the relationship between the defendant and the plaintiff" and that "use of the mark alone is not sufficiently probative of such intent."). [**GOLO**: *Century 21* recognized "[t]here are myriad factors to which a plaintiff may point to demonstrate that a defendant intended to confuse the public as to its relationship with the plaintiff. For example, courts in traditional trademark infringement cases have considered a defendant's persistence in adopting a mark despite being warned of potential confusion, *KOS Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 721 (3d Cir. 2004), and evidence of a defendant's bad faith, *A & H Sportswear II*, 237 F.3d at 226." *Century 21*, 425 F.3d at 227.]

[63] *GOLO v. Goli Nutrition* Final Jury Instructions at 18.

[64] *GOLO v. Goli Nutrition* Final Jury Instructions at 18.

**The weight to be given to each of these factors is up to you to determine when balancing the factors. No particular factor or number of factors is required to prove likelihood of confusion.]**

## INSTRUCTION NO. 2.6 - TRADEMARK INFRINGEMENT - COUNTERFEITING

The distribution, sale, or offer for sale of goods bearing a counterfeit mark is illegal under federal law and a form of trademark infringement referred to as "counterfeiting."[65] A counterfeit is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark when comparing the overall impression ordinary consumers would have upon encountering the mark. [66] "Spurious" means "deceptively suggesting an erroneous origin; fake."[67]

**[AMAZON: Counterfeiting requires greater similarity between marks than other types of trademark infringement[68] and occurs only where the identical mark is used to pass off the infringer's product as the original, rather than merely presented in a manner likely to confuse some consumers as to the origin or sponsorship of the infringer's product.][69]**

**[GOLO: Counterfeiting occurs where the substantially identical mark is used to pass off the infringer's product as the original, rather than merely presented in a manner likely to confuse some consumers as to the origin or sponsorship of the infringer's product.]**

---

[65] *Rockwell* Final Jury Instruction at 24.

[66] 15 U.S.C. § 1127 (defining "counterfeit" as a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark"); *Lontex*, 107 F.4th at 158-59.; *GOLO LLC v. Amazon.com, Inc.*, 1:23-cv-1200-MN Dkt. 390 (Sept. 24, 2026) (Noreika, J.) at 14; *see also Gibson Brands, Inc. v. Armadilo Distrib. Enterprises, Inc.*, 4:19-cv-358 (E.D. Tex.) Final Instructions to the Jury at 14 ("When determining whether a mark is considered counterfeit, it should be compared with the registered mark as it appears in the actual market.").

[67] *Lontex Corp. v. Nike, Inc.*, 384 F. Supp. 3d 546, 555 (E.D. Pa. 2019), *aff'd* 107 F.4th 139 (3d Cir. 2024).

[68] *Lontex*, 107 F.4th at 158.

[69] *Pa. State Univ. v. Vintage Brand, LLC*, 15 F. Supp. 3d 602, 652 (W.D. Pa. 2024).

GOLO contends that books offered or sold by Amazon bearing the GOLO trademark are counterfeits of one of GOLO's registrations – Registration No. 7,475,110 for the mark GOLO, in standard characters, for "printed cookbooks" and "printed recipe books." This registration was registered on August 13, 2024. Only accused books offered and/or sold on or after August 13, 2024 can qualify as counterfeits.[70]

To prevail on its counterfeiting claim, GOLO has the burden of proving each of the following elements by a preponderance of the evidence:

1. Amazon infringed a registered trademark; and

2. Amazon intentionally used the trademark knowing that it was a counterfeit[71]

**[GOLO: or was willfully blind to such use.[72] Willful blindness means that Amazon or its agents had reason to suspect that trademark infringing merchandise was being offered or sold but deliberately failed to investigate or looked the other way to avoid seeing such activity.[73] A party can be liable for counterfeiting even if it merely sells or offers for sale**

---

[70] *New Balance Ath., Inc. v USA New Bunren Int'l Co.*, 424 F. Supp. 3d 334, 354 (D. Del. 2019) ("The term 'counterfeit' is defined as 'a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.'") (quoting 15 U.S.C. § 1127).

[71] *Rockwell* Final Jury Instruction at 22.

[72]*Astrazeneca AB v. Dr. Reddy's Lab'ys, Inc.*, 209 F. Supp. 3d 744, 755 (D. Del. 2016); *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 580 (E.D. Pa. 2002), amended (June 28, 2002); *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008).

[73] *Omega SA*, 984 F.3d at 250 (affirming jury instruction that read as follows: "Willful blindness means that . . . Canal or its agents had reason to suspect that trademark infringing merchandise was being offered or sold but deliberately failed to investigate or looked the other way to avoid seeing such activity.").

**goods bearing a counterfeit mark and plays no part in affixing or placing the counterfeit mark.**[74]

**If you find by a preponderance of the evidence that Amazon has engaged in counterfeiting, you are to presume that there is a likelihood of confusion and therefore trademark infringement.]**[75] [76]

---

[74] *Rockwell* Final Jury Instruction at 24; *see also Lontex Corp. v. Nike, Inc.*, 384 F. Supp. 3d 546, 554 (E.D. Pa. 2019) ("Counterfeiting is defined as 'the act of *producing or selling* a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark.'") (emphasis added) (citations omitted).

[75] *Rockwell* Final Jury Instruction at 22, 24;*Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987); *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 945 (9th Cir. 2011).

[76] **AMAZON**: Amazon objects to GOLO's willful-blindness definition, to the statement that a party may be liable for counterfeiting even if it merely sells or offers for sale goods bearing a counterfeit mark, and to the presumption-of-confusion paragraph. Amazon contends counterfeiting requires intentional use with knowledge that the mark is counterfeit, as stated in the second element. GOLO's definition of willful blindness, which requires only that Amazon "had reason to suspect" that "trademark infringing merchandise" was offered and "failed to investigate," is inconsistent with Instruction No. 2.8, which requires a subjective belief of a high probability that a specific product was infringing and deliberate actions to avoid confirming it, and it addresses infringing rather than counterfeit goods. The presumption paragraph is circular because a finding of counterfeiting already requires a finding that Amazon infringed a registered trademark.

**INSTRUCTION NO. 2.7 – CONTRIBUTORY AND VICARIOUS TRADEMARK INFRINGEMENT AND COUNTERFEITING**

Liability for trademark infringement and counterfeiting can extend beyond those who directly infringe the mark of another. Even where a party does not directly offer for sale the infringing products, it can be held responsible for a third party's infringing activities.[77] One way is called "contributory liability"; another is called "vicarious liability".[78]

---

[77] *Inwood Labs. v. Ives Labs.*, 456 U.S. 844, 854 (1982); *see also AT&T v. Winback and Conserve Program*, 42 F.3d 1421, 1432 (3d Cir. 1994).

[78] *AT&T*, 42 F.3d at 1430-1432, 1441-1442 (discussing both contributory and vicarious trademark liability).

**<u>INSTRUCTION NO. 2.8 – CONTRIBUTORY TRADEMARK INFRINGEMENT AND COUNTERFEITING</u>**

For Amazon to be liable for contributory trademark infringement or counterfeiting, GOLO must prove by a preponderance of the evidence that:

1. Amazon intentionally induced or caused a third party to infringe GOLO's asserted trademarks; or

2. Amazon knew or had reason to know a third party was infringing the GOLO Trademarks but continued to supply its products or services to the third party.

**[AMAZON: General knowledge or awareness that Amazon's services may be used by some sellers or authors to infringe trademarks is not sufficient.]** For contributory trademark infringement or counterfeiting, GOLO must prove that Amazon knew or had reason to know that the specific products bore an infringing or counterfeit mark.[79] "Reason to know" includes a concept known as willful blindness.[80] **[GOLO: Willful blindness means that Amazon or its agents had reason to suspect that trademark infringing merchandise was being offered or sold but**

---

[79] *Tiffany*, 600 F.3d at 107 (contemporary knowledge of which particular listings are infringing is required; generalized knowledge is insufficient); *Rosetta Stone*, 676 F.3d at 163; *Sellify Inc. v. Amazon.com, Inc.*, No. 09-cv-10268, 2010 U.S. Dist. LEXIS 118173 (S.D.N.Y. Nov. 3, 2010) (holding Amazon was not liable for contributory trademark infringement where it responded upon notification of infringement by third parties). Because counterfeiting requires a spurious mark and knowing use, see Instruction No. 2.6, contributory counterfeiting requires knowledge or reason to know of the counterfeiting itself.

[80] [AMAZON: *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 110 (2d Cir. 2010) (quoting *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992) ("In the words of the Seventh Circuit, 'willful blindness is equivalent to actual knowledge for purposes of the Lanham Act.'"); *Omega SA v. 375 Canal, LLC*, 984 F.3d 244, 254 (2d Cir. 2021) ("*Tiffany*'s discussion of willful blindness confirms that a defendant may be held liable for contributory trademark infringement despite not knowing the identity of a specific vendor who was selling counterfeit goods, as long as the lack of knowledge was due to willful blindness.").]

**deliberately failed to investigate or looked the other way to avoid seeing such activity.[81] To determine whether willful blindness exists, you may consider the nature and extent of Amazon's communications regarding the alleged infringing acts, including communications with GOLO.[82] You may also consider the extent and nature of the alleged infringement of GOLO's trademarks. If the infringement is serious and widespread, it is more likely that Amazon knew about and condoned the acts of the alleged third-party infringers.[83]][84]**

---

[81] *Omega SA*, 984 F.3d at 250 (affirming jury instruction that read as follows: "Willful blindness means that . . . Canal or its agents had reason to suspect that trademark infringing merchandise was being offered or sold but deliberately failed to investigate or looked the other way to avoid seeing such activity.").

[82] *Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1309–10 (11th Cir. 2019) (affirming finding of contributory trademark infringement where "Luxottica twice sent letters notifying the defendants that their subtenants were not authorized to sell Luxottica's eyewear and that any mark resembling Ray-Ban or Oakley marks would indicate that the glasses were counterfeit").

[83]*Omega SA v. 375 Canal, LLC*, 984 F.3d 244 (2d Cir. 2021) (affirming jury instruction that read as follows: "You may consider the nature and extent of the communication between 375 Canal and its tenants, subtenants or other occupants of the premises regarding the infringing acts. You may also consider the extent and nature of the alleged infringement of Omega's trademarks. If the infringement is serious and widespread, it is more likely that 375 Canal knew about and condoned the acts of its tenants, subtenants or other occupants of its premises.").

[84] **AMAZON**: Amazon objects to GOLO's willful-blindness definition because a "reason to suspect" standard approaches negligence; willful blindness requires that the defendant intentionally shielded itself from discovering the infringement. *Tiffany*, 600 F.3d at 109; *see Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011). Amazon further objects to the statement that if the infringement is "serious and widespread, it is more likely that Amazon knew about and condoned the acts of the alleged third-party infringers," which is drawn from a landlord-tenant instruction in *Omega SA v. 375 Canal, LLC*, 984 F.3d 244 (2d Cir. 2021), improperly comments on the weight of the evidence, and does not fit an online marketplace. That statement also contradicts the agreed portion of this instruction, which provides that general knowledge or awareness that Amazon's services may be used to infringe is not sufficient and that GOLO must prove Amazon knew or had reason to know that the specific products bore an infringing or counterfeit mark. *See Tiffany*, 600 F.3d at 107. Amazon also objects to singling out communications with GOLO as evidence of willful blindness, which improperly highlights one category of evidence; the inquiry is whether Amazon subjectively believed there was a high probability that a specific product was infringing and deliberately avoided confirming it. *See*

**[AMAZON: Knowledge may be shown through willful blindness only if GOLO proves that (a) Amazon subjectively believed there was a high probability that a specific product was infringing, and (b) Amazon took deliberate actions to avoid confirming that fact. Negligence, carelessness, or a failure to adopt additional anti-infringement measures is not willful blindness. Amazon had no general duty to monitor its services for possible infringement or to take steps beyond those required by its specific knowledge.[85]]**

---

*Global-Tech, 563 U.S. at 769-70*; *Tiffany*, 600 F.3d at 109. GOLO's authority, *Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1309-10 (11th Cir. 2019), likewise arose in the landlord context and involved notice letters about the defendants' subtenants, not an instruction directing the jury to particular communications.

[85] *Tiffany*, 600 F.3d at 107, 109 (willful blindness requires that the defendant intentionally shielded itself from discovering the infringement); *Global-Tech*, 563 U.S. at 769-70.

## INSTRUCTION NO. 2.9 – VICARIOUS TRADEMARK INFRINGEMENT AND COUNTERFEITING

For Amazon to be liable for vicarious trademark infringement or counterfeiting, GOLO must prove by a preponderance of the evidence that a third party directly infringed or counterfeited GOLO's trademark **[AMAZON: with respect to a specific accused book]**[86], and that[87] Amazon and the third-party infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties, or exercise joint ownership or control over the infringing product.[88]

An agency relationship is created when one party consents to act on its behalf, with the principal controlling and directing the acts of the agent.[89] Vicarious liability due to an agency relationship can be based on the agent's actual or apparent authority. An agent acts with actual

---

86 **AMAZON**: As pleaded in the operative complaint, GOLO's vicarious trademark infringement and counterfeiting theories are limited to the "Infringing Products"-the "diet plans, cookbooks, and collections of recipes bearing the GOLO Trademarks" that Amazon allegedly sells-which are books. D.I. 69 ¶¶ 92, 173-74*; see al*so D.I. 328 at 15 (GOLO's vicarious infringement and counterfeiting claims "apply to the unauthorized GOLO-branded books identified in Counts I and II").

87 *Inwood*, 456 U.S. at 854; AT&T, 42 F.3d at 1432. Vicarious liability is derivative of a direct infringement by a third party, which must be found as to each specific accused book.

88 *Rosetta Stone Ltd. v. Google, Inc*., 676 F.3d 144, 165 (4th Cir. 2012) (quoting *Hard Rock Café*, 955 F.2d at 1150); *see also AT&T*, 42 F.3d at 1434 ("The only feasible way for AT & T to assert its federal rights would be to sue the principal, who, if an agency relationship is established, is able to exercise at least some control over its agents, who authorized the sales representatives to enter into contracts on its behalf, and who receives direct financial benefits from those contracts."); *Homenexus v. Directweb, Inc.*, C.A. No. 99-cv-2316, 1999 U.S. Dist. LEXIS 16342 (E.D. Pa. Oct. 14, 1999) ("[T]he theory of joint tort-feasor liability for trademark infringement by another requires an allegation that the defendant and infringer have apparent or actual partnership, have authority to bind one another in transacting with third parties, or exercise joint ownership or control over the infringing product.") (citing *Hard Rock Cafe v. Concession Services, Inc.*, 955 F.2d 1143 (7th Cir. 1992)).

89 *AT&T*, 42 F.3d at 1434.

authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act.[90] Apparent authority arises where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority despite the absence of an actual agency relationship.[91]

---

[90] *Solta Med., Inc. v. Candela Med., Inc.*, No. 22-01177 (GC), 2023 WL 11867078, at *6 (D.N.J. Feb. 28, 2023) (quoting Restatement (Third) of Agency § 2.01 (2006)).

[91] *AT&T*, 42 F.3d at 1434.

## INSTRUCTION NO. 2.10 – DEFENSE OF NOMINATIVE FAIR USE[92], [93]

Amazon contends that the use of GOLO's trademarks **[AMAZON: (i) in paid search advertisements and keywords, (ii) in organic search results and on product detail pages, and (iii)][94]** in connection with books offered and sold on Amazon.com was permitted under the doctrine of nominative fair use.[95] **[AMAZON: If GOLO has proven a likelihood of confusion as to a use, Amazon has the burden of proving its nominative fair use of GOLO's trademarks for that use by a preponderance of the evidence.[96]] [GOLO: If you find that Amazon's use of GOLO's trademarks in connection with books created a likelihood of confusion, you will be asked to decide whether such use constitutes nominative fair use.**

---

[92] *Artoss, Inc. v. Artoss GmbH et al.*, No. 1:20-cv-00741-GBW, D.I. 286 (D. Del. Nov. 16, 2022), Final Jury Instructions: Phase 1 ("*Artoss* Final Jury Instructions") at 10-11; *VMWare* Final Jury Instructions at 70; *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 222, 230 (3d Cir. 2005).

[93] **GOLO**: GOLO objects and preserves all challenges to Amazon's reliance on the Third Circuit's nominative fair use test as set out in *Century 21 Real Est. Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 222 (3d Cir. 2005), which was a preliminary injunction-stage decision, and expressly noted its limited applicability. *See id.* at 225 ("We find that all of the other *Lapp* factors, while perhaps not appropriate for analysis in this particular case, could be analyzed in future nominative use cases, depending on the factual situation."). Moreover, GOLO objects to Amazon trying to expand the nominative fair use defense to claims other than GOLO's trademark infringement claims related to books.

[94] **AMAZON**: As set forth in Amazon's opposition to GOLO's MIL No. 1, Amazon objects any instruction limiting its fair use defense to books..

[95] *Century 21 v. Lending Tree* (3d Cir. 2005); *VMWare* Final Jury Instructions at 70.

[96] *Century 21*, 425 F.3d at 222; *Vcom Int'l Multi-Media Corp. v. Gluck*, No. 14-3398, 2017 WL 1137442, at *9 n.9 (D.N.J. Mar. 27, 2017) (fair use is not reached "until after making a determination that the plaintiff met its burden in showing a likelihood of confusion"); *Commerce Bancorp, LLC v. Hill*, No. 08-5628, 2010 WL 2545166, at *14 (D.N.J. June 18, 2010); *David's Bridal, Inc. v. House of Brides, Inc.*, No. 06-5660, 2010 WL 323306, at *4-5 (D.N.J. Jan. 20, 2010).

**An entity makes nominative fair use of a trademark when the entity uses it to accurately identify the trademark owner's goods and services in connection with its own.[97]. It is called 'nominative' use because it 'names' the real, true owner of the mark.[98]**

**In other words, under the nominative fair use defense, Amazon asserts that the use of the GOLO mark in connection with books sold on its website merely referred to GOLO's own products and services and did not suggest that the books were from GOLO. As an example, the use of the term "Volkswagen" by a car mechanic in an ad describing the types of cars he repairs has been held to constitute a nominative fair use, because it did not suggest that Volkswagen itself was making the repairs or that his repair shop was sponsored or authorized by Volkswagen. The mechanic was clearly referring to another's product, but did so in order to describe what he did.[99]**

**Here, Amazon has the burden of proving its nominative fair use of GOLO's trademarks by a preponderance of the evidence.]** To prove nominative fair use, Amazon must show that:

1. The use of GOLO's trademarks was necessary to describe Amazon's products or services and GOLO's products or services **[AMAZON: because identifying the**

[97] *Century 21 Real Est. Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 214 (3d Cir. 2005) ("'Nominative' fair use is said to occur 'when the alleged infringer uses the [trademark holder's] product, even if the alleged infringer's ultimate goal is to describe his own product.'").

[98] *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC,* 823 F.3d 153, 165 (2d Cir. 2016).

[99] *Century 21 Real Est. Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 214, 219 (3d Cir. 2005).

**products would be rendered significantly more difficult without use of the GOLO marks;]**[100]

2. Amazon uses only so much of GOLO's trademarks as was reasonably necessary to identify the product in question; and

3. Amazon's conduct or language, beyond the mere presence of the GOLO marks on the books and website,[101] reflects the true and accurate relationship between GOLO and Amazon's products or services.[102]

With respect to the first element, **[GOLO: use of a trademark may be deemed necessary / AMAZON: "necessary" does not mean indispensable, and the law does not require Amazon to resort to second-best communication. The first element is met]**[103] if identification of GOLO's products or services by Amazon would be rendered significantly more difficult without

---

[100] *Century 21*, 425 F.3d at 229 ("the court need only be satisfied that the identification by the defendant of plaintiff's product or service would be rendered significantly more difficult without use of the mark").

[101] *Century 21*, 425 F.3d at 231 (the court "should look at the precise way in which what the defendant said, or did not say, *other than there mere presence of the mark* on the website, may have inaccurately implied endorsement or sponsorship").

[102] *Century 21 Real Est. Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 222 (3d Cir. 2005).

[103] **AMAZON**: Under the first prong of the *Century 21* test, the use must be reasonably necessary to describe both GOLO's and Amazon's products, but the factfinder "need not find that the use of the mark is indispensable"; "[t]he Lanham Act does not compel a competitor to resort to second-best communication," and the prong is satisfied if identification of the plaintiff's product "would be rendered significantly more difficult without use of the mark." *Century 21*, 425 F.3d at 229. *Century 21* also directs consideration of "the simplicity of description and the likelihood that consumers will understand a given reference" without the mark and holds that the more dependent identification of the defendant's product is on the reference, "the more likely it is that the use is a fair one." *Id.* GOLO's version attributes the "significantly more difficult" standard to *Artoss* and omits the remainder of the Third Circuit's guidance.

use of the mark.[104] **[AMAZON: You may consider how simply the products could be described without the mark and whether consumers would understand the reference without it. You should also consider how dependent the identification of Amazon's product is on referring to GOLO's product; the more dependent it is, the more likely the use is fair.][105]**

**[AMAZON: With respect to the second element, you should consider only the amount and manner of Amazon's use of the GOLO mark and whether that use was no more than reasonably necessary to identify GOLO's product. A] [GOLO: With respect to the second element, a]** reasonably necessary use of a trademark occurs when no more of the mark's appearance is used than is necessary to identify the product and make the reference intelligible to the consumer.[106] **[GOLO: For example, use of a party's logo or colors is considered to be using more of the trademark than is reasonably necessary.[107]][108]**

---

[104] *Century 21*, 425 F.3d at 229.

[105] *Century 21*, 425 F.3d at 228-29 ("the court need not find that the use of the mark is indispensable"; "[t]he Lanham Act does not compel a competitor to resort to second-best communication"; "the court need only be satisfied that the identification by the defendant of plaintiff's product or service would be rendered significantly more difficult without use of the mark"; "the more dependent the ready identification of defendant's product is on the description of plaintiff's product . . . the more likely it is that the use is a fair one"); *see Commerce Bancorp, LLC v. Hill*, No. 08-5628, 2010 WL 2545166, at *15 (D.N.J. June 18, 2010) (use of plaintiff's name was reasonably necessary where the defendant's own story could not be told without it); *Stirista, LLC v. Skydeo Inc.*, No. 1:23-cv-00856-CFC, 2025 WL 743752, at *3 (D. Del. Mar. 7, 2025) (necessity prong presented a genuine factual dispute for the jury).

[106] *Artoss* Final Jury Instructions at 10-11.

[107] *Century 21 Real Est. Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 230 (3d Cir. 2005) ("Consideration should be given at this stage to the manner in which the mark is portrayed. For example, did the defendant use plaintiff's distinctive lettering when using the plaintiff's mark or did the defendant, as in this case, simply use block letters to spell out plaintiffs' names?").

[108] **AMAZON:** Amazon contends that GOLO's statement that "use of a party's logo or colors is considered to be using more of the trademark than is reasonably necessary" is excessive because it converts one consideration into a rule of law and is not limited to the trademark owner's

With respect to the third element, **[GOLO: you can consider the defendant's failure to state or explain some aspect of the relationship between GOLO and Amazon in determining whether Amazon's use of the GOLO mark reflects their true and accurate relationship with respect to the cookbooks.[109] / AMAZON: you should consider the precise way in which what Amazon said or did, or did not say or do, other than the mere presence of the GOLO mark, may have inaccurately implied endorsement by, sponsorship by, or affiliation with GOLO. You should consider any disclaimers, author or publisher identification, or other affirmative steps that may have negated an inaccurate implication of a relationship with GOLO. The mere presence or use of the GOLO mark does not by itself show that the use was unfair.[110] A use of GOLO's trademarks does not suggest sponsorship or endorsement of Amazon's products when Amazon does not attempt to deceive or mislead consumers.][111]**

---

distinctive logo or colors. It should be replaced with *Century 21*'s instruction that "[c]onsideration should be given . . . to the manner in which the mark is portrayed," such as whether the defendant used the plaintiff's "distinctive lettering" or "simply use[d] block letters." 425 F.3d at 230.

[109] *Century 21*, 425 F.3d at 231.

[110] *Century 21*, 425 F.3d at 230-31 (adopting the broader question whether "the defendant's conduct or language reflect[s] the true and accurate relationship between plaintiff and defendant's products or services"; "The mere presence or use of the mark does not suggest unfairness under this prong"; a disclaimer "must be considered in determining whether the alleged infringer accurately portrayed the relationship"). *Cf.* Ninth Cir. Model Civ. Jury Instr. 15.26 and *Artoss* Final Jury Instructions at 10-11 (applying the Ninth Circuit "sponsorship or endorsement" formulation that Century 21 modified).

[111] *Peninsula* Final Jury Instructions at 102.

**[AMAZON: Likelihood of confusion and fair use are not mutually exclusive.[112] A finding that some consumers are likely to be confused does not defeat this defense.[113] Even if you find that GOLO has proven a likelihood of confusion as to a use, Amazon's use is a fair use if Amazon proves each of the three elements. The fact that Amazon's use of GOLO's trademark may bring Amazon a profit or help it compete does not mean that the use was not a fair use.[114] The owner of a trademark cannot exclude others from making a fair use of that trademark.[115]**

**If you find that Amazon has proven all three elements for a category of use, your verdict on GOLO's trademark infringement and unfair competition claims as to that use**

---

112 **AMAZON**: Amazon contends that the jury must be told that confusion and fairness are not mutually exclusive. The Supreme Court held that "some possibility of consumer confusion must be compatible with fair use," *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc*., 543 U.S. 111, 121-22 (2004), and the Third Circuit built its bifurcated test on that holding precisely so that a factfinder "could find a certain level of confusion, but still ultimately determine the use to be fair." *Century* 21, 425 F.3d at 217-18, 222–24, 232. Because the jury will reach the defense only after finding confusion, an instruction that omits the coexistence rule would leave jurors to assume that their step-one finding forecloses the defense—effectively requiring Amazon to negate confusion, the result *KP Permanent* and *Century* 21 reject. *Century* 21, 425 F.3d at 232. GOLO's proposal not only omits the coexistence rule but provides that the defense does not apply if Amazon's use would "capitalize on consumer confusion caused by such use," which would allow the confusion found at step one to defeat the defense at step two.

113 *Commerce Bancorp, LLC v. Hill*, No. 08-5628, 2010 WL 2545166, at *14 (D.N.J. June 18, 2010) ("[U]nder the *Century 21* approach, the use can be a little confusing provided it is fair on the whole.").

114 *Peninsula* Final Jury Instructions at 102.

115 *Century 21*, 425 F.3d at 217–18 ("consumer confusion and fair use are not mutually exclusive"); *id.* at 222–24 ("confusion and fairness are separate and distinct concepts that can co-exist"); *id.* at 232 (approach "allows for the possibility that a district court could find a certain level of confusion, but still ultimately determine the use to be fair"); *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 121–22 (2004) ("some possibility of consumer confusion must be compatible with fair use").

**must be for Amazon, regardless of whether you found a likelihood of confusion. If you find that Amazon has failed to prove any one of the three elements for a category of use, then this defense does not apply to that use.][116]**

**[GOLO: Nominative fair use does not apply if the defendant did anything that would, in conjunction with its use of the trademark, suggest sponsorship or endorsement by the trademark owner of the defendant's own product or service, or deceive, mislead, or capitalize on consumer confusion caused by such use, or appropriate the cachet of the trademark owner's product for the defendant's.[117]][118]**

---

[116] *Century 21*, 425 F.3d at 232 ("If each of these questions can be answered in the affirmative, the use will be considered a fair one, regardless of whether likelihood of confusion exists.").

[117] *Artoss* Final Jury Instructions at 10-11.

[118] **AMAZON**: Amazon objects to GOLO's closing paragraph, which is drawn from the *Artoss* instructions, which applied the Ninth Circuit *New Kids* test ("did not do anything . . . that would suggest sponsorship or endorsement"). *Artoss* Final Jury Instructions at 10-11*; see* Ninth Cir. Model Civ. Jury Instr. 15.26. The paragraph's remaining language-that the defense fails if the use would "capitalize on consumer confusion" or "appropriate the cachet" of the trademark owner's product-likewise comes from *New Kids. See Century* 21, 425 F.3d at 219 (quoting *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 307-08 (9th Cir. 1992)). *Century* 21 expressly declined to adopt that formulation, holding that "the appropriate question should be a bit broader: does the defendant's conduct or language reflect the true and accurate relationship between plaintiff and defendant's products or services?" *Id.* at 230-31. Under the Third Circuit test, "[t]he mere presence or use of the mark does not suggest unfairness," an accurately depicted relationship is not unfair, and disclaimers "must be considered." Id. at 231. GOLO's paragraph also provides that the defense fails if Amazon's use would "capitalize on consumer confusion caused by such use"—which would allow the very confusion GOLO must prove at step one to defeat the defense at step two. That is irreconcilable with *Century* 21's holding that a use satisfying the three prongs is fair "regardless of whether likelihood of confusion exists." Id. at 232. The paragraph should be rejected and replaced with Amazon's Third Circuit language, including its third element ("beyond the mere presence of the GOLO marks on the books and website") and its instruction that likelihood of confusion and fair use are not mutually exclusive.

**Instruction No. 2.11 – Likelihood of Confusion Factors in Nominative Fair Use Cases**[119], [120]

**[GOLO: For trademark claims for which an alleged infringer is using an identical mark and asserts a 'nominative fair use' defense, the first two likelihood of confusion factors discussed above—that is, the similarity and strength of GOLO's marks—are not considered helpful factors in determining whether there is a likelihood of confusion. This is because, by asserting that their use of GOLO's marks was meant to refer to GOLO, Amazon is effectively conceding that the marks are the same and that they are strong trademarks.**[121] **Thus, if you**

---

[119] **AMAZON**: Amazon objects and preserves all challenges to Instruction No. 2.5 to the extent it directs the jury to consider the similarity of the marks and the strength of GOLO's mark for uses as to which Amazon asserts nominative fair use. Amazon contends that the earlier likelihood of confusion instruction should be tailored to reflect *Century* 21's modifications of the *Lapp* factors when the defendant claims nominative fair use. To the extent this separate instruction is given, Amazon's proposed language should be used. Amazon agrees that similarity and strength are excluded, but GOLO's instruction misstates why, makes the exclusion conditional on whether the jury "believe[s] Amazon's assertion," and limits it to books by excluding paid and organic search results, even though Amazon asserts nominative fair use as to all accused uses. *Century* 21 excludes similarity because it "does not leave any room for the consideration of the context of the use," and excludes strength because nominative users rely on a mark "because of its very strength," so strength "is not really probative of confusion." 425 F.3d at 224–25. Nothing in *Century* 21 treats a nominative fair use defense as a "concession." Instructing the jury to "acknowledge Amazon's concession" that "GOLO's mark is strong" is argumentative and prejudicial on issues where mark strength and identity remain contested, including counterfeiting and damages. Amazon's proposals herein are made for the purpose of proposing the instructions that the Court should provide to the jury, without waiving Amazon's objection to Instruction No. 2.5.

[120] **GOLO**: GOLO objects and preserves all challenges to Amazon's reliance on the Third Circuit's nominative fair use test as set out in *Century 21 Real Est. Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 214 (3d Cir. 2005), which was a preliminary injunction-stage decision, and expressly noted its limited applicability. *See id.* at 225 ("We find that all of the other *Lapp* factors, while perhaps not appropriate for analysis in this particular case, could be analyzed in future nominative use cases, depending on the factual situation."). GOLO's proposals herein are made for the purpose of proposing the instructions that the Court should provide to the jury, recognizing that the Court is bound by Third Circuit precedent.

[121] *Century 21 Real Est. Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 225 (3d Cir. 2005) ("defendants in nominative use cases . . . feel they need to use the actual mark to describe the plaintiff's product because of its very strength and what it has come to represent").

**believe Amazon's assertion that its use of GOLO's marks in connection with books sold on its websites were merely meant to reference GOLO's own products and services, you should acknowledge Amazon's concession that the marks are the same and GOLO's mark is strong, and not consider the first two factors in your likelihood of confusion analysis. This instruction does not apply to GOLO's trademark infringement claims with respect to paid and organic search results.]**[122]

[**AMAZON: Where, as here, Amazon contends that it used GOLO's marks to refer to GOLO's own products or services, you must not consider the similarity of the marks or the strength of GOLO's mark.**[123]

**You should focus instead on: (1) the price of the goods and other factors indicating the care and attention expected of consumers; (2) the length of time the mark has been used without evidence of actual confusion; (3) Amazon's intent—meaning not whether Amazon intended to use GOLO's mark or how it investigated the mark, but whether Amazon used**

---

[122] **AMAZON**: Amazon objects to GOLO's proposed instruction because it removes only the similarity and strength factors and leaves the jury to apply the remaining factors in Instruction No. 2.5 unchanged, including the traditional intent factor, which looks to the "intentional, willful and admitted adoption of a mark closely similar to an existing mark." That is the traditional inquiry into a junior user's adoption of a similar mark. *Century* 21 replaced it in the nominative context: "Whereas the traditional 'intent' prong looks at intent to adopt a similar mark, here the key inquiry is whether the mark is being used so as to convey a connection between the parties that may not exist," and "[u]se of the mark alone is not sufficiently probative of such intent." 425 F.3d at 226-27. *Century 21* also identified the four factors that remain relevant where nominative use is asserted, which GOLO's instruction omits. *Id.* at 232. Amazon's proposed intent factor in Instruction No. 2.5 and its proposed Instruction No. 2.11 track *Century* 21; GOLO's instruction should not be given because Amazon asserts nominative fair use as a defense to all accused uses.

[123] *Century 21*, 425 F.3d at 224-25 (first *Lapp* factor "does not leave any room for the consideration of the context of the use"; defendants "feel they need to use the actual mark to describe the plaintiff's product because of its very strength and what it has come to represent," so "the marks' strength is not really probative of confusion").

**the mark with the intent to convey a connection between Amazon and GOLO that may not exist; and (4) the evidence of actual confusion. Mere use of the mark is not sufficient to prove such intent.[124] These four factors are the most significant factors where a nominative use is asserted.][125]**

[124] *Century 21*, 425 F.3d at 225–27 (identifying the four relevant factors; "the key inquiry is whether the mark is being used so as to convey a connection between the parties that may not exist"; "Use of the mark alone is not sufficiently probative of such intent.").

[125] *Peninsula* Final Jury Instructions at 102-04; *see Century 21*, 425 F.3d at 224-25.

**INSTRUCTION NO. 2.12 – FIRST AMENDMENT PROTECTION FOR BOOKSTORES**[126]

**[AMAZON: Amazon contends that the First Amendment protects its offer for sale, distribution, and sale of books that were written and uploaded by third-party authors and**

[126] **GOLO**: GOLO's position is that there is no special First Amendment protection for bookstores. The text of the Lanham Act itself is clear that it creates a cause of action against "any person" who, without the consent of a trademark owner, "use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. Moreover, under the Lanham Act, "a mark shall be deemed to be in use in commerce" when it is placed on goods and "the goods are sold or transported in commerce." 15 U.S.C. § 1127. Accordingly, courts roundly hold that mere sellers of infringing goods can be liable for trademark infringement, including sellers of books and other expressive works. *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 381 (6th Cir. 2006) (finding "no reason to restrict liability to those who actually create, manufacture or package the infringing items" because "all the statutes demand is that the defendant have 'used' the goods 'in commerce' (Sections 1114(1)(a) and 1125(a)), and we can think of no clearer 'use' of goods 'in commerce' than offering them for sale"); *El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 396 (2d Cir. 1986) ("Even though Shoe World was involved neither in the manufacture nor the affixing of the CANDIE'S trademark to the shoes, its sale of the shoes was sufficient 'use' for it to be liable for the results of such infringement and its claimed lack of knowledge of its supplier's infringement, even if true, provides no defense."); *see also Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1031-32 (9th Cir. 2024) (rejecting First Amendment defense on summary judgment over trademark claims over news publication title); *Davis v. Blue Tongue Films*, No. 23-3968, 2024 WL 5182630, at *2-3 (9th Cir. Dec. 20, 2024) (rejecting First Amendment defense and refusing to dismiss trademark claim over film title); *Mar Vista Entmt., LLC v. THQ Nordic AB*, No. 2:23-cv-06924, 2024 WL 3468933, at *3-4 (C.D. Cal. Jul. 8, 2024) (same); *Toho Co., Ltd. v. William Morrow and Co.*, 33 F. Supp. 2d 1206, 1209, 1213-16 (C.D. Cal. 1998) (preliminary injunction against a single-work book that used "Godzilla" mark in the title); *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403-07 (9th Cir. 1997) (affirming infringement finding over use of "The Cat In The Hat" mark in the title of a single-work book). Thus there is no basis for the Court to instruct the jury, as requested by Amazon, that bookstores enjoy First Amendment protection from trademark infringement. The case law cited by Amazon does not involve trademark infringement claims and thus does not support that the First Amendment immunizes booksellers from trademark liability.

**publishers using Amazon's Kindle Direct Publishing service ("account holders").[127],[128] The First Amendment protects the right to distribute books, and booksellers and other distributors generally have no duty to monitor or police the titles or content of the books they sell.[129] The reason for this protection is that requiring a bookseller to review every book to decide whether it may lawfully be sold would force the bookseller to restrict the books it sells to those it has personally inspected, which would restrict the public's access to books.[130]**

---

[127] *Smith v. California*, 361 U.S. 147 (1959); *Roe v. Amazon.com*, 714 F. App'x 565 (6th Cir. 2017); *Atlas Data Priv. Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322 (D.N.J. 2024); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1278 (W.D. Wash. 2012); *Parisi v. Sinclair*, 774 F. Supp. 2d 310 (D.D.C. 2011); *Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315 (S.D.N.Y. 2006); *William O'Neil & Co. v. Validea.com, Inc.*, 202 F. Supp. 2d 1113 (C.D. Cal. 2002); *see also Iancu v. Brunetti*, 588 U.S. 388 (2019); *Matal v. Tam*, 582 U.S. 218 (2017).

[128] **AMAZON**: Amazon contends that booksellers may not be held liable for third-party content in books they distribute absent knowledge of the specific content, and that the jury must decide the predicate facts of who created the challenged content and whether Amazon knew or had reason to know of it, book by book. Amazon moved for summary judgment on its First Amendment defense on the ground that it was a legal issue for the Court to resolve. The Court disagreed, finding disputed issues of fact. D.I. 389 at 70:24-71:4. Amazon objects to GOLO's position that there is no First Amendment protection for booksellers; GOLO's authorities either did not involve First Amendment defenses or involved defendants that authored, produced, or knowingly sold the infringing goods. *See* D.I. 354 at 4-5 & n.4 (distinguishing cases). Amazon further objects to GOLO's proposed instruction because it provides that the First Amendment "provides no separate defense" whenever "GOLO" is used in a source-identifying way. That conflates Amazon's distributor-based defense, which turns on who created the content and whether Amazon knew of it, with the separate question of protection for expressive works addressed in Instruction No. 2.13. Amazon's defense applies regardless of how the title uses the mark. *See* D.I. 354 at 4 (Amazon's defense "is based on the protected right to distribute books, not on rights afforded to expressive works").

[129] *Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1040 (S.D. Ohio 2016) ("To prevent chilling and self-censorship, bookstores and other distributors generally have no duty to monitor the content of the material they distribute."), *aff'd*, 714 F. App'x 565, 568-69 (6th Cir. 2017); *Smith v. California*, 361 U.S. 147, 152-54 (1959); *Parisi v. Sinclair*, 774 F. Supp. 2d 310, 314, 319-21 (D.D.C. 2011).

[130] *Smith*, 361 U.S. at 153-54 ("[I]f the bookseller is criminally liable without knowledge of the contents . . . he will tend to restrict the books he sells to those he has inspected"; "the bookseller's burden would become the public's burden"); *Sandler v. Calcagni*, 565 F. Supp. 2d 184, 196 (D.

**This defense applies to all of GOLO's claims that are based on the titles, covers, or content of books published through Kindle Direct Publishing.[131] To decide whether this defense applies to a particular book, you must answer two questions for that book.**

**If the account holder, rather than Amazon, wrote or selected the challenged title, then Amazon acted as a bookseller and distributor, not as the author or publisher, of that content. Amazon does not become a publisher merely because it printed the book on demand, stored or warehoused copies, shipped the book, set or displayed a price, placed the book in a category, provided tools that the account holder used to create a cover or other materials, or screened books for formatting, illegal, or offensive content.[132] Amazon is responsible for content only if GOLO proves that Amazon itself wrote that content or materially changed it.**

**If you find, for a particular book, that the account holder created the challenged content and that Amazon did not know or have reason to know that the specific content of that book infringed GOLO's trademarks or was false, then you must find for Amazon on all of GOLO's claims as to that book. General awareness that some books on Amazon.com may**

---

Me. 2008) (imposing inspection duty on print-on-demand printer would make it a censor and have "a deleterious effect on the free dissemination of information").

[131] *Smith*, 361 U.S. at 152-54; *Roe*, 170 F. Supp. 3d at 1040; *CBS Corp. v. FCC*, 535 F.3d 167, 189 (3d Cir. 2008) (rejecting vicarious liability theory that "functionally equates to strict liability for speech or expression" of others), *vacated on other grounds*, 556 U.S. 1218 (2009); *Parisi*, 774 F. Supp. 2d at 319 (plaintiff cannot evade First Amendment constraints by recasting claims under different labels).

[132] *Sandler*, 565 F. Supp. 2d at 194-96 (print-on-demand company that transformed authors' files into books with "no editorial control and no communal process with the author" was not liable absent knowledge, and had "no duty to inspect"); *Roe*, 170 F. Supp. 3d at 1038-40 (Amazon KDP not a publisher even though it formatted, printed, distributed, and provided marketing platform for self-published book and screened for pornography, offensive material, and plagiarism; treating KDP as "next logical step after the photocopier"); *Parisi*, 774 F. Supp. 2d at 314.

**use the word "GOLO," or that some account holders may infringe trademarks, is not enough. Amazon had no duty to review, investigate, or verify the titles, contents, or author information of books before offering them for sale.**[133]

**This defense is separate from, and does not depend on, the defense described in the next instruction (Instruction No. 2.13). It applies even if you find that the word "GOLO" was used in a book's title in a source-identifying way, and even if you find that Amazon is not entitled to the defense in Instruction No. 2.13. If you find that Amazon has not established this defense for a particular book, you must still separately consider whether Instruction No. 2.13 applies to that book.]**

**[GOLO: The First Amendment protects the freedom to write, publish, and sell books. But it does not give anyone, whether an author, a publisher, or a bookseller, a right to use another company's trademark in a way that is likely to confuse consumers about who made, sponsored, or approved a product. Books are sold in the marketplace like other products, and a book can infringe a trademark just as any other product can. The fact that the accused products are books, or that Amazon sells books, does not by itself excuse trademark infringement or require GOLO to prove anything beyond what my other instructions require.**[134]

---

[133] *Smith*, 361 U.S. at 152-54; Roe, 170 F. Supp. 3d at 1040 ("States may not impose criminal or civil liability against booksellers or other distributors for distribution where the distributor neither knew nor had any reason to know of alleged wrongdoing pertaining to specific content."); *Sandler*, 565 F. Supp. 2d at 194-96; *Parisi*, 774 F. Supp. 2d at 319-21; *Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315 (S.D.N.Y. 2006); *William O'Neil & Co. v. Validea.com, Inc.*, 202 F. Supp. 2d 1113 (C.D. Cal. 2002); *see also People v. Kirkpatrick*, 295 N.E.2d 753, 763 (N.Y. 1973) (Fuld, J., dissenting).

[134] *Rogers v. Grimaldi*, 875 F.2d 994, 997-1002 (2d Cir. 1989) (books "are also sold in the commercial marketplace like other more utilitarian products," and "[t]he purchaser of a book, like

**If you find that the word "GOLO" was used on a book's title, cover, or listing to identify the source, sponsorship, or approval of that book, the First Amendment provides no separate defense. In that event, the only question is whether the use is likely to cause confusion, which you will decide under Instruction Nos. 2.4 and 2.5. In answering that question, you may consider the expressive character of the book and its title.**[135]

**To prove that Amazon directly infringed GOLO's trademarks, GOLO does not have to prove that Amazon knew, or had reason to know, that a book infringed. A business that sells, offers for sale, or distributes goods bearing an infringing mark may be liable even if it did not create the goods and did not know they infringed. Amazon's knowledge, intent, or good faith matters only to the questions of willfulness and remedies, which I address in separate instructions. In deciding whether Amazon itself used GOLO's marks in commerce for a particular book, you should consider all the evidence about Amazon's role. That includes, for example, whether Amazon printed or manufactured the book, sold it to the customer in its own name, shipped it, advertised or promoted it, or controlled how it was listed and presented to customers.**[136]

---

the purchaser of a can of peas, has a right not to be misled as to the source of the product"); *Taubman Co. v. Webfeats*, 319 F.3d 770, 774-75 (6th Cir. 2003).

[135] *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 152-61 (2023); *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1031-32 (9th Cir. 2024); *Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 88 F.4th 125, 136-38 (2d Cir. 2023).

[136] *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 448-51 (6th Cir. 2021); *Pennsylvania State Univ. v. Vintage Brand, LLC*, No. 4:21-CV-01091, 2024 WL 4839372 (M.D. Pa. Nov. 19, 2024); *Pennsylvania State Univ. v. Vintage Brand, LLC*, No. 4:21-CV-01091, 2025 WL 3048996 (M.D. Pa. Oct. 31, 2025).

**For GOLO's claim that Amazon is contributorily liable for infringement committed by account holders, you should apply Instruction No. 2.8. That instruction already requires GOLO to prove that Amazon knew or had reason to know of the infringement as to the specific book, including through willful blindness. The First Amendment does not add any further requirement to that claim.[137]]**

[137] *Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 853-55 (1982); *Lontex Corp. v. Nike, Inc.*, 107 F.4th 139, 155-56 (3d Cir. 2024); *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010); Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc., 955 F.2d 1143, 1148-49 (7th Cir. 1992)).

## INSTRUCTION NO. 2.13 – FIRST AMENDMENT PROTECTION FOR USE OF TRADEMARKED TERMS IN TITLES[138]

Amazon also contends that the First Amendment protects the use of the word "GOLO" in the titles of the accused books. Whether the First Amendment protects a party's use of another's trademark in a book title depends on whether the trademark is used in a trademark or non-trademark way. That is, if the trademark is used to identify the source, sponsorship, approval, or affiliation of a product or service, the First Amendment does not apply. But if the mark is used in a non-source-identifying way, then the First Amendment can potentially apply and protect such use.[139]

Accordingly, the First Amendment does not apply if you find that GOLO's trademarks were used by Amazon to designate the source of goods.[140]

The First Amendment also does not apply if Amazon's use of the mark has no artistic relevance to the books on which it was placed, or if Amazon's use misleads as to the source or the

---

[138] *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989); *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 153-61 (2023); *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1028-32 (9th Cir. 2024).

[139] *Homevestors of Am., Inc. v. Warner Bros. Discovery*, No. CV 22-1583-RGA, 2025 WL 2301911, at *3 (D. Del. Aug. 8, 2025) (analyzing *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 145, 159 (2023)).

[140] **AMAZON**: Amazon objects to GOLO's version as overstating the limits on First Amendment protection. First, GOLO's instruction asks whether "Amazon" used the mark, but account holders, not Amazon, select KDP titles. Second, GOLO's statement that the defense fails if "Amazon's use misleads as to the source or the content of the work" omits the requirement that the title be explicitly misleading through an overt claim; the mere use of a mark is not enough. Third, to the extent GOLO relies on *Toho* and *Dr. Seuss*, those cases are distinguishable because the publishers there deliberately copied the plaintiffs' famous character names, titles, and cover art and were the authors of the accused works. Amazon contends the artistic-relevance threshold is minimal, and its bracketed language accurately states the *Roger*s framework as limited by *Jack Daniel*'s.

content of the work.[141] **[AMAZON: Artistic relevance need only be above zero; a title that refers to the subject matter of the book, such as a diet, eating plan, or recipes the book discusses, has artistic relevance, regardless of whether the book accurately follows or reflects GOLO's program. A title is explicitly misleading only if it contains an explicit indication, overt claim, or explicit misstatement that GOLO wrote, published, sponsored, or endorsed the book. The mere use of the word "GOLO," by itself, is not enough to make a title explicitly misleading, and a possibility that some consumers might be confused is not enough.[142]]** The law acknowledges that there is a public interest in sparing consumers of the confusion created by misleading titles that are confusingly similar to other titles. This confusion outweighs the "slight" public interest in permitting authors to use such titles.[143] **[AMAZON: This defense is separate from the defense described in Instruction No. 2.11.]**

---

[141] *Homevestors of Am., Inc. v. Warner Bros. Discovery*, No. CV 22-1583-RGA, 2025 WL 2301911, at *3, fn. 5 (D. Del. Aug. 8, 2025) (noting that, while Third Circuit has not explicitly adopted test articulated in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), it has affirmed lower courts' application of it).

[142] *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989); *Punchbowl*, 90 F.4th at 1028 (artistic relevance need only be "above zero"; plaintiff must show "no artistic relevance to the underlying work whatsoever"; explicitly misleading requires "an explicit indication, overt claim, or explicit misstatement" about source); *id.* at 1029 ("the mere use of a trademark alone cannot suffice to make such use explicitly misleading"); *Toho Co. v. William Morrow & Co.*, 33 F. Supp. 2d 1206, 1212 (C.D. Cal. 1998) (applying *Rogers* to book title and recognizing title had artistic relevance); *cf. Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1405-06 (9th Cir. 1997) (distinguishable: defendant publisher deliberately mimicked the plaintiff's title, character, and cover art to capitalize on the mark).

[143] *Rogers v. Grimaldi*, 875 F.2d 994, 999 n.5 (2d Cir. 1989).

## FALSE ADVERTISING CLAIMS

### INSTRUCTION NO. 3.1 – FALSE ADVERTISING GENERALLY[144]

GOLO claims that Amazon engaged in false advertising.

To succeed on this claim, GOLO must prove five things by a preponderance of the evidence:

1. That Amazon made literally false or misleading statements in its commercial advertising or promotion as to its own product or another's product, service, or commercial activities;
2. That there was actual deception of **[GOLO: or at least a tendency to deceive]**[145] of a substantial portion of the intended audience;
3. That the advertised goods traveled in interstate commerce;
4. That any deception is material in that it is likely to influence purchasing decisions;[146] and
5. That there is **[GOLO: a likelihood of]**[147] actual injury to GOLO as a result of the false or misleading statement in terms of declining sales, a loss of goodwill associated with its products, etc.[148]

---

[144] 15 U.S.C. § 1125(a)(1)(B); *Rockwell*, Final Jury Instruction 2.5.

[145] *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 590 (3d Cir. 2002).

[146] *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 590 (3d Cir. 2002).

[147] *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 590 (3d Cir. 2002).

[148] *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 590 (3d Cir. 2002).

[**AMAZON: The burden rests with GOLO. You must evaluate the elements for each allegedly false or misleading statement.]** The parties do not dispute that Amazon's goods and services travel in interstate commerce. [**AMAZON: If GOLO meets its burden as to any one particular allegedly false statement by a preponderance of the evidence, then you may find that Amazon engaged in false advertising as to that particular statement. If, on the other hand, you find that GOLO has failed to prove any one of these five elements, then you must find for Amazon.]**

## INSTRUCTION NO. 3.2 – FALSE ADVERTISING: ELEMENT ONE – FALSE OR MISLEADING STATEMENTS IN COMMERCIAL ADVERTISING OR PROMOTION

**[GOLO: GOLO can prevail on a false advertising claim if it proves that the defendant's advertising is either: (1) false on its face (known as, literally false); or (2) literally true or ambiguous, but is still likely to mislead and confuse consumers.[149] GOLO must prove either literal falsity or likely consumer confusion, but not both.[150]**

**In deciding whether a claim is literally false, you must decide, first, whether the claim conveys an unambiguous message and, second, whether that unambiguous message is false.[151] Only an unambiguous message can be literally false.[152]**

**A "literally false" message may be either explicit or conveyed by necessary implication, meaning that, when considering the advertisement in its entirety, the audience would recognize the message as readily as if it had been explicitly stated.[153] When determining whether an advertisement is literally false, audience sophistication is irrelevant.[154]**

---

149 *Schering-Plough Healthcare Products, Inc., v. Neutrogena Corp.*, Civ. No. 09-642-SLR, 2010 WL 2788240 (D. Del. July 15, 2010), citing, *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir. 1993); *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578, 586 (3d Cir. 2002) ("Liability arises if the commercial message or statement is either (1) literally false or (2) literally true or ambiguous, but has the tendency to deceive consumers") (citation omitted); *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3rd Cir. 2014).

150 *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir. 1993).

151 *Novartis*, 290 F.3d at 586.

152 *TrustID* Final Jury Instructions at 41.

153 *Novartis*, 290 F.3d at 586-87.

154 *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 465 (D.N.J. 2009).

**Although a plaintiff, such as GOLO, normally has the burden to demonstrate that Amazon's advertising claims are false, you may find that a completely unsubstantiated advertising claim by Amazon is per se false without additional evidence to that effect.[155]**

**Once GOLO proves literal falsity of an advertising claim, you may presume that all other aspects or elements of liability for a false advertising claim have been established and you may find Amazon liable for false advertising without considering the advertising claim's impact on the purchasers. But for purposes of establishing damages, you must find that the false advertising caused harm to GOLO.[156]**

**If GOLO fails to prove that an advertisement is literally false, it may still prevail by proving that the advertisement is misleading or impliedly false.[157] An advertisement is misleading if it is true or ambiguous but has the tendency to deceive a substantial portion of consumers.[158]**

**If you find a particular advertisement is literally false, you may presume that it is deceptive and material.[159]]**

---

155 *Novartis*, 290 F.3d at 590.

156 *TRUSTID, Inc. v. Next Caller Inc.*, 1:18-cv-00172:MN, D.I. 295, Final Jury Instructions (D. Del. July 16, 2021) ("TRUSTID Final Jury Instructions") at 42-43.

157 *Schering-Plough Healthcare Products, Inc. v. Neutrogena Corp.*, Civ. No. 09-642-SLR, 2010 WL 2788240 (D. Del. July 15, 2010); *TRUSTID* Final Jury Instructions at 43.

158 *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578, 590 (3rd Cir. 2002)

159 *Schering-Plough Healthcare Prods. v. Neutrogena Corp.*, No. 09-642-SLR, 2010 U.S. Dist. LEXIS 55634, at *7 (D. Del. June 7, 2010) ("Where literal falsity is demonstrated, consumer confusion is presumed.") (citing *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir. 1993)) ("[T]he court reiterates its disagreement with defendant's argument that, even amidst a finding of

**[AMAZON: Not all statements are commercial advertising or promotion. GOLO can prevail on a false advertising claim if it proves that a particular statement made in Amazon's commercial advertising or promotion is either: (1) false on its face (known as, literally false); or (2) literally true or ambiguous, but actually misled consumers. For a particular statement, GOLO must prove either literal falsity or deception, but not both.[160]**

**In deciding whether a particular statement is literally false, you must decide, first, whether the statement conveys an unambiguous message and, second, whether that unambiguous message is false on its face.[161] Only an unambiguous message can be literally false.[162]**

**A "literally false" message may be either explicit, or, when considering the advertisement in its entirety, the audience would recognize the message as readily as if it had been explicitly stated.[163] When determining whether a statement is literally false, audience sophistication is irrelevant.[164] If you find a particular statement is literally false, you may presume that it is deceptive and material.**

---

explicit literal falsity, plaintiff must also demonstrate 'materiality, actual deception or a tendency to deceive, and a likelihood of injury.'").

[160] *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir. 1993).

[161] *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578, 586 (3rd Cir. 2002).

[162] *TrustID* Final Jury Instructions at 41.

[163] *Novartis*, 290 F.3d at 586-87.

[164] *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 465 (D.N.J. 2009).

**If GOLO fails to prove that a particular statement is literally false, it may still prevail by proving that the statement is misleading. A statement is misleading if it is true or ambiguous but deceives a substantial portion of consumers.**

**GOLO can prevail on a false advertising claim if it proves that a particular statement made in Amazon's commercial advertising or promotion is either: (1) false on its face (known as, literally false); or (2) literally true or ambiguous, but actually misled consumers. For a particular statement, GOLO must prove either literal falsity or deception, but not both.**[165]

**In deciding whether a particular statement is literally false, you must decide, first, whether the statement conveys an unambiguous message and, second, whether that unambiguous message is false on its face.**[166] **Only an unambiguous message can be literally false.**[167]

**A "literally false" message may be either explicit or, when considering the advertisement in its entirety, the audience would recognize the message as readily as if it had been explicitly stated.**[168] **When determining whether a statement is literally false, audience sophistication is irrelevant.**[169]

---

165 *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir. 1993).

166 *Novartis*, 290 F.3d at 586.

167 *TrustID* Final Jury Instructions at 41.

168 *Novartis*, 290 F.3d at 586-87.

169 *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 465 (D.N.J. 2009).

**If GOLO fails to prove that a particular statement is literally false, it may still prevail by proving that the statement is misleading. A statement is misleading if it is true or ambiguous but deceives a substantial portion of consumers.**[170]

**If you find a particular statement is literally false, you may presume that it is deceptive and material.]**

[170] *Novartis*, 290 F.3d at 590.

<u>INSTRUCTION NO. 3.3 - FALSE ADVERTISING: ELEMENT TWO - DECEPTION</u>

**[GOLO: When a party proves an advertisement is literally false, it is presumed that there was actual deception or a tendency to deceive a substantial portion of the intended audience. You therefore do not need to consider this element if you determine that an Amazon advertisement was literally false. You only need to consider whether an advertisement deceives the consuming public if you find the advertisement to be literally true but misleading.[171]**

**If an advertisement is not found to be literally false, GOLO must prove that it is deceptive or misleading.[172] Whether an advertisement is deceptive or misleading "depends on the message that is conveyed to consumers."[173] For you to find that an advertisement is true but misleading, GOLO must show that the advertisement actually deceived or had the tendency to deceive a substantial segment of the audience.[174]]**

**[AMAZON: If you find a particular statement is not literally false but is misleading, GOLO must show that there was actual deception of a substantial portion of the intended**

---

[171] *Sandoz Pharms. Corp. v. Richardson–Vicks, Inc.*, 735 F. Supp. 597, 600 (D. Del. 1989), *aff'd*, 902 F.2d 222 (3d Cir. 1990); *see also Novartis*, 290 F.3d at 586 ("If a plaintiff proves that the challenged commercial claims are 'literally false,' a court may grant relief without considering whether the buying public was actually misled.").

[172] *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994)

[173] *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994)

[174] *Highmark Inc. v. UPMC Health Plan Inc.*, 276 F.3d 160 (3d Cir. 2001); *Synthes, Inc. v. Emerge Medical, Inc.*, 25 F. Supp. 3d 617, 716 (E.D. Pa. 2014) ("a Lanham Act violation may still be established by proving that the commercial makes a false or misleading claim and that a substantial portion of consumers actually understand the ad to be making that claim")

**audience.[175] Put differently, if a particular statement is not literally false, GOLO cannot obtain relief by arguing how consumers could react; it must show how consumers actually do react.[176] GOLO bears the burden of proving deception by a preponderance of the evidence.[177]]**

---

[175] *TRUSTID*, 2022 WL 318299, at *7; *CareDX*, 2025 LEXIS 372316, at *18.

[176] *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 228-29 (3d Cir. 1990).

[177] *Johnson & Johnson*, 19 F.3d at 129-130.

## INSTRUCTION NO. 3.4 - FALSE ADVERTISING: ELEMENT THREE – TRAVEL IN INTERSTATE COMMERCE

GOLO MUST ALSO SHOW THAT THE ADVERTISED PRODUCTS TRAVELED IN INTERSTATE COMMERCE. THIS ELEMENT IS MET IF AMAZON'S PRODUCTS, FOR EXAMPLE, TRAVELED ACROSS STATE LINES OR WERE ADVERTISED ON A WEBSITE ACCESSIBLE VIA THE INTERNET. AMAZON DOES NOT DISPUTE THAT THIS ELEMENT HAS BEEN MET.

**INSTRUCTION NO. 3.5 - FALSE ADVERTISING: ELEMENT FOUR - MATERIALITY**

[**GOLO: When a party proves an advertisement is literally false, it is presumed that the advertisement was material. You therefore do not need to consider this element if you determined that an Amazon advertisement was literally false. You only need to consider materiality if you find an advertisement to be literally true or ambiguous but likely to mislead and confuse consumers.** [178]

**For an advertisement that is literally true or ambiguous, GOLO must demonstrate that Amazon's allegedly false advertisements are material to purchasing decisions by a preponderance of the evidence. In determining whether Amazon's allegedly false advertisements are material, you must consider whether Amazon's alleged deception is likely to influence purchasing decisions.**[179] **An allegedly false advertisement is material if the defendant and plaintiff are competitors in the same market, if it describes a product service as having a characteristic that most consumers would find appealing, or if the advertisement relates to an inherent quality or characteristic of the product or service.**[180]]

---

[178] *Schering-Plough Healthcare Prods. v. Neutrogena Corp.*, No. 09-642-SLR, 2010 WL 2340226, at *3 (D. Del. June 7, 2010) ("Where literal falsity is demonstrated, consumer confusion is presumed.") (citing *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir. 1993)) ("the court reiterates its disagreement with defendant's argument that, even amidst a finding of explicit literal falsity, plaintiff must also demonstrate 'materiality, actual deception or a tendency to deceive, and a likelihood of injury.'").

[179] *Newborn Bros. Co. v. Albion Eng'g Co.*, 481 F. Supp. 3d 312, 356 (D.N.J. 2020) ("This element [materiality] requires that a plaintiff 'prove that the defendant's deception is likely to influence the purchasing decision.'") (citation omitted) (internal quotations omitted).

[180] *Id.* (citations omitted).

[AMAZON: **GOLO must also show that any deception in making any false statements was material, because it made a difference in influencing customers' purchasing decisions.**[181]

**If you find a particular statement is literally false, you may presume that it is material. If, however, you find a particular statement is true but misleading, then GOLO must prove that the deceptive statement is material in that it is likely to influence purchasing decisions.**[182] **Survey evidence may be used to show whether or not a false or misleading claim or statement is material.**[183]**]**[184]

---

[181] *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56 (2d Cir. 2002) (holding that "most courts have adopted the four-part test" for the definition of "commercial advertising and promotion" that includes "for the purpose of influencing consumers to buy defendant's goods or services") (collecting cases).

[182] *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578 (3rd Cir. 2002)

[183] *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001).

[184] [**GOLO**: In addition to objecting to Amazon's instruction as improper, the final sentence of Amazon's proposed instruction should not be included because neither side has offered survey evidence of materiality in this case.] [**AMAZON**: GOLO bears the burden on materiality. Its decision not to offer survey evidence does not shift or eliminate that burden.]

## INSTRUCTION NO. 3.6 - FALSE ADVERTISING: ELEMENT FIVE – ACTUAL INJURY [GOLO: OR LIKELIHOOD OF INJURY][185]

**[GOLO: GOLO must prove that it has been injured or is likely to be injured in terms of declining sales, lost goodwill, or otherwise. To do this, GOLO must prove, by a preponderance of the evidence, that an allegedly false advertisement caused actual harm or is likely to cause harm to GOLO. A party's mere subjective belief that it is likely to be injured is insufficient to satisfy this element. Rather, GOLO must demonstrate in some manner a causal link between the statement and the actual harm or likelihood of harm.**

**The causal connection may be established by either direct or circumstantial evidence. GOLO can establish a causal connection to the allegedly false advertisement by showing a direct diversion of sales or the lessening of goodwill associated with GOLO's products.**

**No proof of actual sales diversion is required.[186] Rather, proof of irreparable harm can provide a reasonable basis for the belief that GOLO is likely to be damaged as a result of Amazon's advertising.[187] Likelihood of injury can also be shown by proof that the parties are competitors in the market.[188]]**

---

185 *TRUSTID* Final Jury Instructions at 45.

186 *Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*, 735 F. Supp. 597, 601 (D. Del. 1989) ("[N]o proof of actual sales diversion is required.") (citing *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 191 (2d Cir. 1980)).

187 *Id.* ("Proof of irreparable harm entails proof of a reasonable basis for the belief that Sandoz is likely to be damaged as a result of the Vicks' advertising." (citing *Johnson & Johnson*, 631 F.2d at 190).

188 *Id.* ("Likelihood of injury is shown by proof that the parties are competitors in the market.") (citing *Johnson & Johnson*, 631 F.2d at 190).

[**AMAZON: If you find a particular statement is literally false or deceptive and material, GOLO must prove that it has been injured in terms of declining sales, lost goodwill, or otherwise. To do this, GOLO must prove, by a preponderance of the evidence, that a particular statement caused actual harm to GOLO. A mere tendency to be damaged, or a likelihood of injury is not sufficient. A party's mere subjective belief that it is likely to be injured is insufficient to satisfy this element. Rather, GOLO must demonstrate in some manner a causal link between the statement and the actual harm.**

**The causal connection may be established by either direct or circumstantial evidence. GOLO can establish a causal connection to a particular statement by showing a direct diversion of sales or the lessening of goodwill associated with GOLO's products resulting from the particular statement.]**[189]

**If you find a particular statement is literally false or deceptive and material,] GOLO must prove that it has been injured in terms of declining sales, lost goodwill, or otherwise. To do this, GOLO must prove, by a preponderance of the evidence, that a particular] statement caused actual harm to GOLO. A mere tendency to be damaged, or a likelihood of injury is not sufficient. A party's mere subjective belief that it is likely to be injured is insufficient to satisfy this element. Rather, GOLO must demonstrate in some manner a causal link between the statement and the actual harm.**

**The causal connection may be established by either direct or circumstantial evidence. GOLO can establish a causal connection to a particular statement by showing a direct**

---

[189] *TRUSTID* Final Jury Instructions at 45.

**diversion of sales or the lessening of goodwill associated with GOLO's products resulting from the particular statement].**

## INSTRUCTION NO. 3.7 – SECTION 230 OF THE COMMUNICATIONS DECENCY ACT[190]

As to the alleged false advertising related to the accused books (not paid search results), Amazon has asserted an affirmative defense under the Communications Decency Act ("CDA"). **[AMAZON: Section 230 of the CDA provides limited immunity to computer service providers under certain circumstances. If Amazon meets each of the three elements below, GOLO's false advertising claims concerning the accused books are barred entirely.]**

The three elements Amazon must prove by a preponderance of the evidence are:

1. Amazon is an interactive computer service provider;

2. The content at issue was created or developed by someone other than Amazon **[GOLO: *and* Amazon did not materially contribute to the creation or development of the specific content in question[191]].[AMAZON: Providing content neutral tools does not render a computer service provider a creator or developer of content [192]]**; and

3. GOLO's claim seeks to hold Amazon liable as the publisher or speaker of the third-party content.

---

[190] GOLO: The CDA is not a defense to trademark infringement. *See* 47 U.S.C. § 230(e)(2) ("Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property."); *Hepp v. Facebook*, 14 F.4th 204, 209, 212 (3d Cir. 2021) (acknowledging intellectual property exception and finding that it extends to state intellectual property law claims); *Gucci Am., Inc. v. Hall & Assocs.*, 135 F. Supp. 2d 409, 413 (S.D.N.Y. 2001) ("The plain language of Section 230(e)(2) precludes Mindspring's claim of immunity" from trademark infringement).

[191] *Riganian v. LiveRamp Holdings, Inc.*, Riganian v. LiveRamp Holdings, Inc., 791 F. Supp. 3d 1075, 1089 (N.D. Cal. July 18, 2025) ("CDA immunity does not apply when the defendant contributes to or shapes the content at issue, effectively becoming an 'information content provider.'").

[192] *Gonzalez v. Google*, 2 F.4th 871, 893-94 (9th Cir. 2021), vacated on other grounds by 598 U.S. 617 (2023).

**[GOLO: If you find that Amazon is responsible, in whole or in part, for the creation or development of content, CDA immunity does not apply.[193] If you find that Amazon controls whether to include or exclude the third-party content, or where it creates tags, categories, and search functions, including recommended and keyword searches for such content, CDA immunity also does not apply.[194]**

**You will also need to consider whether any of Amazon's allegedly false advertisements are alleged to be false based on information that Amazon has not disclosed to consumers. Where a claim seeks to hold a defendant liable for omissions that make advertisements false or misleading, then the claim seeks to hold the defendant liable for its own content, and CDA immunity would therefore not apply to such claims.[195]]**

**[AMAZON: If Amazon proves elements 1, 2 and 3, you must find that Amazon has**

---

[193] *Riganian v. LiveRamp Holdings, Inc.*, Riganian v. LiveRamp Holdings, Inc., 791 F. Supp. 3d 1075, 1089 (N.D. Cal. July 18, 2025) (citing *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008)) (CDA immunity does not apply where a party is responsible, "in whole or in part, for the creation or development of" content); *see also Fair Hous. Council*, 521 F.3d at 1162 ("[A]s to content that [a service provider] creates itself, . . . the [service provider] is also a content provider.").

[194] *Anderson v. TikTok, Inc.*, 116 F.4th 180, 184 (3d Cir. 2024) (holding that where a platform decides on the third-party speech that will be included or excluded from a compilation, such compilation was the platform's own expressive activity); *Doe v. MG Freesites, LTD.*, No. 7:21-CV-00220-LSC, 2024 WL 5339485, at *10 (N.D. Ala. Dec. 19, 2024) (holding that defendant's tags, categories, and search function, including recommended and keyword searches were not protected under the CDA); *see also Moody v. NetChoice, LLC*, 603 U.S. 707, 718 (2024) (where a platform compiles the third-party speech "it wants in the way it wants," such compilations become the platform's own "expressive product").

[195] *See District of Columbia v. Meta Platforms, Inc.*, No. 2023-CAB-6550, 2024 D.C. Super. LEXIS 27 at *24 (D.C. Super. Ct. Sept. 9, 2024) (holding that "[i]f the claim seeks to hold [defendant] liable for omissions that make its statements . . . misleading, then . . . the claim seeks to hold [defendant] liable for its own," and not a third party's, false and misleading representations").

**proved its defense under the Communications Decency Act.]**

## INSTRUCTION NO. 3.8 – NOMINATIVE FAIR USE AS TO FALSE ADVERTISING[196], [197]

**[AMAZON: Amazon contends that certain statements GOLO challenges as false advertising use GOLO's trademarks only to accurately refer to GOLO, its diet plan, or its products, and that such use is a nominative fair use.[198]**

---

[196] **GOLO** submits that no instruction is warranted here. "Fair use" is not a cognizable defense to false advertising claims. To the extent Amazon's advertisements are found to accurately and not misleadingly refer to GOLO, the elements for false advertising will not be met. *Compare Century 21 Real Est. Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 230 (3d Cir. 2005) (fair use requires that the "conduct or language reflect the true and accurate relationship between plaintiff and defendant's products or services"), *with Parks LLC v. Tyson Foods, Inc*, 863 F.3d 220, 226 (3d Cir. 2017) (false advertising claim must "misrepresent[] the nature, characteristics, qualities, or geographic origin of . . . another person's goods, services, or commercial activities" (quoting 15 U.S.C. § 1125(a)(1)(B)). Thus, accuracy is not a separate defense, and providing a separate instruction would only tend to confuse the jury.

[197] **AMAZON**: Amazon's proposed instruction acknowledges that nominative fair use does not permit a false statement. The instruction addresses a different question. It asks whether a statement GOLO challenges *only* because it uses GOLO's trademarks is false at all, when the use simply refers accurately to GOLO, its diet plan, or its products. It is not. By definition, a nominative fair use is one in which the defendant's "conduct or language reflect[s] the true and accurate relationship" between the parties' products. *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 228 (3d Cir. 2005). The Third Circuit grounded the doctrine in the principle that "clear and truthful references to the products of others are permitted." *Id.* at 225. That principle goes back to *Prestonettes*: when a mark "is used in a way that does not deceive the public," it may be used "to tell the truth." *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924). A use that satisfies *Century 21* is therefore not the "falsity . . . at the very core" of § 43(a)(1)(B), so the doctrine and the statute do not conflict. Courts apply the same reasoning to truthful comparative advertising, which "generally follows the same analysis as the nominative fair use defense." *Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*, No. 19-513, 2022 WL 3647817, at *15 (E.D. Pa. Aug. 24, 2022).

Amazon's instruction is also narrow by its terms. It applies only where a statement "is alleged to be false or misleading only because it uses GOLO's trademarks." It "does not apply to any message in a statement that is false or misleading for reasons other than the use of GOLO's trademarks." It also leaves GOLO's burden on every element of its claim, statement by statement, unchanged. The instruction is needed because several of GOLO's theories rest on the mark itself. These include paid search advertisements that insert GOLO product names into Amazon's advertising templates, and book titles and descriptions that use "GOLO" to identify the diet a book discusses. Without the instruction, the jury could find a statement false merely because it names GOLO, which would let GOLO use § 43(a)(1)(B) to bar truthful references to its own products.

**Nominative fair use does not permit a false statement. A truthful reference to GOLO or its products, however, is not a false statement simply because it uses GOLO's trademarks. A trademark owner cannot use a false advertising claim to prevent others from using its trademark to tell the truth about the trademark owner or its goods.[199]**

**If you find that a challenged statement is alleged to be false or misleading only because it uses GOLO's trademarks, you must consider whether Amazon has proved nominative fair use as to that statement. Amazon has the burden of proving nominative fair use by a preponderance of the evidence, using the same three-part test set forth in Instruction No. 2.10.[200] If Amazon proves nominative fair use as to a statement, that statement cannot support GOLO's false advertising claim.**

**This defense does not apply to any message in a statement that is false or misleading for reasons other than the use of GOLO's trademarks. GOLO must still prove each element of its false advertising claim as to each such statement, as explained in Instructions 3.2 through 3.6.]**

---

[198] *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 222, 228 (3d Cir. 2005); *VMWare* Final Jury Instructions at 70.

[199] *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924) ("When the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth."); *Century 21*, 425 F.3d at 228 (defendant's "conduct or language [must] reflect the true and accurate relationship between plaintiff and defendant's products or services"); *Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*, No. 19-513, 2022 WL 3647817, at *15 (E.D. Pa. Aug. 24, 2022) ("The comparative advertising defense generally follows the same analysis as the nominative fair use defense.").

[200] *Century 21*, 425 F.3d at 222, 228-32.

## WILLFULNESS

### INSTRUCTION NO. 4.1 – WILLFUL CONDUCT AS TO ANY CLAIM[201]

If you find for GOLO on any of its claims for trademark infringement, unfair competition, or false advertising, you must also determine whether GOLO has proved by a preponderance of the evidence that Amazon's conduct was willful.

Willful infringement consists of more than the accidental encroachment of another's rights. It involves an intent to infringe or a deliberate disregard of GOLO's rights in a way that was calculated to appropriate or otherwise benefit from the goodwill GOLO has nurtured.[202]

**[AMAZON: Amazon's decision to decline GOLO's request to stop conduct is not willful if it is done in good faith, that is, believing that Amazon has a colorable claim of right to engage in the challenged behavior.[203]]**

**[GOLO: Amazon acted willfully if it had an intent to infringe, if it deliberately disregarded GOLO's rights, or if it had an aura of indifference as to GOLO's rights.**

---

[201] *Rockwell* Final Jury Instruction at 32.

[202] *SecuraComm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 187 (3d Cir. 1999).

[203] *Lontex*, 107 F.4th at 152; *Green v. Fornario*, 486 F.3d 100, 104 (3d Cir. 2007).

**Continued wrongful conduct after being given notice of the alleged wrongful conduct can support a finding of willfulness.[204]], [205]**

[204] *SecuraComm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 187 (3d Cir. 1999) (describing wilful infringement as "an aura of indifference to plaintiff's rights"); *see Lontex Corp. v. Nike, Inc.*, 107 F.4th 139, 152 (3d Cir. 2024) ("continued use of a trademark contrary to a cease-and-desist letter can establish willfulness if done in bad faith"); *see, e.g.*, *Microsoft Corp. v. CMOS Techs., Inc.*, 872 F. Supp. 1329, 1337 (D.N.J. 1994) ("Evidence that defendants acted intentionally is shown by the fact that defendants sold counterfeit products after receiving the Microsoft 'Watch List' on April 6, 1993."); *see also Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212 (2020); *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 107 (2016).

[205] **AMAZO**N: Amazon objects to the "aura of indifference" language and the presumption of willfulness from continued conduct after notice. Both lower the agreed standard, which requires "an intent to infringe or a deliberate disregard of GOLO's rights." *See SecuraComm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 187 (3d Cir. 1999). Indifference is not intent or deliberate disregard, and a presumption arising from continued conduct after notice would improperly shift to Amazon the burden on an element GOLO must prove. Amazon contends that a good-faith belief in a colorable defense negates willfulness, including where Amazon declined GOLO's request to stop the challenged conduct. *See Lontex Corp. v. Nike, Inc.*, 107 F.4th 139, 152 (3d Cir. 2024); *Green v. Fornari*o, 486 F.3d 100, 104 (3d Cir. 2007).

## DAMAGES

### INSTRUCTION NO. 5.1 – MONETARY AWARDS[206]

If you find for GOLO on its claim for false advertising in paid advertisements on search-engines, or any of its trademark infringement or counterfeiting claims, then you should consider the amount of money to award to GOLO, if any.

This may include (1) any compensatory damages that GOLO sustained because of Amazon's conduct; and/or (2) any statutory damages for counterfeiting.

[206] *Rockwell* Final Jury Instruction at 33.

## INSTRUCTION NO. 5.2 – MONETARY AWARDS: COMPENSATORY DAMAGES[207]

If you find for GOLO on its trademark infringement claim, you must determine GOLO's compensatory damages resulting from Amazon's wrongful conduct, if any. GOLO has the burden of proving compensatory damages by a preponderance of the evidence. Compensatory damages means the amount of money that will reasonably and fairly compensate GOLO for the lost profits that GOLO would have earned but for Amazon's wrongful conduct.

You should consider the following compensatory damages:

1. The lost profits that GOLO would have earned but for Amazon's wrongful conduct;
2. The injury to or loss of GOLO's reputation;
3. The injury to or loss of GOLO's goodwill, including injury to GOLO's general business reputation;
4. The expense of preventing customers from being deceived; and
5. The cost of corrective advertising reasonably required to correct any public confusion caused by Amazon's wrongful conduct.

In measuring the harm to GOLO's goodwill and reputation, you should consider GOLO's expenditures in building its reputation to estimate the harm to its reputation after Amazon's bad acts, which is supported by evidence in the record.[208] The amount of GOLO's lost profits may be based on a reasonable estimate supported by the evidence.[209]

---

[207] *Rockwell* Final Jury Instruction at 38.

[208] *Gucci Am., Inc. v. Daffy's, Inc.*, 354 F.3d 228, 232 (3d Cir. 2003) ("where the owner of a trade-mark has spent energy, time and money in presenting to the public the product, he is protected in his investment from its misappropriation by pirates and cheats.") (quoting *Weil Ceramics v. Dash*, 878 F.2d 659, 672 n.17 (3d Cir. 1989)).

[209] *Covertech Fabricating, Inc. v. TVM Bldg. Prods.*, 855 F.3d 163, 177 (3d Cir. 2017) ("where a district court endeavors to calculate damages under the Lanham Act on the basis of the defendant's

actual profits . . . it must ground its estimate in the record—e.g., business records, credible witness testimony, expert testimony, or industry data" with the goal of achieving a "reasonable estimate").

## INSTRUCTION NO. 5.3 – MONETARY AWARDS: STATUTORY DAMAGES[210]

If you found Amazon liable for counterfeiting, you must award what are referred to as "statutory damages." You must award a minimum of $1,000 and no more than $200,000.00.[211]

If you believe Amazon's counterfeiting was willful, then you may, but are not required to, increase the statutory damage award to a maximum of $2,000,000.

In determining what amount of statutory damages is appropriate, you should consider factors such as (1) the expenses saved, if any, and the profits reaped, if any; (2) the revenues lost by GOLO, if any; (3) the value of the trademarks; (4) the deterrent effect on others besides Amazon; (5) whether Amazon's conduct was innocent or willful; (6) whether Amazon has cooperated in providing particular records from which to assess the value of the infringing material products; and (7) the potential for discouraging Amazon from engaging in this type of conduct.

---

[210] *Rockwell* Final Jury Instructions at 36; see also 15 U.S.C. § 1117(c).

[211] *Chanel, Inc. v. WGACA, LLC*, 1:18-cv-22153-LLS (S.D.N.Y.) Final Jury Instructions at 18; *New Balance Athletics, Inc. v. USA New Bunren Int'l Co.*, 1:17-cv-1700-MN D.I. 96 (D. Del. Sept. 18, 2020) (Noreika, J.) at 2 (holding that the "number of 'counterfeit marks" is determined "by looking to the number of plaintiff's registered marks that were counterfeited by defendant"); *id.* at 3 (holding that "[o]ne type of good [for purposes of statutory damages] is counted separately from another type of good if the functional purpose of the products are different" and that types of goods in a registration may be cumulative, such as t-shirts and short sleeve shirts) (internal quote omitted).

## FINAL INSTRUCTION AND REMINDERS

### INSTRUCTION NO. 6.1 - DELIBERATION AND VERDICT-INTRODUCTION[212]

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberation in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a cell phone, smart phone, or computer of any kind; the internet, any internet service, or any text or instant messaging service; or any internet chat room, blog, website, or social networking service, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. Information that you might see on the internet or on social media has not been admitted into evidence and the parties have not had a chance to discuss it with you. You should not seek or obtain such information, and it must not influence your decision in this case.

If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me

---

[212] *GOLO* Final Jury Instructions at 21; *Rockwell* Final Jury Instructions at 42; Third Circuit Model Jury Inst. 3.1 (03/2026).

some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

## INSTRUCTION NO. 6.2 - UNANIMOUS VERDICT[213]

Your verdict must represent the considered judgment of each juror. For you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form. You will then return to the courtroom and your foreperson will give your verdict.

---

[213] *GOLO* Final Jury Instructions at 22; Third Circuit Model Jury Inst. 3.1 (03/2026).

## INSTRUCTION NO. 6.3 - DUTY TO DELIBERATE[214]

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that—your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

---

[214] *GOLO* Final Jury Instructions at 23; *Rockwell* Final Jury Instructions at 45.

## INSTRUCTION NO. 6.4 - COURT HAS NO OPINION[215]

Let me finish by repeating something I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.

---

[215] *GOLO* Final Jury Instructions at 25; *Rockwell* Final Jury Instructions at 47.